**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| **VIRNETX, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO: 6:10-cv-417 LED** |
| | § | |
| **CISCO SYSTEMS, INC., APPLE, INC.,** | § | |
| **AASTRA USA, INC., AASTRA** | § | |
| **TECHNOGLOGIES, LTD., NEC** | § | |
| **CORPORATION, and NEC** | § | |
| **CORPORATION OF AMERICA,** | § | |
| | § | |
| **Defendants.** | § | |

**SCIENCE APPLICATIONS INTERNATIONAL CORPORATION'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS WITH PREJUDICE FOR VIRNETX INC.'S
INTENTIONAL FAILURE TO SECURE STANDING TO BRING SUIT**

TO THE HONORABLE COURT:

Science Applications International Corporation ("SAIC") hereby respectfully submits its

Opposition to Defendants' Motion to Dismiss With Prejudice For VirnetX Inc.'s Intentional

Failure To Secure Standing To Bring Suit (the "MTD") (Dkt. #120) and shows:

**I.        INTRODUCTION**

On April 20, 2011, one day after this Court signed the Docket Control Order (Dkt. #111)

which formally opened discovery in the above entitled and numbered action (the "Cisco

Litigation"), SAIC's counsel presented to counsel for Defendants Cisco Systems, Inc. ("Cisco"),

Apple, Inc. ("Apple"), Aastra USA, Inc., Aastra Technologies Ltd. (the "Aastra entities"), NEC

Corporation and NEC Corporation of America (the "NEC entities") (collectively, the "Cisco

Defendants") a proposed agreed order that sought to join SAIC in this case and to govern SAIC's

role in the discovery, pretrial and trial phases of the Cisco Litigation. This proposed agreed order was virtually identical to two prior agreed orders entered by the Court in *VirnetX, Inc. v. Microsoft Corporation*, Case No. 6:07-cv-80 (LED) (the "Microsoft Litigation") that governed SAIC's participation in that case. The purpose behind SAIC's action was simple and straightforward: SAIC understood that it had discovery obligations in the Cisco Litigation and wanted to make sure that it complied with those obligations in the most efficient way possible. While this was the first time that SAIC's counsel had presented the Cisco Defendants' counsel with a formal proposal regarding SAIC's role in the Cisco Litigation, this was not the first time that the Cisco Defendants were approached concerning this issue. Those discussions had initially occurred at about the time of the Status Conference conducted in the Cisco Litigation on February 7, 2011 – over two months before a Docket Control Order was signed in this case – when, at SAIC's request, VirnetX's counsel brought up with the Cisco Defendants' counsel the issue of SAIC's participation in the Cisco Litigation on certain limited terms that required SAIC's full participation in discovery but not in the substantive aspects of the case. It was understood by SAIC's counsel at that time that counsel for the Cisco Defendants and VirnetX had had the opportunity to communicate and that the Cisco Defendants' counsel had informed VirnetX's counsel that the Cisco Defendants would consider SAIC's entry into the Cisco Litigation on limited terms and gave no indication that SAIC's request would be opposed.

As in the Microsoft Litigation, SAIC believes that it is not a necessary party to the Cisco Litigation. Nevertheless, to avoid any perceived discovery issues that could be associated with not being a formal party to the Cisco Litigation, SAIC will accept the jurisdiction of this Court for the purposes of accepting subpoenas under Federal Rule 45 for any discovery sought by any of the parties in the Cisco Litigation.

On the other hand, if this Court once again determines that SAIC is a necessary party to the Cisco Litigation, SAIC believes that its role should be under the same or similar terms as approved by this Court in the Microsoft Litigation. In furtherance of this objective, the proposed agreed order that SAIC's counsel presented to all parties in the Cisco Litigation was essentially identical to the prior agreed orders the Court issued in the Microsoft Litigation that dealt with SAIC's discovery obligations and SAIC's role in the pretrial and trial stages of that case. SAIC presented this option to all parties in the Cisco Litigation; not because it was trying to evade or shirk any discovery responsibilities in the Cisco Litigation, but instead because SAIC believed that a combination of the two previous agreed orders that governed its participation in the Microsoft Litigation would prove to be an efficient, simple and cost effective method of allowing SAIC to meet its discovery obligations to all parties in the Cisco Litigation. In addition, SAIC did not feel it was appropriate to waste judicial resources re-litigating the issue of whether SAIC was a necessary party in the Cisco Litigation and SAIC did not want to interfere in the substantive adjudication of the numerous and complex issues in this patent infringement case.

