# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| **VIRNETX, INC.** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | **CASE NO. 6:10-CV-417** |
| | § | **PATENT CASE** |
| **CISCO SYSTEMS, INC., et al.** | § | |
| | § | |
| Defendants. | § | |
| | § | |

## ORDER

Before the Court is Defendants' Motion to Dismiss with Prejudice for VirnetX, Inc.'s ("VirnetX") Intentional Failure to Secure Standing to Bring Suit (Doc. No. 120, "MOTION"). After careful consideration of the parties' submissions, the Court **DENIES** Defendants' motion. Further, for the reasons stated herein, the Court **GRANTS** VirnetX's motion to join Science Applications International Corporation ("SAIC"). As a result, the Court **DENIES** SAIC's Motion for Leave to File an Opposition to Defendants' Motion to Dismiss (Doc. No. 129).

## BACKGROUND

VirnetX acquired rights in U.S. Patent Nos. 6,502,135 ("the '135 patent"), 6,839,759 ("the '759 patent") and 7,188,180 ("the '180 patent") (collectively "the patents-in-suit") from SAIC. MOTION at 1. On August 15, 2005, SAIC and VirnetX entered into a "Patent License and Assignment Agreement" ("PLAA") and a "Security Agreement." On November 2, 2006, SAIC and VirnetX executed "Amendment No. 1" to the PLAA and on March 28, 2008, SAIC and VirnetX further executed "Amendment No. 2" to the PLAA.

In 2007 VirnetX filed suit against Microsoft alleging infringement of the '135, '759, and

'180 patents. *See VirnetX, Inc. v. Microsoft Corp*, No. 6:07-cv-80, "Microsoft Litigation." During the course of the Microsoft Litigation, Microsoft filed a motion to dismiss contending that the various agreements between SAIC and VirnetX failed to transfer to VirnetX all substantial rights in the patents-in-suit. *See id.* Doc. No. 117 "2008 ORDER," at 1. In the alternative, Microsoft moved to join SAIC as a plaintiff. *Id.* This Court found that VirnetX had constitutional standing, but lacked prudential standing, because SAIC retained substantial rights in the patents-in-suit. *Id.* Specifically, the Court found that SAIC had a 35% equity interest in any recovery from the litigation (*Id.* at 8); review rights regarding any proposed license, assignment, or settlement (*Id.*); reversionary rights (*Id.* at 9); and a security interest. *Id.* As a result, the Court found that SAIC did not convey all substantial rights to the patents-in-suit and ultimately joined SAIC as a plaintiff. *Id.*

SAIC joined the Microsoft Litigation, but the parties agreed to limit SAIC's discovery obligations. Microsoft and VirnetX tried their case to a jury, which subsequently found the patent valid and infringed. The parties settled post-trial. On August 11, 2010, VirnetX filed suit against the moving Defendants alleging infringement of the same family of patents involved in the Microsoft Litigation. MOTION at 1. SAIC was not made a party at the outset of the instant litigation. *Id.* at 4. SAIC later contacted Defendants to discuss its involvement in this case, and the parties held a teleconference. *Id.* SAIC proposed an agreement limiting its discovery obligations similar to the Microsoft Litigation. *Id.* Defendants then filed the instant motion.

**PARTIES' CONTENTIONS**

Defendants contend, based on alleged representations by SAIC, that the contractual relationship between VirnetX and SAIC has not materially changed since this Court's 2008 Order. MOTION at 4–6. Defendants argue that VirnetX has willfully ignored its lack of standing by not

adding SAIC as a co-plaintiff prior to the deadline for adding parties and despite filing two amended complaints. *Id.* at 6–7. Defendants further contend that VirnetX's failure to join SAIC warrants dismissal with prejudice. *Id.* at 6–11.

VirnetX asserts that Defendants are mistaken regarding the issue of standing. Doc. No. 128, "OPP." at 3–6. VirnetX contends that much has changed since the Court's 2008 Order, and that SAIC's rights in the patents-in-suit have greatly diminished. *Id.* at 2–3. Accordingly, VirnetX contends that due to SAIC's diminished rights, VirnetX now has prudential standing. *Id.* at 3–6. Regardless, VirnetX argues that SAIC is willing to provide any necessary discovery and submit to this Court's jurisdiction. *Id.* at 5–6. Alternatively, VirnetX requests SAIC be added as a party should the Court find that SAIC has retained substantial rights in the patents-in-suit despite the new state of affairs. *Id.*

