**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| VIRNETX, INC., ) | |
|     *Plaintiff,* ) | |
| v. ) | C.A. No. 6:10-cv-417 (LED) |
| ) | |
| CISCO SYSTEMS, INC., *et al.* ) | |
| ) | |
|     *Defendants.* ) | |
| ) | |

**DEFENDANT CISCO SYSTEMS, INC.'S RENEWED MOTION TO STAY
<u>PENDING REEXAMINATION PROCEEDINGS</u>**

**INTRODUCTION**

As Cisco explained in Defendants' prior motion to stay and related briefing[1], VirnetX repeatedly has sought to apply broad constructions of its patent claims in this Court while advocating narrow claim interpretations—and therefore altering claim scope—to avoid cancellation of those same claims in Patent Office reexamination proceedings. The consequences have been significant. After VirnetX secured a jury verdict of infringement against Microsoft, VirnetX narrowed several claim terms in reexamination. Based on those narrowing arguments in the Patent Office, this Court correctly decided on two separate occasions to modify its earlier constructions of those terms. As a result, the jury verdict against Microsoft was based upon an interpretation of the claims that VirnetX has now surrendered.

VirnetX nevertheless continues to employ this same tactic of arguing for broad interpretations in this Court while urging much narrower interpretations in pending reexaminations in an attempt to overcome prior art. For example, VirnetX succeeded in its jury trial against Apple under a broad construction of "indication," "indicate," and "indicating," critical claim elements that appear in every independent claim of two patents-in-suit. It then almost immediately narrowed the scope of that same critical language in the Patent Office—plainly contradicting the claim construction arguments it advanced in this Court—in an attempt to preserve its patent claims from multiple examiner rejections.

This is an atypical case. As this Court has recognized in changing its prior constructions multiple times, VirnetX's arguments in reexamination have a substantive impact on the scope of its patent rights. The "moving target" approach to claim construction pursued by VirnetX has undermined, and will continue to undermine, this Court's prior efforts to properly construe the

---

[1] Cisco hereby incorporates by reference Defendants' original motion to stay and related briefing (Dkt. Nos. 470, 496, 535, 540).

claims. Given VirnetX's actions to date, judicial economy warrants a stay of this matter pending conclusion of the substantially advanced reexamination proceedings, because only upon conclusion of the reexaminations will VirnetX be forced to finalize the scope of its claims—and only then can this Court fully and properly evaluate that claim scope. Fundamental fairness, meanwhile, warrants a stay so that Cisco can litigate VirnetX's allegations of infringement and the validity of the patents-in-suit on a fixed record.

## FACTUAL BACKGROUND

### I. VirnetX's Narrowing Arguments After The *Microsoft* Trial Concerning The "Virtual Private Network," "Secure Domain Name Service," And "Secure Communication Link" Claim Terms

This Court has already modified its claim constructions twice to account for VirnetX's narrowing of claim scope in reexamination proceedings. Shortly after settlement of the *VirnetX v. Microsoft* case—in which VirnetX obtained a jury verdict of infringement of two patents-in-suit—VirnetX advanced arguments in the Patent Office disclaiming "virtual private networks" that do not communicate directly and narrowing the meaning of "secure domain name service." This Court accordingly revisited and modified its earlier constructions of those terms. (Dkt. No. 266 at 7-8, 17-19.) But VirnetX continued to narrow its claims in an attempt to overcome additional examiner rejections. For instance, after claim construction in this case, VirnetX altered the scope of yet another set of claims by arguing to the Patent Office that secure communication links required encryption, requiring this Court to revisit its claim construction of "secure communication link." (Dkt. No. 541.)

### II. VirnetX's Narrowing Arguments After The *Apple* Trial Concerning The "Indication" Claim Terms

Even after the verdict in the *Apple* case, VirnetX has continued to narrow the scope of its claims. In this Court, VirnetX repeatedly advocated a broad interpretation of the claim terms

2

"indication," "indicate," and "indicating." For example, during claim construction in this case and in the *VirnetX v. Mitel* litigation, VirnetX argued that "there is no requirement in the claims that the indication that we are talking about goes either to the user or is visual." (D.I. 289 at 101:8-10; *see also* D.I. 192 at 9; 6:11-cv-018, D.I. 153 at 19.) Accepting that argument, this Court found that no construction of the "indication" terms was necessary. (D.I. 266 at 27-28; 6:11-cv-018, D.I. 307 at 10-11.)

