# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| VIRNETX INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| CISCO SYSTEMS, INC., et al. | § | Civil Action No. 6:10-CV-417 |
| | § | |
| Defendants. | § | |

## FIRST AMENDED JOINT PROPOSED
## PRELIMINARY JURY INSTRUCTIONS OF VIRNETX AND CISCO

Ladies and Gentlemen of the Jury:[1]

You have now been sworn as the jury to try this case.  As the jury, you will decide the disputed questions of fact.  As the Judge, I will decide all questions of law and procedure.  From time-to-time during the trial and at the end of the trial, I will instruct you on the rules of law that you must follow in making your decision.

Very soon, the lawyers for each side will make what is called an opening statement.  Opening statements are intended to assist you in understanding the evidence.  However, what the lawyers say during their opening statements is not evidence.  It's only what they expect the evidence will show.  What you should base your decision on is the evidence that you will hear and that comes into evidence from the witness stand, by deposition, and from the exhibits that I

---

[1] Adapted from instructions as given in *VirnetX, Inc. v. Microsoft Corp.*, No. 6-07-CV-80; *i4i LP v. Microsoft Corp.*, No. 6:07CV113 (E.D. Tex. May 2009) and *VirnetX  Inc. v. Apple, Inc.*, Civil Action No. 6:10-CV-417.

admit into evidence.  You will rely on this evidence in making your decision as to the verdict in this case.

The party who brings a lawsuit is called the plaintiff.  The plaintiff in this case is VirnetX Inc., who will be referred to as "Plaintiff" or "VirnetX."  The party against whom this suit is brought is called the defendant.  In this action, the defendant is Cisco Systems, Inc. who will be referred to as "Cisco" during this trial.

As I told you during voir dire, this is a case of alleged patent infringement.  After the opening statements, VirnetX will call witnesses and present evidence.  Then Cisco will have an opportunity to call witnesses and present evidence.  After the parties' main case is completed, VirnetX may be permitted to present what's called rebuttal evidence.

After all of the evidence is in, I will instruct you on the applicable law.  I will give you detailed instructions both orally as I am doing now, and at the end of the case, you will have those written instructions to take with you to the jury room.  After I have given you your final instructions, after all the evidence is in, you have heard the final instructions, then you will hear the closing argument of the attorneys.  After you have heard their closing arguments, then and only then, will you retire to the jury room–for the first time, start to discuss the case, deliberate and reach a verdict.

During this case, I want you to keep an open mind.  Do not decide any fact until you have heard all of the evidence, then closing arguments and my instructions.  Pay close attention to the testimony and the evidence.

If you would like to take notes during the trial, you may do so.  We have some notebooks that I'm going to ask the court security officer to pass out to you at this time, as well as a pen.

The notebooks each have a cover page under the plastic cover.  Slide the cover page out so you can write your name at the top of that, so you will know whose notebook that is, then slide it back in.

If you will open your notebook, you should find a blank pad on the inside for taking notes.  Please write your name on the front page of that tablet.  And then you can flip to the second page to begin taking any notes, if you desire to.  And that's so you can identify your tablet and your notebook.  You can also make notes in your notebook, if you'd like to.  What you're going to find in your notebook is a copy of the patents in this case, a copy of the Court's claim construction chart, and a glossary of terms.  I'll go over all of that with you in detail as I go through these instructions.  So please just listen to my instructions now.

If you decide to take notes in this case, be careful not to get so involved in your note taking that you become distracted and miss part of the testimony.  You don't need to write down everything that happens, but take such notes as you feel are appropriate or would be helpful to you.  Your notes are to be used as an aid to your memory.  And if your memory should later be different from your notes, then you should rely on your memory and not on your notes.

Just because something gets written down on the notepad doesn't make it any more important than your recollection or another juror's recollection.  So don't be unduly influenced by the notes that others may take.  A juror's notes are not entitled to any greater weight than the recollection of each juror concerning the testimony.  For example, all because someone has written something down does not necessarily mean that they heard it right or that they wrote it down correctly.  So just because it is written down does not mean that it is to be given any greater weight than just what your memory would be.  But it is there to help you.

Even though we have a court reporter present who will be making stenographic notes of what is said in court, a typewritten copy of the testimony will not be available for your use during deliberations.  On the other hand, any exhibits that are introduced into evidence – that would be documents, physical evidence – will be available for you during your deliberations.

Now, my next instruction is a very important instruction.  Until this trial is over, do not discuss this case with anyone, and do not permit anyone to discuss this case in your presence. This includes your family and friends.  Do not discuss the case even with the other jurors until all of the jurors are in the jury room actually deliberating at the end of the case.  As I told you last week, when you go to lunch or take a break, talk about anything you wish, but do not talk about the case.

