IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| **VIRNETX INC.,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CASE NO. 6:10-CV-417 |
| | § | |
| **CISCO SYSTEMS, INC. et al.,** | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion to Exclude the Expert Opinions of Mr. Roy Weinstein (Docket No. 445)[1]. The Court heard arguments regarding the motion at the February 28, 2013 pretrial hearing. Having considered the parties' written submissions and oral arguments, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Exclude the Expert Opinions of Mr. Roy Weinstein.

### BACKGROUND

On August 11, 2010, VirnetX brought suit against Cisco Systems, Inc., NEC Corporation, NEC Corporation of America, Aastra USA Inc., Aastra Technologies Ltd., and Apple Inc. alleging the infringement of U.S. Patent Nos. 6,502,135 ("the '135 Patent"), 6,839,759 ("the '759 Patent"), 7,188,180 ("the '180 Patent"), 7,418,504 ("the '504 Patent"), 7,490,151 ("the '151 Patent"), and 7,921,211 ("the '211 Patent").

---

[1] This case was severed for the purposes of trial, with Apple Inc. set for trial October 31, 2012 and Cisco Systems, Inc. set for trial March 4, 2013. *See* Docket No. 542. Accordingly, this memorandum opinion and order will only discuss Mr. Weinstein's expert opinions regarding Cisco.

To establish VirnetX's damages attributable to Cisco's alleged infringement, VirnetX intends to call Mr. Roy Weinstein as a witness at trial. Cisco argues Mr. Weinstein's expert opinions are unreliable and should be excluded. In his report, Mr. Weinstein applied two different damages models: the Nash Bargaining Solution; and a reasonably royalty rate based on a hypothetical negotiation, to calculate VirnetX's damages stemming from Cisco's alleged infringement. Cisco contends Mr. Weinstein did not limit his royalty base to revenue only from infringing products or components, and incorrectly applied the different damages models in calculating VirnetX's damages. Docket No. 445. VirnetX disputes Cisco's contentions and argues Mr. Weinstein's calculations are reliable and should not be excluded. Docket No. 456.

## APPLICABLE LAW

Federal Rule of Evidence 702 allows a witness "qualified as an expert by knowledge, skill, experience, training, or education" to testify in the form of an opinion or otherwise if

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

As a preliminary matter, district courts are asked to act as gatekeepers and exclude expert testimony from trial that is irrelevant or unreliable. FED. R. EVID. 104(a); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (discussing *Daubert v. Merrell Dow Pharm.* 509 U.S. 579, 593–94 (1993)). "Reliability is determined by assessing 'whether the reasoning or methodology underlying the testimony is scientifically valid.' Relevance depends upon 'whether [that] reasoning or methodology properly can be applied to the facts in issue.'" *Knight v. Kirby Inland Marine Inc.,* 482 F.3d 347, 351 (5th Cir. 2007)(quoting *Daubert*, 509 U.S. at 592-593).

Courts will consider a nonexclusive list of factors to determine whether scientific expert testimony is reliable. *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 593–94 (1993). These

factors include: (1) whether others can or have objectively tested the expert's technique or theory; (2) whether the technique or theory has been subject of peer review and publication; (3) the known or potential error rate of the technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) whether the scientific community has generally accepted the technique or theory. FED. R. EVID. 702 (advisory committee notes, 2000 amendments); *Daubert*, 509 U.S. at 593–94.

However, the district courts are not "intended to serve as a replacement for the adversary system." *United States v. 14.38 Acres of Land,* 80 F.3d 1074, 1078 (5th Cir. 1996); FED. R. EVID. 702 (advisory committee notes, 2000 amendments). "Vigorous cross–examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence. *Daubert*, 509 U.S. at 595. Accordingly, if a party offering expert testimony can prove by a preponderance of the evidence that the expert is qualified, the expert's testimony is relevant, and the testimony is reliable, a court should not exclude it. *Id.* at 590–91.

## ANALYSIS

1. **Reasonable Royalty Calculation**

Cisco contends Mr. Weinstein impermissibly uses the entire market value when he calculates a reasonable royalty, since he considers the entire revenue from the accused products without demonstrating that the patented technology drove demand for the accused products or the patented feature substantially created the value of the component parts.[2] Docket No. 445 at 2–6, 7; *see Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011). Cisco

---

[2] Mr. Weinstein calculates Cisco's reasonable royalty by: (1) taking the total revenue from the accused products and removing U.S. Government sales from the revenue base; (2) removing ancillary items sold with the accused products such as power cables, batteries, extra memory, etc. from the revenue base; (3) multiplying this adjusted revenue base by 70% to reflect the percentage of accused products purchased for security reasons to determine the "adjusted royalty base"; and (4) multiplying the apportioned revenue base by a reasonable royalty rate of 1%. *See* Docket No. 456-2, at 70–73.