Several of the Cisco Defendants initially expressed an interest in SAIC joining the Cisco Litigation by way of an agreed order as it done in the Microsoft Litigation. Based on these responses, SAIC drafted a proposed agreed order for use in the Cisco Litigation and sent it to all parties with a request that they review the proposed agreed order and advise SAIC within two weeks if the wording of the draft order was acceptable or needed modifications. However, without any substantive discussion on the terms of the draft proposed agreed order, the Cisco Defendants simply rejected SAIC's proposal and advised VirnetX that they would seek dismissal of the Cisco Litigation with prejudice unless VirnetX agreed to dismiss and re-file this case with SAIC as a party. Ironically, the Cisco Defendants have now filed a MTD based, in part, on the

allegation that SAIC has been trying to evade its discovery obligations in the Cisco Litigation when, in truth, SAIC's efforts to involve itself in the Cisco Litigation were for the express purpose of being in a position to comply with its discovery obligations in this case.  Because of this, SAIC is compelled to set the record straight and file this Opposition to the Cisco Defendants' MTD.

## II.     BACKGROUND

On August 11, 2010, VirnetX filed an Original Complaint (the "Complaint") against the Cisco Defendants in the Cisco Litigation.  Declaration of Andy Tindel In Support of SAIC's Opposition to Defendants' Motion to Dismiss (the "Tindel Decl."), ¶ 3.  The Complaint alleges that the Cisco Defendants infringed the same patents that were at issue in the Microsoft Litigation. *Id*.

On October 29, 2010, each of the Cisco Defendants filed answers to the Complaint. *Id*., ¶ 4.  In their respective answers, Apple, Cisco and the NEC entities, allege as affirmative defenses that VirnetX lacks standing to enforce the patents at issue, while Apple specifically alleges that SAIC retains "substantial rights in one or more of the patents-in-suit and is a necessary party to [the] litigation."  (Dkt. #55, ¶ 86) *Id*.

On November 4, 2010, SAIC and VirnetX's counsel participated in a teleconference. *Id*., ¶ 5.  It was during this teleconference that SAIC and VirnetX's counsel discussed SAIC's possible entry into the Cisco Litigation under the same or similar terms as in the Microsoft Litigation in order to fulfill SAIC's discovery obligations in the Cisco Litigation. *Id*.  Counsel for SAIC and VirnetX agreed to continue a dialogue regarding SAIC's potential participation in the Cisco Litigation. *Id*.

On January 18, 2011, counsel for SAIC and VirnetX held a follow up teleconference. *Id*., ¶ 6. During this teleconference VirnetX's counsel agreed to approach the Cisco Defendants' counsel concerning SAIC's participation in the Cisco Litigation under these limited terms. *Id*.

Also on January 18, 2011, VirnetX's counsel informed SAIC's counsel that the parties to the Cisco Litigation were scheduled to have a Status Conference before this Court on February 7, 2011. *Id*., ¶ 7. SAIC and VirnetX's counsel agreed it would be best if VirnetX's counsel brought up the topic of SAIC's participation in the Cisco Litigation on the same limited terms as in the Microsoft Litigation with the Cisco Defendants' counsel prior to the February 7th Status Conference and again in person on the day of the Status Conference. *Id*.

On February 7, 2011, VirnetX's counsel again brought up with the Cisco Defendants' counsel the issue of SAIC's participation in the Cisco Litigation on certain limited terms involving SAIC's full participation in discovery but not in the substantive aspects of the case. *Id*., ¶ 8. At that time, the Cisco Defendants' counsel (except for the Aastra entities' counsel) informed VirnetX's counsel that they would consider SAIC's entry into the Cisco Litigation on limited terms and gave no indication that they would oppose SAIC's request. *Id*. SAIC never heard from any of the Cisco Defendants regarding SAIC's proposal from February. 7, 2011 until April 20, 2011 when SAIC's counsel first directly contacted the Cisco Defendants' counsel. *Id*.

On April 1, 2011, counsel for SAIC sent counsel for VirnetX a draft proposed agreed order that sought to bring SAIC into the Cisco Litigation as a party on essentially the same terms as SAIC participated in the Microsoft Litigation. *Id*., ¶ 9. This proposed agreed order was a combination of the two agreed orders negotiated by the parties in the Microsoft Litigation that governed SAIC's participation in the discovery and trial phases of that case. *Id*.