## APPLICABLE LAW

*Federal Rule of Civil Procedure 12(b)(1)*

Federal Rule of Civil Procedure 12(b)(1) authorizes the dismissal of a case for lack of subject matter jurisdiction when the district court lacks the statutory and constitutional power to adjudicate the case. *See Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Courts analyze Rule 12(b)(1) motions to dismiss under the same standard as a motion to dismiss under Rule 12(b)(6). *See id.* When ruling on a motion to dismiss for lack of subject matter jurisdiction, a court may consider: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Den Norske Stats Oljeselskap As v. HeereMac v.o.f.*, 241 F.3d 420, 424 (5th Cir. 2001); *see also Clark v. Tarrant County,* 798 F.2d 736, 741 (5th Cir. 1986) (citing

3

*Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). Once a defendant files a motion to dismiss under Rule 12(b)(1) and challenges jurisdiction, the party invoking jurisdiction has the burden to establish subject matter jurisdiction. *See Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). Courts only grant motions to dismiss when it is clear the claimant can prove no set of facts in support of its claims that would entitle it to relief. *See Home Builders Ass'n of Miss., Inc.,* 143 F.3d at 1010.

*Standing*

A court lacks subject matter jurisdiction over a cause of action if the plaintiff lacks standing to bring the cause of action. *Bhandari v. Cadence Design Sys., Inc.*, 485 F. Supp. 2d 747, 750–51 (E.D. Tex. 2007) (Davis, J.). A plaintiff has constitutional standing to pursue a patent infringement action if it shows: (1) the defendant's alleged infringement causes the plaintiff an injury in fact; (2) that the injury is fairly traceable to the alleged misconduct of the defendant; and (3) that a favorable decision is likely to redress the injury. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); *Intellectual Property Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1345–47 (Fed. Cir. 2001). To prove an "injury in fact," the plaintiff must show the alleged infringer invaded a legally protected interest which is "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *See Lujan*, 504 U.S. at 560 (internal quotations omitted). Parties that hold exclusionary rights and interests in a patent have constitutional standing to sue infringers. *See Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1339 (Fed. Cir. 2007).

A party with constitutional standing that possesses all substantial patent rights is an effective patentee and has prudential standing to sue infringers without joinder of others who suffer a legal injury from infringement and possess substantial patent rights. *Speedplay, Inc. v. Bebop, Inc.*, 211

F.3d 1245, 1250 (Fed. Cir. 2000). If a party has constitutional standing, but does not possess all substantial patent rights, the party lacks prudential standing and generally must sue as a co-plaintiff with other parties who possess rights to the patent and suffer a legal injury from infringement. *See Intellectual Property Dev.*, 248 F.3d at 1348. A plaintiff cannot cure constitutional standing defects after it files suit, but a plaintiff with constitutional standing may cure prudential standing defects after it files suit. *See id*; *IpVenture, Inc. v. ProStar Computer, Inc.*, 503 F.3d 1324, 1326–27 (Fed. Cir. 2007); *Morrow*, 499 F.3d at 1344.

To determine whether an agreement confers standing on the transferee, courts focus on the substance of the transferred patent rights and the parties' intentions. *Vaupel Textilmaschinen KG v. Meccanica Euro Italia Spa*, 944 F.2d 870, 875 (Fed. Cir. 1991); *Intellectual Property Dev.*, 248 F.3d at 1342; *Propat Int'l Corp. v. RPost, Inc.*, 473 F.3d 1187, 1189–90 (Fed. Cir. 2007). In making such a determination, it is helpful to focus on each party's collection of sticks within the bundle of patent rights as a result of the agreement. *Vaupel*, 944 F.2d at 875; *Intellectual Property Dev.*, 248 F.3d at 1342; *see also Morrow*, 499 F.3d at 1338, 1341 n.8.

*Joinder Pursuant to Federal Rule of Civil Procedure 19(a)*

If the plaintiff lacks constitutional standing, the court must dismiss the plaintiff's claims for lack of subject matter jurisdiction. *Id.* at 1344; *Propat*, 473 F.3d at 1194. If a plaintiff has constitutional standing but lacks prudential standing, the court proceeds under Federal Rule of Civil Procedure 19 to determine if joinder of the parties with the remaining ownership interests in the patent is warranted. *See id.* at 1340. A court can only join parties with constitutional standing to bring the patent infringement action. FED. R. CIV. P. 19(a); *see Ortho Pharm. Corp. v. Genetics Inst., Inc.*, 52 F.3d 1026, 1031, 1034 (Fed. Cir. 1995) (holding nonexclusive licensee did not have