Moreover, VirnetX's infringement expert testified at trial that Apple's FaceTime functionality met the "indication" elements of the asserted claims of the '504 and '211 patents because it included a *non-visual* "push message" that is sent to a *phone* and that contains certain address and certificate information. (*See, e.g.*, Ex. 1 at 122:9-23, 134:8-21.) Just weeks later—after the infringement verdict against Apple—VirnetX argued to the Patent Office that the cited prior art does not anticipate the claimed indication because the prior art fails to disclose "*a visual message or signal to a user.*" (*See* Ex. 2 ("The Second Office Action also applies a much broader construction of 'indication' that encompasses features that neither indicate that the domain name service system supports establishing a secure communication link *nor are visible to any users*. . . . *The Office's construction is improper* because it is inconsistent with the '504 patent specification."); Ex. 3 ('211 patent).)[2]

### ARGUMENT

I.  **Because VirnetX Continues To Narrow The Scope Of Its Claims Relative To This Court's Constructions, A Stay Pending Completion Of The Ongoing Reexaminations Is Warranted And Will Conserve Judicial And Party Resources.**

VirnetX should not be permitted to argue for and use broad claim constructions to secure infringement verdicts in this Court and, at the same time, tell the Patent Office that those very

---

[2] *See also* Cisco's Motion For Reconsideration Of The Court's Constructions Of The "Indicating" Terms In The Asserted Claims Of The '504 And '211 Patents (Dkt. No. 654).

same constructions are incorrect to avoid cancellation of its patent claims. VirnetX *continues* to narrow claim scope concerning numerous claims *after each trial* as the reexaminations proceed towards completion. Moving forward to trial now will unfairly allow VirnetX to continue making inconsistent arguments in this Court and the Patent Office and—because VirnetX continues to narrow the scope of its claims—effectively guarantee that the parties will need to re-litigate issues of infringement, validity, and damages in this Court if VirnetX's claims somehow survive reexamination. *See Alcohol Monitoring Sys., Inc. v. ActSoft, Inc.*, Nos. 07-cv-02261-PAB, 08-cv-01226, 2011 WL 5075619, at *6 (D. Colo. Oct. 25, 2011) ("Allowing plaintiff to alter its position [from that asserted to the Patent Office] would give plaintiff the unfair advantage of retaining the . . . patent while pursuing an infringement claim based on a position inconsistent with the prior successful position."); *Anascape, Ltd. v. Microsoft Corp.*, 475 F. Supp. 2d 612, 615 (E.D. Tex. 2007) ("[C]ourts need not expend unnecessary judicial resources by attempting to resolve claims which may be amended, eliminated, or lucidly narrowed by the patent reexamination process and the expertise of its officers.").[3] A stay pending completion of the reexaminations, on the other hand, will prevent those inefficiencies and VirnetX's unfair tactics by forcing VirnetX to litigate infringement and validity based on settled and final claim scope.

## II. The Reexaminations Have Substantially Advanced And Remain Extremely Likely To Simplify The Issues In This Case.

Contrary to VirnetX's protests, the reexaminations have significantly progressed, and they remain on track to significantly simplify the issues for this case. As Cisco previously explained, Patent Office examiners—after having considered arguments from both VirnetX and

---

[3] At a minimum, this Court should temporarily stay the start of trial so that the parties can conduct discovery and serve amended expert reports in view of VirnetX's new arguments to the Patent Office concerning the "indication" claim terms.

4

Cisco—have rejected substantially all of VirnetX's asserted claims in every patent-in-suit in view of multiple, independent prior art references. (*See* Dkt. No. 470 at 1-2, Dkt. No. 535 at 1-2.) Moreover, with respect to three patents-in-suit, the Patent Office has considered ***multiple*** rounds of argument from the parties and has issued Actions Closing Prosecution maintaining those final rejections.