Do not discuss this case with anyone.  Each juror should hold themselves completely apart from any discussion about this case with anyone until we get to the end of the case and then only with your fellow jurors when you go back to deliberate.

If anyone should attempt to discuss this case or to approach you concerning this case, you should inform me immediately or through my court staff, and you should not visit with them.

Hold yourself completely apart from all of the people involved in the case, the parties, the witnesses, the attorneys and the persons associated.  It is important not only that you be fair and impartial but also that you appear to be fair and impartial.  And that is why you should not have any contact with any of them.

You have got a juror badge on.  All of the lawyers here and spectators, they're all friendly people and would love to chat with you, but they're going to see that juror badge, so they are not going to be communicating with you in the elevator or chitchatting with you, and you should not communicate or chitchat with them. Hold yourself completely apart from them.

Also, as far as discussing this case with others, if you have any type of social networking internet site or tool like FaceBook, MySpace, or Twitter, you should not discuss or even mention the case at all on any of those sites.  So no postings on Twitter, no discussions on FaceBook or any of those social-networking sites.  Do not post updates about what is going on in the case to any of those sites.  Do not send or receive text messages about the case.  That would be entirely improper.  And if you were to do that, it can result in all of the time and expense that everybody has spent getting the case to this point, and trying the case can be put in jeopardy.  Please follow those instructions very, very carefully.

Do not make any independent investigation of any fact or matter in this case.  Do not learn anything about the case from any other outside source.  And that's very important, because what you decide this case on is only the testimony that's taken under oath and the exhibits that are legally admitted into evidence.  So you should not go to any other source or receive information from any other source.  I do not believe there will be anything on television or in the newspaper about this case, probably not, but do not watch TV or read the newspaper about this case.  If there should be something, just turn the TV to another channel, and don't read the article.

Also, do not use the internet or Google to find out more information about the case, the parties, or the attorneys in the case.  In other words, don't go home and get on your computer and start doing any kind of independent investigation.  That would be extremely improper.  And the reason for that, again, is very, very important.  It would violate your oath as a juror, because you would be considering something other than the evidence in the case, and it could result in a mistrial of the case and all of the time and expense involved in this going for naught.  So be sure

to follow that instruction.  You are to be guided only by the evidence in the case, only by what you see and hear in this courtroom and nothing else.  Make no independent investigation.

During the trial, it may be necessary for me to confer with the lawyers out of your hearing or to conduct a part of the trial out of your presence.  I will handle these matters as briefly and as conveniently for you as I can, but you should remember that they are a necessary part of any trial.  And if you have to wait in the jury room–and, again, I am going to try to keep that to a minimum.  I am going to try to deal with anything I need to take up with the attorneys during a break or during the noon hour or after hours or before hours, because I want your time to be spent this week here in the jury box hearing evidence.  But those occasions will come up where you are going to be in the jury room, and you are going to be wondering, why are we sitting in here?  What is going on?  Just realize that is part of the case.  Again, we will try to hold it to a minimum.

Now let me explain to you about the parties and the nature of this case.  This is a patent case.  This case involves six patents identified by their numbers as follows:  U.S. Patent Number 6,502,135, also known by its last three digits as "the '135 Patent"; U.S. Patent No. 7,418,504 ("the '504 Patent"); U.S. Patent No. 7,921,211 ("the '211 Patent"); U.S. Patent No. 7,490,151 ("the '151 Patent"); U.S. Patent No. 6,839,759 ("the '759 Patent"); and U.S. Patent No. 7,188,180 ("the '180 Patent").  These patents may be referred to as the patents-in-suit.  These patents generally relate to **[VirnetX proposes:  virtual private networks ("VPNs") and security-capable communications between computing devices]** **[Cisco proposes: alleged improvements in systems and methods for creating virtual private networks ("VPNs") and encrypted communication links]**. And if you'll look in your notebooks, you'll see these patents, but don't read them now.

The plaintiff in this case, VirnetX, contends that Cisco is directly and indirectly infringing certain claims of the '135 Patent, the '504 Patent, the '151 Patent, the '211 Patent, the '759 patent and the '180 patent by making, using, selling, offering to sell and importing into the United States [VirnetX proposes: their accused patented products and/or patented methods] [Cisco proposes: the patented devices in their products and/or by the use of the patented methods in their products].

[VirnetX Proposes: VirnetX also contends that Cisco's infringement is willful.][2] VirnetX contends that it is entitled to damages as a result of Cisco's infringement.