3

cites to Mr. Weinstein's deposition, wherein Mr. Weinstein stated that the patented features were not the primary basis for demand for the Cisco products. Docket No. 445, Exhibit A, Weinstein Dep. at 60:16–22. However, according to Cisco, Mr. Weinstein's calculations invoke the entire market value rule, because he ultimately considers the total revenue from the accused products. *Id*. at 4. Cisco acknowledges Mr. Weinstein applied a 70% apportionment factor to the total revenue, but Cisco argues this math trick is indistinguishable from simply applying a lower royalty rate to the entire market value of the accused products. *Id*. at 4–5.

VirnetX counters that Mr. Weinstein is not applying the entire market value rule, because Mr. Weinstein apportioned out several components of Cisco's infringing systems from his royalty base. Docket No. 456 at 2–3. Also, VirnetX argues Mr. Weinstein calculated his base using Cisco's best information, therefore any defects in Mr. Weinstein's analysis are due to Cisco's failure to provide adequate sales information. *Id.* at 7–8. Further, VirnetX contends it was proper for Mr. Weinstein to rely upon the customer survey, which stated 70% of customers purchased the products for security reasons, to further reduce the royalty base. *Id.* at 4–5.

Mr. Weinstein made no sincere attempt to tie VirnetX's damages to the smallest saleable patent-practicing unit. *See LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012)("Where small elements of multi-component products are accused of infringement, calculating a royalty on the entire product carries a considerable risk that the patentee will be improperly compensated for non-infringing components of that product. Thus, it is generally required that royalties be based not on the entire product, but instead on the "smallest salable patent-practicing unit.")(quoting *Cornell Univ. v. Hewlett-Packard Co*., 609 F. Supp. 2d 279, 283, 287-88 (N.D.N.Y. 2009)). Indeed, Mr. Weinstein conceded he merely considered the sales figures provided by Cisco, without attempting to remove non-infringing elements. Docket No.

4

445, Exhibit A, Weinstein Dep. at 220:2-225:3. As illustrated at the pretrial hearing, Cisco sells components and software separately from its larger servers and towers, but Mr. Weinstein did not consider using these smaller components or software as his royalty base. Instead, Mr. Weinstein only reduces the revenue of entire products[3] by a 70% apportionment factor; a factor derived from a single survey which found 70% of customers valued VoIP security. This apportionment factor is a poor substitute for the type of analysis one should undertake when parsing an alleged infringer's profits for patented versus unpatented features. *See* 35 U.S.C. § 284 ("[T]he court shall award the claimant damages adequate to compensate for infringement … for the use made of the invention by infringer."); *LaserDynamics, Inc.*, 694 F.3d at 67. Accordingly, the Court **GRANTS** Cisco's Motion as to the Reasonable Royalty. If VirnetX intends to rely upon Mr. Weinstein's reasonable royalty analysis at trial, Mr. Weinstein must amend his report and recalculate his royalty base in light of the Court's ruling.

2. **Nash Bargaining Solution**

Cisco also contends that Mr. Weinstein's application of the Nash Bargaining Solution ("NBS") is unreliable. Specifically, Cisco argues Mr. Weinstein failed to calculate the incremental profits associated with the use of the patented invention, but instead applied NBS to Cisco's gross profit margins without demonstrating how the profits are related to the patent-in-suit. Docket No. 445 at 14–15. Additionally, Cisco alleges Mr. Weinstein failed to explain why 45%–55% profit split between VirnetX and Cisco would have occurred. *Id.* at 15.

Mr. Weinstein considered the same incremental profits associated with the incremental revenue created by the patents-in-suit as Cisco's own expert. Docket No. 456 at 14–15. Therefore, Cisco has no basis to object. Additionally, Mr. Weinstein did proffer some

---

[3] As mentioned previously, Mr. Weinstein did remove the cost of wires, batteries, etc. from the revenue base; however, this apportionment does not significantly alter the revenue base for some of the more expensive products.

5

explanation as to why Cisco and VirnetX would have deviated from the traditional 50%-50% profit split. *See* Docket No. 456-15. Thus, Cisco's Motion as to the Nash Bargaining Solution is **DENIED.**

## CONCLUSION

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Exclude the Expert Opinions of Mr. Roy Weinstein (Docket No. 445). As previously stated, if VirnetX wishes to present Mr. Weinstein's reasonable royalty analysis at trial, Mr. Weinstein must amend his report. If Mr. Weinstein does amend his report, Cisco shall be afforded the opportunity to depose Mr. Weinstein before the trial begins.

**So ORDERED and SIGNED this 1st day of March, 2013.**

_____
**LEONARD DAVIS
UNITED STATES DISTRICT JUDGE**