On or about April 13, 2011, SAIC and VirnetX agreed to the wording of the proposed agreed order. *Id.*, ¶ 10. A true and correct copy of the proposed agreed order is attached as Exhibit "A" to the Tindel Decl. *Id.*

On April 20, 2011, counsel for SAIC had a teleconference with counsel for the Cisco Defendants to discuss SAIC's entry into the Cisco Litigation on limited terms. *Id.*, ¶ 11. At that time, SAIC's counsel informed the Cisco Defendants' counsel that SAIC sought to enter the Cisco Litigation as a party on essentially the same terms as SAIC participated in the Microsoft Litigation. *Id.* SAIC's counsel also informed the Cisco Defendants' counsel that they would send the Cisco Defendants' counsel a copy of a proposed agreed order. *Id.* SAIC's counsel requested that the Cisco Defendants' counsel respond to SAIC's request within two weeks. *Id.* Also on April 20, 2011, SAIC's counsel transmitted a copy of the proposed agreed order to counsel for all of the Cisco Defendants, along with a copy of the October 2008 Agreed Order and the February 2010 Agreed Order entered in the Microsoft Litigation. *Id.*

On May 4, 2011, SAIC's counsel sent a follow up email to counsel for all parties in the Cisco Litigation reminding them that it had been two weeks since the initial conference call between counsel and requested, on their respective clients' behalf, that the parties let SAIC's counsel know by May 7, 2011 if the proposed agreed order was (a) acceptable without any changes and that their clients would agree to a motion requesting the Court enter the proposed order "as is," (b) if the proposed order required modifications or changes prior to being acceptable for filing with an agreed motion, or (c) if the proposed order would be opposed by any of the Cisco Defendants. *Id.*, ¶ 12. SAIC's counsel only heard from counsel for Defendants Cisco and the NEC entities, both informing SAIC's counsel that they required more time but should have a decision on the proposed agreed order by the week of May 9, 2011. *Id.*

On May 16, 2011, counsel for VirnetX, SAIC and all of the Cisco Defendants participated in a follow-up teleconference to discuss SAIC's entry into the Cisco Litigation on limited terms. *Id., ¶* 13. At that time, counsel for Cisco informed SAIC and VirnetX for the first time that Cisco had decided to move for dismissal of the Complaint, with prejudice, because SAIC was not a party to the case. *Id.* Although Cisco's counsel knew of SAIC's proposal to join the case on limited terms since at least the date of the Status Conference back on February 7, 2011, and had requested the ensuing time to consider SAIC's proposal, Cisco's counsel now claimed Cisco would be prejudiced if SAIC were to join the case at this time. *Id.* In the alternative, Cisco agreed to forego filing their motion to dismiss if and only if VirnetX agreed to dismiss the Complaint, without prejudice, and re-file the Complaint naming SAIC as a party. *Id.*

On May 17, 2011, Cisco's counsel communicated with VirnetX and SAIC's counsel to inform them that all of the Cisco Defendants supported Cisco's proposal regarding filing a motion to dismiss or having VirnetX voluntarily dismiss and re-file the Complaint. *Id., ¶* 14.

As of the date of the filing of this opposition, none of the Cisco Defendants have served any discovery requests or subpoenas upon SAIC. *Id., ¶* 15.

## III.   ARGUMENT

While SAIC still believes that it is not a necessary party to any litigation involving VirnetX's lawsuits to enforce the patents at issue, SAIC clearly understands that it has discovery obligations in connection with the Cisco Litigation. Because of this, when SAIC's counsel approached the Cisco Defendants' counsel, they believed the most efficient manner to handle SAIC's discovery obligations in the Cisco Litigation was to proceed along the same lines as had been approved of by the Court in its October 2008 Agreed Order and its February 2010 Agreed Order entered in the Microsoft Litigation. Consequently, it was SAIC's counsel who took the

initiative to set up the April 20, 2011 meet and confer call with the Cisco Defendants' counsel to discuss the content of a proposed agreed order that would allow SAIC to meet its discovery obligations in the Cisco Litigation in the same manner as in the Microsoft Litigation.

The October 2008 and February 2010 Microsoft Litigation Agreed Orders represented the product of much negotiation and thought, as well as numerous meet and confer sessions between the parties to that case. The October 2008 Agreed Order and February 2010 Agreed Order also paved the way for an efficient and successful administration of the Microsoft Litigation. In the Microsoft Litigation, SAIC produced numerous witnesses and voluminous documents without any serious discovery disputes rising to a level that would have necessitated this Court's attention. Given this Court's prior orders in the Microsoft Litigation, SAIC's counsel sought out the Cisco Defendants' counsel to discuss the content of a proposed agreed order that combined into one order the same provisions, with minor changes, found in the October 2008 and February 2010 Microsoft Litigation Agreed Orders.