5

standing to join infringement suit alongside the patentee, as the licensee suffered no legal injury from infringement and "[t]o have co-plaintiff standing in an infringement suit, a licensee must hold some of the proprietary sticks from the bundle of patent rights, albeit a lesser share of rights in the patent than for an assignment and standing to sue"); *Sicom Sys., Ltd. v. Agilient Techs., Inc.*, 427 F.3d 971, 976 (Fed. Cir. 2005) ("A nonexclusive license confers no constitutional standing on the licensee to bring suit or even join a suit with the patentee because the nonexclusive licensee suffers no legal injury from infringement."); *Morrow*, 499 F.3d at 1340–41 (stating that a party that lacks constitutional standing cannot cure the standing defect by adding patent owner to the suit).

Rule 19(a) governs the joinder of persons needed for just adjudication. So long as a person is subject to service of process and joinder will not deprive the court of subject matter jurisdiction, Rule 19(a)(1) requires joinder if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

FED. R. CIV. P. 19(a)(1).

The nature of Rule 19 requires a court to make "highly practical, fact-based decisions" when it applies the rule. *See Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1309 (5th Cir. 1986). In such an analysis, courts seek to maximize effective relief with the minimal expenditure of judicial energy. *Gentry v. Smith*, 487 F.2d 571, 579–80 (5th Cir. 1973). If the party should join as a plaintiff, but so refuses, the court may, in a proper case, join the party as an involuntary plaintiff. FED. R. CIV.

6

P. 19(a)(2).

If the court cannot join a person described in Rule 19(a)(1)(A) and (a)(1)(B), the court determines if in equity and good conscience the case should proceed or be dismissed. FED. R. CIV. P. 19(b). Courts consider multiple factors to determine the appropriate course of action. *Id.*

*Dismissal for Failure to Timely Cure Jurisdictional Deficiencies*

A district court may dismiss a suit without leave to amend. *Greogory v. Mitchell*, 634 F.2d 199, 203 (5th Cir. 1981). The Court may consider such factors as undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowing the amendment and futility of amendment. *Id.* (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

**ANALYSIS**

The Court must first determine whether VirnetX has standing under the current state of the agreements between VirnetX and SAIC.

*SAIC 2008 Rights*

In the Microsoft Litigation, this Court found VirnetX lacked prudential standing because SAIC's retained rights in the patents-in-suit deprived VirnetX of the right to indulge infringement. 2008 ORDER at 10. SAIC retained a 35% equity interest in the recovery of the Microsoft Litigation, coupled with certain "control rights." *Id.*

VirnetX was required to take "commercially reasonable" steps to enforce the patents-in-suit to protect SAIC's bargained-for consideration, namely the 35% equity interest in the litigation. SAIC also maintained certain "review rights," requiring VirnetX to notify SAIC of any proposed license, assignment, or settlement, and allowing SAIC to object if such course of action would

7

unreasonably diminish the bargained-for consideration. *Id.* at 8. SAIC, however, could not unreasonably withhold its consent. *Id.* SAIC also had certain reversionary rights and a security interest in the patents-in-suit. *Id.* at 9.

The Court found that SAIC's right to object, reversionary rights, and security interest amounted to SAIC's ability to influence VirnetX's enforcement decisions. *Id.* at 9–10. Coupling SAIC's right to influence VirnetX's enforcement decisions with SAIC's 35% equity interest, the Court found that SAIC retained an ownership interest in the patents-in-suit. *Id.* As such, the Court found that VirnetX lacked prudential standing and ultimately joined SAIC as a plaintiff pursuant to Rule 19.

*SAIC Current Rights*

As of the time of the filing of this motion, VirnetX contends that it has paid SAIC the "Maximum Amount," as defined in ¶ 7.3 of the Original PLAA. *See* OPP., MATHUR DECL., ¶ 2; EX. B at ¶ 7.3.[1] As a result of the Maximum Amount being paid, SAIC's Security Interest has terminated. *See* OPP., EX. D, ¶ 18. Also, SAIC's reversionary rights have been extinguished. *See* OPP., EX. A, ¶¶ 1.31, 5.1, 7.2, 7.3 and EX. E, ¶ 9(a). Accordingly, SAIC currently holds an equity interest in any litigation related to the patents-in-suit and review and objection rights to any proposed license, assignment, or settlement. *See* OPP., EX. A, ¶ 7.3, EX. C, ¶ 5(b), and EX. E, ¶ 8.