While VirnetX has suggested that its claims may yet somehow survive the reexamination process (citing results from other proceedings), that result is highly unlikely here in view of the multiple, independent grounds of rejection. That is not mere speculation. When Cisco and Apple filed their original stay motion in August 2012, the substantial majority of claims asserted against Cisco and subject to reexamination stood rejected. (Dkt. No. 470 at 3.) Five months later, VirnetX has not overcome ***any*** of those claim rejections. Rather, ***all*** of the asserted claims that stood rejected in August 2012 ***continue*** to stand rejected, and the Patent Office has rejected an additional eleven asserted claims. Thus, 127 of VirnetX's 131 claims asserted against Cisco stand rejected today.[4] (*Id.*)

On the other hand, this matter stands far from final resolution. Apple is likely to appeal any final judgment of this Court to the Federal Circuit, whose determinations will affect issues of claim construction and validity in this case. Either VirnetX or Cisco will likely also appeal any decision following trial. Any such appeal, and subsequent remand, will take a significant amount of time to complete—during which time the reexaminations will likely conclude.[5] In the

---

[4] VirnetX recently agreed to narrow its asserted claims against Cisco to 25 claims. (Ex. 4.) Of those 25 claims, 22 remain rejected in the ongoing reexamination proceedings, including 18 claims rejected in Actions Closing Prosecution.

[5] As numerous commentators have observed, Federal Circuit reversal on claim construction issues results in a substantial number of appeals being remanded to the district court. *See, e.g.,* Kimberly Moore, *Markman Eight Years Later: Is Claim Construction More Predictable?*, 9 LEWIS & CLARK L. REV. 231, 239-45 (2005) (reporting Federal Circuit claim construction

circumstances presented here, judicial economy would be better served, and the parties' resources conserved, by waiting until the reexaminations conclude and the scope of VirnetX's patent claims is finally determined.

VirnetX already has secured two verdicts, totaling nearly half a billion dollars, based on constructions that VirnetX subsequently disavowed in reexaminations after each verdict. It continues to narrow and change the scope of the patent claims asserted against Cisco. VirnetX should not be permitted to take advantage of those same unjust tactics a third time. Judicial efficiency, conservation of resources, and fundamental fairness all warrant a stay of this matter pending completion of the ongoing reexamination proceedings.

## **CONCLUSION**

For all of the foregoing reasons, and all of the reasons outlined in Defendants' original motion to stay and related briefing, Cisco respectfully requests that the Court stay this matter pending completion of the reexamination proceedings.

---

reversal rates of up to 37.5%). That likelihood is even higher here, particularly given VirnetX's established practice of advancing scope-altering arguments in ongoing reexamination proceedings and the likelihood that VirnetX will continue that practice between now and final disposition of the litigations in an attempt to save its patent claims from cancellation. By contrast, because of the nature of the proceedings, any appeal by VirnetX from the Patent Office's claim rejections during reexamination will be ultimately decided one way or the other by the Federal Circuit—it will either affirm those rejections and cancel the claims, or it will reverse and find the claims patentable. As such, contrary to VirnetX's contention, the reexaminations (including appeal to the Federal Circuit) will likely conclude before final disposition of this case.

Dated:  January 23, 2013

By: */s/ Michael E. Jones*  
Michael E. Jones  
Texas State Bar No. 10929400  
John F. Bufe  
Texas State Bar 03316930  
**POTTER MINTON PC**  
110 N. College Avenue, Suite 500  
Tyler, Texas 75702  
Telephone:  (903) 597-8311  
Facsimile:   (903) 593-0846  
Email:  mikejones@potterminton.com  
          johnbufe@potterminton.com

OF COUNSEL:

John M. Desmarais (*pro hac vice*)  
jdesmarais@desmaraisllp.com  
Michael P. Stadnick (*pro hac vice*)  
mstadnick@desmaraisllp.com  
**DESMARAIS LLP**  
230 Park Avenue  
New York, NY 10169  
Telephone: (212) 351-3400  
Facsimile:  (212) 351-3401

**Attorneys for Defendant Cisco Systems, Inc.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on January 23, 2013.

*/s/ Michael E. Jones*

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that counsel for Defendants has complied with the meet and confer requirement in Local Rule CV-7(h). This motion is opposed. The personal conference required by Local Rule CV-7(h) was conducted on January 21, 2013 via telephone conference. No agreement could be reached and discussions have conclusively ended in an impasse, leaving an open issue for the court to resolve.

*/s/Michael E. Jones*