Cisco, on the other hand, denies it is infringing and contends that the patents-in-suit are invalid as being either anticipated by or obvious in light of what is called prior art.  Cisco further contends that certain claims of the patents are invalid because the patent specification does not have an adequate written description or enablement.  [Cisco also contends that the patents are invalid for deriving the invention from someone else's idea and for failing to list all the inventors on the patents.][3] [4]  Cisco further contends that VirnetX is not entitled to any damages.

---

[2] **Cisco objects to this instruction, and to any reference to the concept of willfulness, prior to a threshold determination by this Court that VirnetX has proven by clear and convincing evidence that Cisco acted despite an objectively high likelihood that its actions constituted infringement of a valid patent.  *See Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs.*, 682 F.3d 1003, 1006-07 (Fed. Cir. 2012) (holding that the determination of objective recklessness, which is prerequisite to a showing of willful infringement, is an issue of law for the Court's determination).**

[3] **VirnetX objects to these instructions because Cisco did not timely disclose this defense in its invalidity contentions or otherwise.**

[4] **Cisco replies that this defense was disclosed in Cisco's original July 1, 2011 Invalidity Contentions at fn. 2.**

Now, that may all sound like Greek to you right now.  It is a lot of new words thrown at you.  I am going to define a lot of those words for you as I go through the instructions.  The attorneys are going to discuss them in their opening statements.  The witnesses are going to help you understand those words.  So do not feel overwhelmed at this stage.  You are going to get a lot of education this week and lots of help from the attorneys and from the witnesses for both sides.

Let me visit with you about the patents and the U.S. patent system generally.  You saw some of this on the video that you saw with the jury panel before voir dire.

Patents are issued by the United States Patent and Trademark Office, which is part of the United States Government.  The United States Government is empowered by the United States Constitution to enact patent laws and issue patents to protect inventions.  Inventions that are protected by patents may be products, compositions, or methods for doing something or for using or making a product or composition.

The purpose of the patent system is to help advance science and technology.  The patent system achieves this purpose by granting to the owner of a patent the right, for the term of the patent, to exclude any other person from making, using, offering for sale, selling and importing the invention covered by the patent anywhere in the United States.

A patent is granted for a set period of time, which for the patents involved in this case has not yet expired.  Once a patent expires, the patent owner may not exclude anyone from making use of the invention claimed in the patent.  The invention then becomes part of what we call the public domain, which means that anyone is free to use it.

During the term of the patent, however, if another person, without the patent owner's permission, makes, uses, sells, offers to sell, or imports into the United States, something that is

covered by the claims of the patent, then that person is said to infringe the patent.  The patent owner may enforce a patent against persons or companies believed to be infringers in a lawsuit in federal court such as in this case.  **[VirnetX proposes: The law does not require that the patent owner give advance notice to a defendant that the plaintiff intends to file suit.[5]][6]**

To be entitled to patent protection, an invention must be new, useful and nonobvious.  As I noted, a patent gives its owner the right to exclude other people from making, using, selling, offering for sale or importing what is covered by the claims of the patent.  Everyone, however, has the right to use existing knowledge and principles.  A patent cannot remove from the public the ability to use what was known or obvious before the invention was made or patent protection was sought.

**[VirnetX proposes:  The granting of a patent by the Patent and Trademark Office, however, carries with it the presumption that the patent is valid.  From the issuance of a patent, it is presumed that the subject matter is new, useful, and constitutes an advance that was not, at the time the invention was made, obvious to one of ordinary skill in the art.  However, that presumption may be rebutted at trial and you, the finder of fact, may find the patent to be invalid.[7]]**

Now, let me visit with you about the parts of a patent.

A patent includes two basic parts: A written description of the invention and the patent claims.   The written description, which may include drawings, is often referred to as the

---

[5]**Adapted from Final Jury Instructions as given in *Bedrock Computer Tech. L.L.C. v. Yahoo! Inc.*, Civil Action No. 6:09-CV-269-LED.**

[6]**Cisco objects to this instruction as unnecessary and confusing.**

[7]**Paragraph adapted from the preliminary instructions in *VirnetX, Inc. v. Microsoft Corp.*, No. 6-07-CV-80; *i4i LP v. Microsoft Corp.*, No. 6:07-CV-113 (E.D. Tex. May 2009).**

"specification" of the patent.  Please refer to the '211 patent in your notebook as I identify the different sections.  The cover page of the '211 patent provides identifying information, including the date the patent issued and the patent number along the top, as well as the inventors' names and filing date, and the name of the assignee, which is VirnetX, Inc., the plaintiff in this case, and a list of certain prior art publications on the first through third pages that were considered in the patent office when deciding to issue the patent.