From the date when SAIC's counsel spoke with the Cisco Defendants' counsel on April 20, 2011 until May 16, 2011 – which was almost one month – SAIC heard no objections to the proposed agreed order from any of the parties to the Cisco Litigation. It was not until SAIC's counsel once again on their own initiative approached the Cisco Defendants' counsel on May 4, 2011 for a decision on the proposed agreed order that Cisco's counsel first asked for more time and then, a little over a week later, on May 16, 2011 informed VirnetX and SAIC that Cisco had decided to move for dismissal of the Complaint, with prejudice, because SAIC was not already a party to the case.

By offering its proposed agreed order in the Cisco Litigation, SAIC sought to avoid further briefing on the issue of whether SAIC was a necessary party to the Cisco Litigation and

begin focusing on fulfilling its discovery obligations in a manner previously approved by this Court. By attempting to enter the Cisco Litigation by agreement, SAIC was seeking to abide by the letter and spirit of the Court's June 2008 Memorandum Opinion and Order in the Microsoft Litigation, as well as the subsequent October 2008 Agreed Order and February 2010 Agreed Orders entered by the Court in that case. SAIC was absolutely not attempting to "end run this Court's prior order[s]" or "evade" its "discovery obligations" in the Cisco Litigation as the Cisco Defendants wrongly claim. MTD at p. 2. There is simply no basis for the Cisco Defendants to contend that SAIC's actions in the Cisco Litigation have prejudiced the Cisco Defendants in any manner whatsoever.

Additionally, because the Cisco Defendants never took action until SAIC – not the Cisco Defendants – raised this issue with all of the parties, any alleged prejudice suffered by the Cisco Defendants is solely of their own creation. It is disingenuous for the Cisco Defendants to claim that SAIC ever sought to "evade" its discovery obligations and to accuse SAIC of an attempted "end run" around this Court's prior orders, especially when it was SAIC that proposed entering this case on essentially the same terms as previously approved by this Court in the Microsoft Litigation to govern its participation in the Cisco Litigation. In view of this, the Cisco Defendants' cynical allegations of "gamesmanship" should not be rewarded.

In truth, it is the Cisco Defendants, and not SAIC, that are engaging in gamesmanship. The Cisco Defendants' attempt to have this case dismissed with prejudice at this early juncture when they could have simply opposed SAIC's proposal to join the Cisco Litigation on a limited basis is pure gamesmanship. The Cisco Defendants (with the possible exception of the Aastra entities) knew of SAIC's proposal to join the Cisco Litigation on a limited basis since at least early February of this year when VirnetX's counsel raised it with them at the Status Conference

and, instead of voicing any objection, these defendants waited until late May to file their MTD in response to SAIC's attempt to meet and confer; only now claiming "prejudice" because SAIC had not joined the case sooner.  If the Court rules that SAIC is a necessary party to the Cisco Litigation then SAIC does not believe that any of the discovery deadlines need to be changed. Tindel Decl., ¶ 16  If it is decided that SAIC is not a necessary party then SAIC will accept service of Federal Rule 45 Subpoenas from this Court and fulfill any discovery obligations associated with those discovery requests.  *Id*., ¶ 15.  Consequently there is absolutely no reason for the Court to dismiss this action, let alone dismiss the action with prejudice as proposed by the Cisco Defendants.

## IV.    CONCLUSION

For the foregoing reasons, SAIC respectfully requests the Court deny the Defendants' Motion to Dismiss With Prejudice For VirnetX Inc.'s Intentional Failure To Secure Standing To Bring Suit in its entirety and such other and further relief as the Court deems suitable and just.

Dated: June 6, 2011                          Respectfully submitted,

_____

ANDY TINDEL (Lead Counsel)
State Bar No. 20054500

PROVOST ✻ UMPHREY LAW FIRM, L.L.P.
112 East Line Street, Suite 304
Tyler, Texas 75702
Telephone:      (903) 596-0900
Facsimile:      (903) 596-0909
Email: atindel@andytindel.com

Of Counsel:

DONALD URRABAZO
California State Bar No. 189509
URRABAZO LAW GROUP
2029 Century Park East, Suite 1370
Los Angeles, CA 90067
Direct:          (310) 388-9099
Facsimile:      (310) 388-9088
Email: DonaldU@UlawGroup.com

ATTORNEYS FOR SCIENCE APPLICATIONS
INTERNATIONAL CORPORATION

## CERTIFICATE OF SERVICE

This is to certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per E. Dist. Tex. Loc. Ct. R. CV-5(a)(3) on the 6th day of June, 2011. Any other counsel of record will be served via email and first class certified mail, return receipt requested.

_____

ANDY TINDEL