---

[1] The Court is faced with dueling declarations regarding the current state of affairs between VirnetX and SAIC. Defendants contend that SAIC has represented that the contractual relationship has not changed between VirnetX and SAIC since the Court's 2008 Order. MOTION, STADNICK DECL., ¶ 2. On the other hand, VirnetX's Vice President of Corporate Development and Product Marketing declares that VirnetX has paid the "Maximum Amount" to SAIC as described in the Original PLAA—which would materially change SAIC's rights under the agreements. OPP., MATHUR DECL., ¶ 2. The Court's determination accepts that VirnetX has paid the "Maximum Amount." Even if the Court were to accept Defendants' contention that SAIC's counsel stated that the "contractual relationship" between VirnetX and SAIC has not changed since 2008, pursuant to the Maximum Amount being paid, SAIC's *rights* under the contracts have changed even if the contractual relationship has not been altered.

Additionally, VirnetX is still required to take commercially reasonable steps to enforce the patents-in-suit to protect SAIC's interest to receive the bargained-for consideration, *i.e.*, the equity interest. 2008 ORDER at 8. While there is no dispute that SAIC maintains an equity interest, the ultimate determination of whether VirnetX has prudential standing turns on the interpretation of SAIC's "review and objection rights." In other words, the Court must determine whether SAIC, via its review and objection rights, retains sufficient control over decisions that affect the rights to the patents-in-suit. *Id.*

*Constitutional Standing*

As explained in the 2008 Order, VirnetX has constitutional standing to bring suit. 2008 ORDER at 6. The same analysis applies now and VirnetX continues to have constitutional standing to bring suit.

*Prudential Standing*

Had SAIC merely retained an equity interest that VirnetX was required to take commercially reasonable steps to protect, the Court's analysis would be finished—VirnetX would hold all substantial rights to the patents-in-suit. SAIC would merely "retain a right to proceeds and associated rights." *Advanced Tech. Incubator, Inc. v. Sharp Corp., et. al.*, 2009 U.S. Dist. LEXIS 69736, at *17 (E.D. Tex. Aug. 10, 2009) (Folsom, J). However, SAIC still maintains review and objection rights. In 2008, the Court did not analyze whether SAIC's objection rights amounted to a "veto." Given the changed nature of SAIC's rights under the agreements, an explicit analysis of SAIC's review and objection rights is now necessary.

In *Propat Int'l Corp. v. RPost, Inc.*, the Federal Circuit found that, Authentical Technologies, Ltd. ("Authentix"), did not grant all substantial rights to Propat International

9

Corporation ("Propat"), because Authentix "retain[ed] an economic interest in the patent and a substantial measure of control over decisions affecting the patent rights." 473 F.3d at 1191. The Federal Circuit further stated that it has never found that a patentee transferred all substantial rights in a patent when the patentee maintains an equity interest plus:

> a right to notice of licensing and litigation decisions and the right to veto such decisions as long as the veto power was not exercised unreasonably, and the unrestricted power to bar [the grantee] from transferring its interest in the patent to a third party.

*Id.*

The Federal Circuit held that Authentix's retention of the right of notification of all targets for licensing or suit, coupled with Propat's need for consent from Authentix to enter any such agreement, amounted to substantial control typically associated with retention of an ownership interest. *Id.* (citing *Sicom Sys.*, 427 F.3d at 979; *Intellectual Prop. Dev.,* 248 F.3d at 1345). Further, the right to arbitrarily veto any Propat attempt to transfer its rights in the patent was a "strong indicator" of Authentix retaining an ownership interest. *Id.* (citing *Sicom Sys.*, 427 F.3d at 979; *Intellectual Prop. Dev.*, 248 F.3d at 1345; *Abbott Labs. v. Diamedix Corp.*, 47 F.3d 1128, 1132 (Fed. Cir. 1995)).

At the other end of the spectrum are *Vaupel Textilmaschinen KG v. Meccanica Euro Italia* and *Speedplay, Inc. v. Bebop, Inc.*, both cases where the Federal Circuit held that the respective agreements in question effectively transferred all substantial rights to the patents at issue. *See Vaupel*, 944 F.2d at 875; *Speedplay*, 211 F.3d at 1250. In *Vaupel*, the grantor did not retain any rights to control the grantee's right to sue, but only retained a right to be notified of any litigation regarding the patent. *Vaupel*, 944 F.2d at 875. In *Speedplay*, the grantor had no right to veto the

grantee's decision to transfer its rights under the agreement. *Speedplay*, 211 F.3d at 1250.