The specification of the '211 patent begins with an abstract, found on the cover page. The abstract is a brief statement about the subject matter of the invention. You will see it starts with the first sentence:  "A secure domain name service for a computer network is disclosed that includes a portal connected to a computer network, such as the Internet, and a domain name database connected to the computer network through the portal."  Next are the drawings which appear as Figures 1-37 on the next 40 pages.  The drawings depict the various aspects of features of the invention.  They are described in words later in the patent specification.

The written description of the invention appears next.  In this portion of the patent, each page is divided into two columns, which are numbered at the top.  The lines on each page are also numbered going down the middle column, as you will see.  The written description of the '211 patent begins at column 1, line 1.  So when you see a reference during the trial to a column and a line number, you can go to that part of the patent to locate it.

The written description of the '211 patent begins at column 1, line 1, and continues to 55, line 36.  It includes a background section, a summary of the invention and a detailed description of the invention including some specific examples.

The specification ends with numbered paragraphs called claims.  The claims may be divided into a number of parts, referred to as claim limitations.  In the '211  patent, the claims

begin at column 55, line 37 which says "What is Claimed is," and continue to the end of the patent, at column 60, line 8.  Not all of those claims are being asserted, just certain ones.

Now let me instruct you about the significance of the patent claims.  The claims of a patent are a main focus of a patent case, because the claims are what define the patent owner's rights under the law.  That is, the claims define what the patent owner may exclude others from doing during the term of the patent.

The claims of a patent serve two purposes.  First, they set the boundaries of the invention covered by the patent, and second they provide notice to the public of those boundaries.  Thus, when a product or a method is accused of infringing a patent, the patent claims are compared to the accused product or method to determine whether there is infringement.

**[VirnetX proposes:  The claims of the patent are what are infringed when patent infringement occurs because the claims define what the invention is.]  [Cisco proposes: The claims of the patent must be analyzed to assess infringement because the claims define what the invention is.]**  The claims are also at issue when the validity of a patent is challenged. In reaching your determinations with respect to infringement and validity, you must consider each claim separately.

In your notebook, you are provided with this Court's construction of the meaning of certain terms in the asserted claims in this patent.  You must use these meanings that I give to you when you decide the issues of infringement and invalidity.  If you will turn over to the next tab in your notebook, you should see a listing of terms that the Court has construed previously. You do not need to be too concerned with it right now other than to just know it is there.  There are certain words within these claims.  For example, within Claim 1, there are certain words that at a pretrial proceeding, the attorneys had different arguments over what a particular word meant.

And they asked me to construe it, and I have done that, and I have provided you with those definitions.  So it is kind of like if you are reading a book and there is a particular word there that maybe you do not quite understand, you would go to a dictionary to look it up.  You would go to my claim construction to look up the meaning of those words, and you will be guided by those meanings.  Now, the attorneys will do a good job of explaining all of that when they get into the evidence, but you just need to know for now that those constructions are there and that they relate to these claim terms.

So let's look at Claim 1.  It goes through several steps there.  "A system for providing a domain name service for establishing a secure communication link, the system comprising:  a domain name service system configured and arranged to be connected to a communication network, store a plurality of domain names and corresponding network addresses, receive a query for a network address, and indicate in response to the query whether the domain name service system supports establishing a secure communication link."   So those are the steps of the claim.  Now you may not understand what all of those mean at this point, but again, that will be explained to you during the course of opening statements and during the evidence that you hear in the case.  But for now, just realize there is Claim 1; it is one of the asserted claims; and it comprises those various steps that I have mentioned to you or I just read to you.

Now let me visit with you about how a patent such as this is obtained.  We have gone over the patent, various parts of it.  Let's talk about how someone obtains a patent.  The United States Patent and Trademark Office is the agency of our federal government that initially examines patent applications and issues patents.  When an applicant for a patent files a patent application with the Patent and Trademark Office, the application is assigned to a patent examiner.  The patent examiner examines the application to determine whether the invention

described in the patent application meets the requirements of the patent laws for patentable inventions.  In examining a patent application, the patent examiner makes a search in the patent office records for prior art pertinent to the claims of the patent application.

The patent office records may or may not contain all of the prior art pertinent to the claims of the patent application.  The prior art is defined by statute, and I will give specific instructions after the close of the evidence as to what constitutes prior art.  But generally, it is technical information and knowledge that was known to the public either before the invention by the applicant or more than a year before the effective date of the application.  Prior art is not limited to patents and may also include publications and products.