Here, SAIC does not hold an explicit right to veto VirnetX's enforcement decisions. SAIC's right to object, however, is more than a simple right of notification. SAIC's right to reasonably object to any proposed license, assignment, or settlement falls squarely between the agreements discussed in *Propat*, on one hand, and *Vaupel* and *Speedplay* on the other hand. The parties disagree how SAIC's review rights should be interpreted. Defendants characterize them as a veto right, while VirnetX contends that they are merely a right to object. *See* (Doc. No. 135, "REPLY" at 3; Doc. No. 139, "SURREPLY" at 1–2).

SAIC's right to object is necessarily more than a mere right of notification of any potential license, assignment, or settlement. While SAIC cannot unreasonably object, it may nonetheless object to protect its bargained-for consideration, *i.e.*, its equity interest. Considered together, SAIC's right to object and VirnetX's obligation to take commercially reasonable steps to protect the equity interest, weighs toward a finding that SAIC did not convey all substantial rights to VirnetX. A right to object to enforcement decisions means that SAIC has some measure of control over VirnteX's decision-making process regarding licensing, assignment or settlement. In other words, any disagreement between SAIC and VirnetX as to whether a potential license or settlement is "commercially reasonable" may cause their interests to diverge, such that VirnetX does not have the right to indulge infringement. *See Sicom Sys.*, 427 F.3d at 978-79 (citing *Abbott Labs.*, 47 F.3d at 1132).

While an extremely close call, the Court finds SAIC's right to review and object, coupled with SAIC's equity interest, amounts to an ownership interest. Therefore, VirnetX does not hold all substantial rights under the patents-in-suit and does not have prudential standing to bring this

infringement action. *See Propat*, 473 F.3d at 1191; *Israel Bio-Engineering Project v. Amgen, Inc.*, 401 F.3d 1299, 1304–05 (Fed. Cir. 2007) ("[A]n ownership interest [in the patent-in-suit], however, would not be sufficient to give [the plaintiff] prudential standing to sue for infringement, as [it] would have to join all the other co-owners in order to establish such standing.").

*Joinder*

As explained in 2008, under Rule 19(a)(1)(B), joinder of SAIC is proper. 2008 ORDER at 11. SAIC's absence would expose Defendants to a substantial risk that SAIC would object to any proposed settlement during the pendency of this litigation, which would result in undermining any resolution of this case or would stay the case pending resolution of VirnetX and SAIC's dispute. Also, SAIC's absence would leave VirnetX subject to a risk of inconsistent obligations when its interests and SAIC's interests diverge. Therefore, SAIC's joinder is proper under Rule 19.

*Dismissal for Failure to Join SAIC*

Defendants contend, however, that VirnetX has willfully ignored its lack of standing and that dismissal is warranted in this case. MOTION at 6. Defendants argue that because this is the second time VirnetX has failed to secure standing prior to filing suit, the Court should dismiss this suit rather than joining SAIC. Courts may dismiss a suit without leave to amend after considering factors such as undue delay, repeated failure to cure deficiencies by prior amendments, dilatory motive, bad faith, prejudice to defendants, and futility of amendment. *Gregory* 634 F.2d at 203.

On these facts, it does not appear that VirnetX willfully ignored its lack of standing. As detailed above, VirnetX and SAIC's rights under the relevant agreements have changed substantially since 2008. SAIC's rights were greatly diminished by VirnetX paying the "Maximum Amount" as defined in the agreement. While ultimately wrong, VirnetX's belief that it currently holds all

12

substantial rights was reasonable given SAIC's reduced rights in the patents-in-suit. Put simply, it does not appear that VirnetX acted in bad faith by failing to join SAIC. As such, the factors of undue delay, repeated failure to cure, dilatory motive, and bad faith, which the Court may consider, are inapplicable in this case. Nevertheless, the Court must address whether VirnetX's failure to join SAIC has prejudiced Defendants. *See Zenith Radio Corp. v. Hazeltime Research, Inc.*, 401 U.S. 321, 331 (1971).

As an initial matter, it should be noted that SAIC, understanding that it would have discovery obligations in this case, contacted Defendants and offered to provide that discovery. MOTION at 4. While SAIC's offer was past the deadline for initial disclosures, it nonetheless proposed entering the litigation under the same relative terms in which it joined the Microsoft Litigation. *Id.* Also, SAIC does not believe it is a necessary party to this case, but has also offered to join as a plaintiff. OPP. at 5. Unlike the Microsoft Litigation, SAIC is not resisting Defendants' discovery efforts but is attempting to limit those obligations to the same terms as the Microsoft Litigation. *See* 2008 ORDER at 11-12; MOTION at 4; OPP. at 5–6.