The patent examiner advises the applicant of his or her findings in a communication called an office action.  The examiner may reject the claims, if he or she believes that they do not meet the requirements for patentable inventions.  The applicant may then respond to the rejection with arguments to support the claims and may sometimes make changes or amend the claims or submit new claims.  If the examiner concludes that the legal requirements for a patent have all been satisfied, then the patent examiner is said to allow the claims, and the application issues as a patent.

The process from the filing of a patent application to the issuance of the patent is called patent prosecution.  And that is what I have just described to you that goes on between the applicant and the Patent Office.  **[Cisco proposes: Third parties typically do not participate in the process.]**  The record of papers relating to the patent prosecution is referred to as the prosecution history or the file history.  In other words, it is documents that relate to what transpired between the applicant and the Patent & Trademark Office.  So that generally is how the patent process works.

I will now give you some information about the issues that will be presented to you at this trial, as well as a short overview of the applicable law.  At the close of the trial you will be given more specific instructions that you must follow in reaching your verdict.  You will also be given a verdict form and questions that you must answer in providing your verdict.  That will all transpire at the end of the case.

But now let me instruct you on the various instructions you will follow in deciding the case.

First, let me visit with you about the burdens of proof required in this case.  In any legal action, facts must be proved by a required standard of evidence, known as the burden of proof.  You may have heard about this in a criminal case, proof beyond a reasonable doubt; or in a civil case, it is proof by a preponderance of the evidence.  In a patent case such as this, there are two different burdens of proof that are used.  The first is called the preponderance of the evidence standard.  The second is called the clear and convincing evidence standard.  The standard beyond a reasonable doubt that is used in criminal cases, that does not apply in a civil case like this.  We have two standards: Preponderance of the evidence and clear and convincing evidence.

In this case VirnetX must prove its claims of patent infringement and damages by a preponderance of the evidence.  When a party has the burden of proof by a preponderance of the evidence, it means that you must be persuaded that what the party seeks to prove is more probably true than not true.

To put it another way, if you were to put the evidence for and against the party who must prove the fact on the opposite sides of a scale, a preponderance of the evidence requires that the scale tip at least somewhat toward the party who has the burden of proof.

Cisco has the burden of proving its invalidity defenses by a heavier burden called the clear and convincing evidence standard.  [VirnetX proposes: When a party has a burden of proof by clear and convincing evidence, it means that the evidence must produce in your minds a firm belief or conviction as to the matter sought to be established.]  [Cisco proposes: When a party has a burden of proof by clear and convincing evidence, it means that the evidence must produce in your minds a conviction that the truth of the factual contentions is highly probable.[8]]  In other words, if you were to put the evidence for and against the party who must prove the fact on the opposite sides of a scale, clear and convincing evidence requires that the scale tip more heavily toward the party who has the burden of proof.

Again, you may have heard of a burden of proof that is used in criminal cases called beyond a reasonable doubt.  That requirement is the highest burden of proof and is used only in criminal cases.  It does not apply in this case and you should, therefore, put it out of your mind.

Now let me visit with you about infringement.

VirnetX contends that Cisco is infringing the patents-in-suit by making, using, selling, offering for sale and importing into the United States [VirnetX proposes: certain accused VPN and security-capable communications products and methods] [Cisco proposes: certain accused products, and using certain accused methods].   VirnetX also contends that Cisco infringes indirectly by inducing or contributing to the direct infringement of others.

VirnetX contends that Cisco infringes the following patent claims.  You may mark those claims on the patents in your notebooks by circling those claim numbers.

  •     Claims 10, 12 and 13 of the '135 patent;

---

[8] *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, **694 F.3d 1312, 1327 (Fed. Cir. 2012) (citing** *Colorado v. New Mexico*, **467 U.S. 310, 316 (1984)).**

- Claims 2, 16, 17, 24. 26, 27 and 29 of the '759 patent;

- Claims 17, 28 and 33 of the '180 patent;

- Claims 36, 47, 51 and 53 of the '504 patent;

- Claim 7 of the '151 patent; and

- Claims 1, 8, 16, 17, 23, 27 and 31 of the '211 patent.

I will first tell you about direct infringement, and then I will tell you about indirect infringement.  VirnetX seeks to prove direct infringement of the patents by literal infringement or by the Doctrine of Equivalents.  To prove literal infringement of a particular patent claim, VirnetX must prove by a preponderance of the evidence that **[VirnetX proposes:  the accused VPN and security-capable communications products and/or the accused methods include each and every limitation of a particular claim] [Cisco proposes: the accused products include each and every limitation of a particular claim or that someone carries out each and every limitation of a particular claim]. [VirnetX proposes:  Infringement does not require proof that Cisco actually copied a VirnetX product or the patent.  A person can directly infringe a patent without knowing that what it is doing is an infringement of the patent.  It may directly infringe even though in good faith it believes that what it is doing is not an infringement of any patent and even if it did not know of the patent.[9]] [10]**

VirnetX also seeks to prove direct infringement of **[VirnetX proposes: the asserted patent claims] [Cisco proposes:  one patent claim]** through the Doctrine of Equivalents.[11]  The

---

[9]**Instructions appear in *VirnetX, Inc. v. Microsoft Corp.,* Civil Action No. 6:07-cv-80, Dkt. 376 at 9.**

[10]**Cisco objects to this instruction as unnecessary, confusing and misleading**.