Additionally, a review of Defendants' original responsive pleadings, dating back to October 29, 2010, reveals that some of them asserted a counterclaim contending that VirnetX lacked standing. *See, e.g.*, Doc. No. 89 ¶ 85; Doc. No. 53 at 14. One Defendant specifically alleged that SAIC retained substantial rights to the patents-in-suit. *See* Doc. No. 55 ¶ 86. Despite these counterclaims and explicit knowledge of SAIC, Defendants failed to investigate with VirnetX or contact SAIC early in this litigation. As of the filing of this motion, no Defendant had attempted to obtain discovery from SAIC, either via subpoena or through agreement. OPP. at 5–6. While certainly not dispositive of the issue of prejudice, Defendants' complaints of prejudice appear overstated.

The Court finds that Defendants specific claims of prejudice do not warrant dismissal in this case. Defendants contend they are prejudiced by SAIC's failure to provide infringement contentions. *Id.* at 8. However, any infringement contentions served by SAIC are highly unlikely to be materially different than the infringement contentions that VirnetX has already served. Who owns the patents is likely irrelevant to how the claim charts are presented regarding Defendants accused products.

Defendants also contend that SAIC's failure to provide initial disclosures has undermined Defendants' opportunity to investigate and assert potential counterclaims. MOTION at 9. However, VirnetX's initial disclosures contain all known individuals who have knowledge of SAIC's history and the patents-in-suit. Defendants fail to identify specific potential counterclaims that would *only* be available after a review of SAIC's initial disclosures, as opposed to VirnetX's disclosures. Additionally, at the time of the filing of this motion, the document production deadline was months away and some Defendants had not yet produced documents. Therefore, any claimed prejudice was premature.

Defendants also assert that they have been prejudiced by SAIC's lack of participation in the negotiation of the discovery, protective, and docket control orders. *Id.* at 8, 10. Defendants, however, do not explain how they would have approached the negotiations differently based on who held all substantial rights to the patent. Also, SAIC's involvement in the negotiations was unlikely to affect any agreed deadlines or how confidential materials were to be handled. Accordingly, the Court finds that Defendants have suffered little to no prejudice as a result of SAIC not being joined earlier in this litgation.

*Dismissal as Sanction*

Defendants also contend that the Court should use its inherent power to dismiss the case, with

14

prejudice, as a sanction for VirnetX knowingly ignoring the Court's 2008 Order in the Microsoft Litigation. MOTION at 11. Dismissal with prejudice as a sanction is only available when a party willfully contravenes a court's order. *See Worrell v. Houston Can! Acad.*, 424 Fed.Appx. 330, 335-36 (5th Cir. 2011) (citing *Prince v. Poulos*, 876 F.2d 30, 32 (5th Cir. 1989)). "[D]ismissal is proper only in situations where the deterrent value of Rule 37 cannot be substantially achieved by the use of less drastic sanctions." *Id.*

Given the extremely close call whether SAIC still retained an ownership interest in the patents-in-suit, the Court finds that VirnetX's decision not to include SAIC as a co-plaintiff was not in bad faith. As such, the Court finds that dismissal with prejudice as a sanction is not appropriate.

*SAIC Discovery Obligations*

In 2008, SAIC was resisting discovery, but in the instant case, it has openly engaged Defendants to offer discovery akin to what was provided in the Microsoft Litigation. At this time, the Court will not compel Defendants to accept a similar arrangement, but the parties should expeditiously come to agreement regarding SAIC's discovery obligations. Regardless of the ultimate agreement, SAIC must now produce its relevant documents and materials as soon as practicably possible. Should SAIC's document production warrant Defendants **a good faith reason** as to why amendment of their Answers or invalidity contentions are necessary, VirnetX and SAIC should not unreasonably object. However, Defendants should not use this as an opportunity to create controversy where none exists.

## CONCLUSION

Based on the foregoing, the Court **DENIES** Defendants' motion to dismiss and **GRANTS** VirnetX's alternative request to join SAIC. As a result, the Court **DENIES** SAIC's motion for leave

to file a response to Defendants' motion.  SAIC has five Court days to join as a plaintiff.

**So ORDERED and SIGNED this 20th day of March, 2012.**

_____
**LEONARD DAVIS
UNITED STATES DISTRICT JUDGE**