[11] **Cisco objects to this instruction to the extent it pertains to claims other than claim 10 of the '135 patent.  Cisco notes that VirnetX's doctrine of equivalents theory concerning the**

Doctrine of Equivalents provides that patent protection is not limited to a claim's literal terms but also embraces its equivalents.

To prove infringement by the Doctrine of Equivalents, VirnetX must prove by a preponderance of the evidence that, for each limitation of a claim not literally met in the manner I just described, the limitation is met equivalently in the accused product or method of use. **[Cisco proposes: However, VirnetX cannot use the Doctrine of Equivalents to cover subject matter that was disclosed but not claimed by the patents, or if it would effectively eliminate a limitation of the patent claim.]**[12]

I will explain more about what is meant by equivalents at the end of the case, but just realize that those are two ways of showing direct infringement: literal infringement and Doctrine of Equivalents.

VirnetX also alleges that Cisco has indirectly infringed the asserted claims by inducing and/or contributing to another's direct infringement.  To prove that Cisco induced someone else to infringe, VirnetX must prove by a preponderance of the evidence that Cisco encouraged or instructed customers or other persons to make or use the patented products and/or use the patented methods in a manner that **[VirnetX proposes: results in direct infringement]** **[Cisco proposes: infringes]**, and that Cisco knew of the asserted patent and knew or was willfully blind to the fact that the encouragement or instructions would result in the customer acting in a way that infringed **[VirnetX proposes:  the]**  **[Cisco proposes:  a valid]** patent.  **[Cisco proposes:**

---

**"web site" limitation of claim 10 of the '135 patent was the only doctrine of equivalents theory that was timely disclosed.  See Dkt. Nos. 287, 444.**

[12] **VirnetX objects to this instruction because it is not an issue for the jury to decide; it is a matter for the Court.  The instruction is confusing in the context of preliminary instructions, incomplete and therefore inaccurate.**

**Induced infringement cannot exist if Cisco formed an objectively reasonable belief that the patent claim was invalid or that its action did not infringe a valid patent.[13]][14]**

To prove that Cisco contributed to another's direct infringement, VirnetX must prove by a preponderance of the evidence that Cisco sold or supplied to **[VirnetX proposes: a customer or]** another person a component that is a material part of the patented invention and is not suitable for other substantial noninfringing uses.  VirnetX must also prove that the **[VirnetX proposes: customer or]** other person directly infringed the patent claims and that Cisco knew **[VirnetX proposes: or were willfully blind to]** the fact that the components were especially made for use **[VirnetX proposes: in an infringing manner]** **[Cisco proposes: in a way that would infringe a valid patent]**.  **[Cisco proposes: Contributory infringement cannot exist if Cisco formed an objectively reasonable belief that the patent claim was invalid or that its action did not infringe a valid patent.[15]]**

Cisco denies that it has either directly or indirectly infringed any of the claims of the patents-in-suit.   I will explain in more detail at the end of the case how you will decide infringement.

**[VirnetX proposes:  Now with regard to willful infringement, VirnetX claims that Cisco willfully infringed the patent claims.  To prove willful infringement, VirnetX must**

---

[13] **An objectively reasonable belief that a patent claim is invalid or not infringed is incompatible with the requirement that the supplier knows of infringement, and is incompatible with the requirement that the supplier defendant took deliberate actions to avoid learning of the infringement.**

[14] **VirnetX objects to the instruction as incomplete, inaccurate, and confusing.**

[15] **An objectively reasonable belief that a patent claim is invalid or not infringed is incompatible with the requirement that the supplier knows that the component was especially made for use in a way that infringes at least one claim of the patent.**

prove that Cisco acted with reckless disregard of the patent claims.  To prove that Cisco acted recklessly, VirnetX must prove by clear and convincing evidence that Cisco actually knew or should have known that its actions constituted an unjustifiably high risk of infringement of a valid patent.  VirnetX's willful infringement claim requires a higher burden of proof, the clear and convincing standard, than VirnetX's other claims, which require only proof by a preponderance of the evidence.][16]

I will explain in more detail at the end of the case how you will decide the allegations of infringement [VirnetX proposes: and willful infringement].[17]

Now with regard to the defense of invalidity, Cisco contends that the asserted claims of the patents-in-suit are invalid.  Invalidity is a defense to patent infringement.  A person accused of infringement has the right to assert that the claimed invention in a patent did not meet the requirements for patentability and, therefore, that the issued patent claim is invalid.

[VirnetX proposes:  However, the granting of a patent by the Patent & Trademark Office carries with it the presumption that the patent is valid.  The presumption of patent validity imposes the burden on Cisco to prove invalidity by the clear and convincing

---

[16] Cisco objects to this instruction, and to any reference to the concept of willfulness, prior to a threshold determination by this Court that VirnetX has proven by clear and convincing evidence that Cisco acted despite an objectively high likelihood that its actions constituted infringement of a valid patent.  *See Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs.*, 682 F.3d 1003, 1006-07 (Fed. Cir. 2012) (holding that the determination of objective recklessness, which is prerequisite to a showing of willful infringement, is an issue of law for the Court's determination).

[17] Cisco objects to this instruction and to any reference to the concept of willfulness prior to a threshold determination by this Court that VirnetX has proven by clear and convincing evidence that Cisco acted despite an objectively high likelihood that its actions constituted infringement of a valid patent.  See footnote 16.

evidence standard.  The fact that Cisco has obtained patents covering certain aspects of their products is not a defense to patent infringement in this case.][18]

I will now explain to you briefly the legal requirements for each of the grounds on which Cisco rely to contend that the asserted patent claims are invalid.  I will provide more details for each ground in my final instructions at the end of the case.

The first ground is what's called anticipation.  Cisco contends that the inventions covered by the asserted claims of the patents-in-suit are not new.  An invention that is not new is said to be anticipated by the prior art.  To prove that a claim is anticipated by prior art, Cisco must prove by clear and convincing evidence that each and every limitation of the claim was present in one single item of prior art.

Next is obviousness.  Cisco also contends that the asserted claims of the patents-in-suit are invalid for obviousness.  To prove invalidity of a patent based on obviousness, Cisco must prove **[VirnetX proposes: by clear and convincing evidence]** that the invention defined by the claim would have been obvious to a hypothetical person of ordinary skill in the art at the time the invention was made.

**[Cisco proposes: So we have discussed two ways that a patent can be found invalid: anticipation and/or obviousness.  Next is written description and enablement.  Cisco also contends that certain asserted claims of the '135, '151, and '759 patents are invalid, because the description of the invention in the specification does not meet certain requirements.  A patent claim is invalid, if the specification of the patent does not contain an adequate written description of the claimed invention.  That is referred to as the written description requirement.   A patent claim is also invalid if the specification does not**

---

[18]Cisco objects to this instruction as unnecessary and duplicative.

describe the invention in such terms that one skilled in the art can make and use the claimed invention.  This is referred to as the enablement requirement.  To succeed, Cisco must show by clear and convincing evidence that the specification fails to meet the law's written description and enablement for an invention.

[Cisco proposes:  Cisco also contends that the patents-in-suit are invalid based on derivation and failure to join an inventor on the patents.[19] [20]  A patent may be invalid for derivation if someone else actually invented the subject matter of the claim.  A patent may also be invalid for failure to join a person who should have been identified as an inventor on the patent.  To succeed, Cisco must show by clear and convincing evidence that the people listed on the patents-in-suit actually derived the invention from someone else, or that someone else also should have been listed as an inventor on the patents.  I will describe in more detail at the end of the case how you decide the issues of written description, enablement, derivation, and failure to join an inventor.]

Now, that concludes the instructions regarding infringement and the instructions regarding invalidity.

Now with regard to damages, VirnetX claims that it is entitled to damages as a result of Cisco's infringement in the form of a reasonable royalty on each of Cisco's accused products and methods.  Damages cannot be speculative.  VirnetX must prove the damages it has suffered as a result of the alleged infringement by a preponderance of the evidence.

---

[19]VirnetX objects to these instructions on the ground that Cisco failed to timely disclose them as defenses or in their invalidity contentions.

[20]Cisco replies that this defense was disclosed in Cisco's original July 1, 2011 Invalidity Contention at footnote 2.

The fact that I am instructing you about damages now does not mean that VirnetX is or is not entitled to recover damages.  I will explain to you further at the end of the trial how reasonable royalties are determined.

And at the end of the trial, you will get a written charge that will have all of these instructions in it in much more detail than I am giving to you now.  You will also have a verdict form that will ask you some very simple questions dealing with infringement, invalidity and damages.

So there will be questions that you will have to decide in the case basically dealing with infringement, invalidity, and damages.  **[Cisco proposes:  The fact that the verdict form will include questions about damages does not indicate anything about infringement or invalidity, and does not indicate that VirnetX is entitled to damages.]**

**[VirnetX proposes:  I know this is all very complex.  Do not feel like you have to be an expert on patent law.  We have plenty of experts in the room.  You are going to hear a lot of testimony about it.  This is just to give you an overview so that, as you hear a lot of these terms and you hear the evidence, hopefully, this will give you a little context to filter it through.]**

Now with regard to construction of the claims, I will instruct you now and at the end of the case about the meaning of some of the claim language.[21]  You must use these meanings I give you when you decide the issues of infringement and invalidity.

In deciding whether or not an accused product or method infringes a patent, the first step is to understand the meaning of the words used in the patent claims.  It is my job as Judge to

---

[21]By submitting jury instructions with respect to the Court's claim constructions, the parties do not intend to waive and hereby expressly preserve their contentions in their *Markman* briefing and argument and reserve their rights to appeal.

determine what the patent claims mean and to instruct you about that meaning.  You must accept the meanings I give you and use them when you decide whether or not a patent claim is infringed and whether or not a patent claim is invalid.

It may be helpful to refer back to the patents-in-suit as I discuss the claims at issue here. The claims are at the end of each of the patents.

Patent claims may exist in two forms, referred to as independent claims and dependent claims.  An independent claim does not refer to any other claim of the patent.  It is not necessary to look at any other claim to determine what an independent claim covers.  Claim 1 of the '211 patent, for example, is an independent claim.  A dependent claim refers to at least one other claim in the patent.  A dependent claim includes each of the limitations of the other claim or claims to which it refers, as well as the additional limitations recited in the dependent claim itself.  Therefore, to determine what a dependent claim covers, it is necessary to look at both the dependent claim and other claim or claims to which it refers.  For example, claim 17 of the '211 patent is a dependent claim.  It refers to claim 1.  To determine what the dependent claim covers, the words of that claim and the words of claim 1 must be read together.

The claims of the patents-in-suit use the word 'comprises" and "comprising." Comprising means including or containing.  A claim that uses the word "comprising" or "comprises" is not limited to methods or devices having only the elements that are recited in the claim, but also covers methods or apparatus that add additional elements.  Take for example, a claim that covers a table.  If the claim recites a table comprising a tabletop, legs and glue, the claim will cover any table that contains these structures, even if the table also contains other structures such as a leaf or wheels on its legs.  That is a very simple example of what using the

word comprising means.  In other words, it can have other features in addition to those that are covered by the patent.

I have now instructed you as to the two types of claims at issue in this case.  I will next define the meaning of the words used in the patent claims at issue.  You must use the definitions I provide to you in consideration of infringement and invalidity issues.  Now, if you will look at the chart that I've given you, I'm not going to read all of those.  You have those.  The parties came to me and said we need you to define what this means, and they presented various arguments.  And this is the construction that I determined and it is the construction that you will follow in trying this case.  I am not going to read all of those.  They are there for your reference, and you can–you will hear about them during the case, but you will see the various words that have been defined and construed by the Court with regard to the claims.  The chart will go with you to the jury room, and it lists various terms in the various claims of each patent and what interpretation the Court has placed on each of those.  The chart will go with you to the jury room, and it lists various terms in the various claims of each patent and what interpretation the Court has placed on each of those.

This will all become clearer as the trial progresses, but this is a good starting place for you to help you understand some of the basic elements of a patent and some of the basic language and nomenclature.  Again, if you are feeling a little overwhelmed at this point, rest assured there is going to be lots of explanation and lots of time to digest.  This is the first time you have heard a lot of these words, a lot of these concepts.  You are going to be hearing a lot more about them during the opening statements, during the evidence.

We will have experts from both sides that are going to help you understand this case. And at the end, you will hear closing arguments.  You will have my Court instructions, and you will be well-equipped to decide this case by the time you get to the end of it.

Let me finally visit with you regarding your duties as jurors.  You have two duties as jurors.  Your first duty is to decide the facts from the evidence in this case.  That is your job and yours alone.  Your second duty is to apply the law that I give you to the facts.  You must follow these instructions, even if you disagree with them.  Each of the instructions is important, and you must follow them all.

Perform these duties fairly and impartially.  Do not allow your sympathy, prejudice, fear or public opinion to influence you.  Nothing I say now and nothing I say or do during the trial is meant to indicate any opinion on my part about what the facts are or about what your verdict should be.  Again, you, the jury, will be the sole judges of the facts in this case.

That concludes my opening instructions for you.