IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| VIRNETX INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. 6:10-cv-417 |
| | § | |
| CISCO SYSTEMS, INC., et al. | § | |
| | § | |
| Defendant. | § | |

**THIRD AMENDED JOINT PROPOSED
FINAL JURY INSTRUCTIONS OF VIRNETX AND CISCO**

## 1.    Introduction[1] [Agreed]

MEMBERS OF THE JURY:

You have heard the evidence in this case.  I will now instruct you on the law that you must apply.  It is your duty to follow the law as I give it to you.  On the other hand, you the jury are the judges of the facts.  Do not consider any statement that I have made during the trial or make in these instructions as an indication that I have any opinion about the facts of this case.

After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments.  Statements and argument of the attorneys are not evidence and are not instructions on the law.  They are intended only to assist you in understanding the evidence and the parties' contentions.

---

[1]Adapted from the Court's Charge in *VirnetX Inc. v. Microsoft Corp.*, Civil Action No. 6:07-CV-80; *VirnetX Inc. v. Apple, Inc.*, Civil Action No. 6:10-CV-417; *i4i Limited Partnership v. Microsoft Corp.*, Civil Action No. 6:07CV113; *Bedrock Computer Tech. L.L.C. v. Google Inc.*, Civil Action No. 6:09-CV-269-LED; *Fractus S.A. v. Samsung Electronics Co.*, Civil Action No. 6:09-CV-203; *Eolas Tech. Inc. v. Adobe Systems, Inc.*, Civil Action No. 6:09-CV-446.

## 1.1    General Instruction[2] [AGREED]

A verdict form has been prepared for you.  You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form.

Answer each question on the verdict form from the facts as you find them.  Do not decide who you think should win and then answer the questions accordingly. A corporation and all other persons are equal before the law and must be treated as equals in a court of justice. With respect to each question asked, your answers and your verdict must be unanimous.

In determining whether any fact has been proved in this case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

---

[2]Adapted from the Court's Charge in *VirnetX Inc. v. Microsoft Corp.*, Civil Action No. 6:07-CV-80; *VirnetX Inc. v. Apple, Inc.*, Civil Action No. 6:10-CV-417; *i4i Limited Partnership v. Microsoft Corp.*, Civil Action No. 6:07CV113; *Bedrock Computer Tech. L.L.C. v. Google Inc.*, Civil Action No. 6:09-CV-269-LED; *Fractus S.A. v. Samsung Electronics Co.*, Civil Action No. 6:09-CV-203; *Eolas Tech. Inc. v. Adobe Systems, Inc.*, Civil Action No. 6:09-CV-446.

2

## 1.2    Considering witness testimony[3] [AGREED]

You the jurors are the sole judges of the credibility of all witnesses and the weight and effect of all evidence.  By the Court allowing testimony or other evidence to be introduced over the objection of an attorney, the Court did not indicate any opinion as to the weight or effect of such evidence.

When the Court sustained an objection to a question addressed to a witness, you must disregard the question entirely, and may draw no inference from the wording of it or speculate as to what the witness would have testified to, if he or she had been permitted to answer the question.

At times during the trial it was necessary for the Court to talk with the lawyers here at the bench out of your hearing, or by calling a recess.  We met because often during a trial something comes up that does not involve the jury.  You should not speculate on what was discussed during such times.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because

---

[3]Adapted from the Court's Charge in *VirnetX Inc. v. Microsoft Corp.*, Civil Action No. 6:07-CV-80; *VirnetX Inc. v. Apple, Inc.*, Civil Action No. 6:10-CV-417; *i4i Limited Partnership v. Microsoft Corp.*, Civil Action No. 6:07CV113; *Bedrock Computer Tech. L.L.C. v. Google Inc.*, Civil Action No. 6:09-CV-269-LED; *Fractus S.A. v. Samsung Electronics Co.*, Civil Action No. 6:09-CV-203; *Eolas Tech. Inc. v. Adobe Systems, Inc.*, Civil Action No. 6:09-CV-446.

people may forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

## 1.3    How to examine the evidence[4] [AGREED]

Certain testimony in this case has been presented to you through a deposition.  A deposition is the sworn, recorded answers to questions asked a witness in advance of the trial.  Under some circumstances, if a witness cannot be present to testify from the witness stand, the witness testimony may be presented, under oath, in the form of a deposition.  Sometime before this trial, attorneys representing the parties in this case questioned this witness under oath.  A court reporter was present and recorded the testimony.  This deposition testimony is entitled to the same consideration and is to be judged by you as to credibility and weight and otherwise considered by you insofar as possible the same as if the witness had been present and had testified from the witness stand in court.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience.  In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case.  One is direct evidence such as testimony of an eyewitness.  The other is

---

[4]Adapted from the Court's Charge in *VirnetX Inc. v. Microsoft Corp.*, Civil Action No. 6:07-CV-80; *VirnetX Inc. v. Apple, Inc.*, Civil Action No. 6:10-CV-417; *i4i Limited Partnership v. Microsoft Corp.*, Civil Action No. 6:07CV113; *Bedrock Computer Tech. L.L.C. v. Google Inc.*, Civil Action No. 6:09-CV-269-LED; *Fractus S.A. v. Samsung Electronics Co.*, Civil Action No. 6:09-CV-203; *Eolas Tech. Inc. v. Adobe Systems, Inc.*, Civil Action No. 6:09-CV-446.

indirect or circumstantial evidence--the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts.  As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

The parties have stipulated, or agreed, to some facts in this case.  When the lawyers on both sides stipulate to the existence of a fact, you must, unless otherwise instructed, accept the stipulation as evidence, and regard the fact as proved.

**1.4**     **Expert witnesses[5] [AGREED except where indicated]**

When knowledge of a technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field he or she is called an expert witness is permitted to state his or her opinion on those technical matters.  However, you are not required to accept that opinion.  As with any other witness, it is up to you to decide whether the witness' testimony is believable or not, whether it is supported by the evidence and whether to rely upon it.  In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness.  **[Cisco proposes: Merely because an expert witness testifies about certain facts or bases his or her opinion on the existence of certain facts does not make those facts true.  It is up to you to determine whether the facts relied on by the expert are true based on the evidence admitted in the case.  If you believe that one or more of the facts which form the basis of the expert's opinion are not true, then it is up to you to evaluate to what extent this impacts the weight to be given to the expert's opinion.][6]**

---

[5]Adapted from the Court's Charge in *VirnetX Inc. v. Microsoft Corp.*, Civil Action No. 6:07-CV-80; *VirnetX Inc. v. Apple, Inc.*, Civil Action No. 6:10-CV-417; *i4i Limited Partnership v. Microsoft Corp.*, Civil Action No. 6:07CV113; *Bedrock Computer Tech. L.L.C. v. Google Inc.*, Civil Action No. 6:09-CV-269-LED; *Fractus S.A. v. Samsung Electronics Co.*, Civil Action No. 6:09-CV-203; *Eolas Tech. Inc. v. Adobe Systems, Inc.*, Civil Action No. 6:09-CV-446.

[6]**VirnetX objects to the instruction because it is an inaccurate and/or incomplete statement of the law and because it is surplusage that is not needed to adequately instruct the jury on expert witness testimony.**

2.     **Summary of Contentions[7]  [AGREED except where indicated]**

I will first give you a summary of each side's contentions in this case.  I will then tell you what each side must prove to win on these issues.

[**VirnetX proposes:  Plaintiff VirnetX contends that the Defendant Cisco ("Cisco") makes, uses, sells, offers, to sell and/or imports into the United States accused Virtual Private Networks ("VPN") and security-capable communication products and/or methods that infringe claims 10 and 12 of United States Patent No. 6,502,135 ("the '135 patent"); claims 36, 47, and 51 of United States Patent No. 7,418,504 ("the '504 patent"); claims 1, 8, 23, 27 and 31 of United States Patent No. 7,921,211 ("the '211 patent"); claims 2 and 17 of United States Patent No. 6,839,759 ("the '759 patent").][8]**

[**Cisco proposes: Plaintiffs VirnetX and SAIC[9] contend that Cisco and/or its customers infringe claims 10 and 12 of the '135 patent; claims 36, 47 and 51 of the '504 patent; claims 1, 8, 23, 27 and 31 of the '211 patent; and claim 17 of the '759 patent by making, using, selling, offering to sell, or importing into the United States patented systems or apparatuses.  VirnetX contends that Cisco and/or its customers infringe claim 2 of the '759 patent by using Cisco's accused products to perform patented methods.]**

---

[7]Adapted from the Court's Charge in *VirnetX Inc. v. Microsoft Corp.*, Civil Action No. 6:07-CV-80; *VirnetX Inc. v. Apple, Inc.*, Civil Action No. 6:10-CV-417; *i4i Limited Partnership v. Microsoft Corp.*, Civil Action No. 6:07CV113; *Bedrock Computer Tech. L.L.C. v. Google Inc.*, Civil Action No. 6:09-CV-269-LED; *Fractus S.A. v. Samsung Electronics Co.*, Civil Action No. 6:09-CV-203; *Eolas Tech. Inc. v. Adobe Systems, Inc.*, Civil Action No. 6:09-CV-446.

[8] **Adapted from *VirnetX Inc. v. Apple, Inc.*, Civil Action No. 6:10-CV-417-LED, Dkt. No. 597 at 6-7.**

[9] **VirnetX objects to any mention to the jury of SAIC as a plaintiff in this case.  SAIC asserts no claims against Cisco for legal or equitable relief.  Therefore, any reference to SAIC as a plaintiff, "involuntary" or otherwise, is irrelevant and prejudicial to VirnetX.**

McKool 869123v1

These claims have been referred to as the "Asserted Claims" and these patents have been referred to as the "patents-in-suit."

VirnetX also contends that Cisco is inducing **[VirnetX proposes: its customers and/or end-users to directly infringe the]** claims of the patents-in-suit and is contributing to direct infringement of certain claims of the patents-in-suit by others who make or use the patented **[VirnetX proposes: products or]** systems or perform the patented methods.   VirnetX also claims that Cisco has infringed the patents-in-suit willfully.   VirnetX is seeking damages for the alleged infringement of Cisco.

In response to VirnetX's contentions, Cisco contends that neither they nor their customers have infringed the patents-in-suit.   Cisco further contends that they have not induced or contributed to direct infringement of the Asserted Claims.   Cisco also contends that the Asserted Claims of the '135, '504, '211 and '759 patents are invalid as being anticipated by or obvious in light of the prior art.   Cisco also contends that VirnetX is not entitled to damages for any infringement.

3.   **Burdens of Proof**[10] **[AGREED except where indicated]**

**[VirnetX proposes:  In any legal action, facts must be proved by a required amount of evidence known as the "burden of proof."  The burden of proof in this case is on VirnetX for some issues and on Cisco for other issues.]**[11]

**VirnetX has the burden of proving infringement and damages by a preponderance of the evidence.  Preponderance of the evidence means the evidence that persuades you that a claim is more likely true than not true.**  If the proof establishes that all parts of VirnetX's infringement claims are more likely true than not true, then you should find for VirnetX as to that claim.  **[Cisco proposes: Conversely, if you are convinced that a claim is more likely not true, or if the evidence is ambiguous as to whether the claim has been established, then you must find against VirnetX.]**[12]

**[VirnetX Proposes: If you find that Cisco infringed one or more of VirnetX's patent claims that have been asserted in this case, then as a separate question, VirnetX has the burden of proving its additional contention that the infringement was willful by clear and**

---

[10]Adapted from the Court's Charge in *VirnetX Inc. v. Microsoft Corp.*, Civil Action No. 6:07-CV-80; *VirnetX Inc. v. Apple, Inc.*, Civil Action No. 6:10-CV-417; *i4i Limited Partnership v. Microsoft Corp.*, Civil Action No. 6:07CV113; *Fractus S.A. v. Samsung Electronics Co.*, Civil Action No. 6:09-CV-203; *Eolas Tech. Inc. v. Adobe Systems, Inc.*, Civil Action No. 6:09-CV-446.

[11]**Taken from *VirnetX Inc. v. Apple, Inc.*, Civil Action No. 6:10-CV-417.**

[12]**VirnetX objects to this instruction because it is an incorrect statement of law and is merely repetitive of the previous sentence, except that it improperly skews the burden of proof.  VirnetX also asserts that, if the instruction is given, a similar instruction should be given with respect to invalidity: "Conversely, Cisco's proof of its invalidity claims falls below clear and convincing, or if the evidence is ambiguous as to whether invalidity of a claim has been established, then you must find against Cisco."**

convincing evidence.  Cisco has the burden of proving invalidity by clear and convincing evidence.][13]

[VirnetX proposes: Clear and convincing evidence means evidence that produces in your mind a firm belief or conviction as to the matter at issue.[14]]  [Cisco proposes: Clear and convincing evidence means evidence that produces an abiding conviction that the truth of the factual contentions are highly probable.[15]]  [Cisco proposes: You may have heard of a burden of proof used in criminal cases called "beyond a reasonable doubt."  You should put that standard out of your mind because it does not apply to a patent case.[16]][17]

Although proof to an absolute certainty is not required, the clear and convincing evidence standard requires a greater degree of persuasion than is necessary for the preponderance of the evidence standard.  If the proof establishes in your mind a firm belief or conviction, then the standard has been met.

In determining whether any fact has been proved by the preponderance of the evidence or by clear and convincing evidence, you may, unless otherwise instructed, consider the

---

[13] **Cisco objects to providing any instruction on willful infringement without a threshold determination by the Court that VirnetX has demonstrated, by clear and convincing evidence, that Cisco acted despite an objectively high likelihood that its actions constituted infringement of a valid patent.**

[14] **From Fifth Circuit Pattern Jury Instructions — Civil § 2.14 (2006).**

[15] *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, **694 F.3d 1312, 1327 (Fed. Cir. 2012) (citing Colorado v. New Mexico, 467 U.S. 310, 316 (1984)).**

[16] **Adapted from the Federal Circuit Bar Association Model Patent Jury Instructions at 8.**

[17] **See *VirnetX Inc. v. Apple, Inc.*, Civil Action No. 6:10-CV-417.  VirnetX objects because the instruction is unnecessary for the jury's understanding of the burden of proof in this case.**

McKool 869123v1

stipulations, the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.[18]

---

[18] *VirnetX Inc. v. Apple, Inc.*, Civil Action No. 6:10-CV-417.

McKool 869123v1

4.      **Glossary of Patent Terms**[19]

A glossary of patent terms is contained in Appendix B to this Charge.

---

[19]Adapted from the Court's Charge in *VirnetX Inc. v. Microsoft Corp.*, Civil Action No. 6:07-CV-80; *i4i Limited Partnership v. Microsoft Corp.*, Civil Action No. 6:07CV113.

McKool 869123v1

5.      **Claims of the Patents-in-Suit**[20] **[AGREED except where indicated]**

The claims of a patent are the numbered sentences at the end of the patent.  The claims describe the invention **[VirnetX proposes: made by the inventor]**[21] and describe what the patent owner owns and what the patent owner may prevent others from doing.  Claims may describe **[VirnetX proposes: products**[22]**]   [Cisco proposes: physical objects]** such as **[VirnetX proposes: machines or chemical compounds, methods, apparatuses, or processes for making or using a product.]**[23] **[Cisco proposes machines or methods for using a product.]**

Claims are usually divided into parts or steps, called limitations or elements.  For example, a claim that covers the invention of a table may recite the tabletop, four legs and the glue that secures the legs on the tabletop.  The tabletop, legs and glue are each a separate limitation of the claim.

---

[20]Adapted from the Court's Charge in *VirnetX Inc. v. Microsoft Corp.*, Civil Action No. 6:07-CV-80; *VirnetX Inc. v. Apple, Inc.*, Civil Action No. 6:10-CV-417; *i4i Limited Partnership v. Microsoft Corp.*, Civil Action No. 6:07CV113; *Bedrock Computer Tech. L.L.C. v. Google Inc.*, Civil Action No. 6:09-CV-269-LED; *Fractus S.A. v. Samsung Electronics Co.*, Civil Action No. 6:09-CV-203; *Eolas Tech. Inc. v. Adobe Systems, Inc.*, Civil Action No. 6:09-CV-446.

[21]**VirnetX notes that the instruction is a generic instruction regarding any claim in a patent and is not directed specifically to the patents-in-suit.  The language "made by the inventor" is found in American Bar Association, Model Jury Instructions, Patent Litigation at 6, and in virtually all of this Court's jury instructions.**

[22]**Taken from *VirnetX Inc. v. Apple, Inc.*, Civil Action No. 6:10-CV-417.**

[23]**Taken from *VirnetX Inc. v. Apple, Inc.*, Civil Action No. 6:10-CV-417.**

McKool 869123v1

**5.1     Independent and Dependent Claims [AGREED except where indicated]**

This case involves two types of patent claims: independent claims and dependent claims. An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim.  Thus, it is not necessary to look at any other claim to determine what an independent claim covers.  In this case, for example, claim 10 of the '135 patent, claim 36 of the '504 patent, and claim 1 of the '211 patent are each independent claims.

The rest of the claims being asserted in this case are "dependent claims."  A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements.  In this way the claim "depends" on another claim.  The law considers a dependent claim to incorporate all of the requirements of the claims to which it refers.  The dependent claim then adds its own, additional requirements.  To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claims to which it refers. **[Cisco proposes: For example if you have a claim that depends from the tabletop example claim described earlier, it might say: a tabletop according to the claim number 1 that is painted blue.  In order for that dependent claim to be met, it would need to have a tabletop, the legs, and glue (required by the independent claim) and also be painted blue.]**[24] A product or method that meets all of the requirements of both the dependent claim and the claims to which it refers is covered by that dependent claim.

**[Cisco Proposes: An apparatus claim specifies particular components or elements that together define a certain device.  A method claim specifies particular steps or actions that are followed to achieve a certain function or result.  For example, such a claim may**

---

[24] **VirnetX objects to this instruction because it is confusing to the jury and unnecessary for an understanding of dependent claims.**

describe a method performed by a particular device or may describe a method of using a particular device.][25]

---

[25] **VirnetX objects to this proposed instruction because it is surplusage and not necessary for the jury's understanding of independent and dependant claims.**

## 5.2      Construction of the Claims [AGREED][26]

In deciding whether or not the accused products and methods infringe an Asserted Claim and whether or not the claim is invalid, the first step is to understand the meaning of the words used in the patent claims.

It is my job as Judge to determine what the patent claims mean and to instruct you about that meaning.   You must accept the meanings I give you and use those meanings when you decide whether or not the patent claims are infringed, and whether or not they are invalid.   In accordance with my duty, I have interpreted the meaning of some of the language in the patent claims involved in this case.   My interpretation of those claims appear in Appendix A to this charge and your notebook.   The claim language I have not interpreted for you in Appendix A is to be given its ordinary and accustomed meaning as understood by one of ordinary skill in the art.

**[VirnetX proposes: In this case you've heard questioning and argument and testimony over the term VPN.  And in this case the Court has previously construed what VPN means, and you are to be governed by my construction in determining the issues in this case -- that is, the issues of infringement and invalidity.**

**The Court's construction of VPN does not necessarily exclude prior art VPNs, nor is it limited to only VPNs described in the preferred embodiments of the patents.**

**While VPN does require some degree of anonymity, it does not require complete anonymity and can be met by any technique known to persons of ordinary skill in the art.]**

---

[26] By consenting to jury instructions with respect to the Court's claim constructions, the parties do not intend to waive and hereby expressly preserve their asserted claim constructions, objections to the Court's constructions, and right to appeal.

## 5.3     Open-Ended or "Comprising" Claims[27]

The beginning portion, or preamble, to some of the Asserted Claims use the word "comprising."   "Comprising" and "comprises" mean "including but not limited to" or "containing but not limited to."   Thus if you decide that an accused product includes all the requirements in that claim, **[Cisco proposed: as set forth in the claim,]** the claim is infringed. This is true even if the accused instrumentality includes components in addition to those requirements.

For example, a claim to a table comprising a tabletop, legs, and glue would be infringed by a table that includes a tabletop, legs and glue, even if the table also includes wheels on the table's legs.

---

[27] Taken from VirnetX Inc. v. Apple, Inc., Civil Action No. 6:10-CV-417.

**6. Infringement**[28]

[VirnetX proposes: Any person or business entity who makes, uses, sells, offers to sell or imports into the United States a product or practices a method that is covered by at least one claim of a patent infringes the patent.[29]]

[Cisco proposes: With respect to any apparatus claim, any person or business entity that, without the patent owner's permission, makes, uses, sells, or offers to sell a product that includes every element of the claim, before the patent expires, infringes that claim. With respect to a method claim, any person or business entity that, without the patent owner's permission, practices each and every step contained in that claim in the United States, before the patent expires, infringes that claim. Infringement must be considered on a claim by claim basis.][30] [VirnetX proposes: As I previously told you, a patent owner may bring a suit like this to protect the patent owner from infringement of its patent.[31] The law does not require that the patent owner give advance notice to a defendant before filing a lawsuit.[32]

---

[28]Adapted from the Court's Charge in *VirnetX Inc. v. Microsoft Corp.*, Civil Action No. 6:07-CV-80; *VirnetX Inc. v. Apple, Inc.*, Civil Action No. 6:10-CV-417; *i4i Limited Partnership v. Microsoft Corp.*, Civil Action No. 6:07CV113; *Bedrock Computer Tech. L.L.C. v. Google Inc.*, Civil Action No. 6:09-CV-269-LED; *Bedrock Computer Tech. L.L.C. v. Yahoo! Inc.*, Civil Action No. 6:09-CV-269-LED; Fractus *S.A. v. Samsung Electronics Co.*, Civil Action No. 6:09-CV-203.

[29]Taken from the instructions in VirnetX Inc. v. Apple, Inc., Civil Action No. 6:10-CV-417.

[30]VirnetX objects to these statements because they are inaccurate or incomplete statements of the law and are cumulative of other instructions.

[31]Cisco objects to this instruction as misleading, unnecessary, and prejudicial to the extent it refers to a "suit like this protect the patent owner from infringement." Cisco further objects to the proposed instruction as being irrelevant to the determination of infringement.

[32]These instructions are proposed in the event Cisco's presentation at trial makes these

A patent owner has the right to stop others from making, using, selling and offering for sale, and importing into the United States the invention covered by the patent claims during the life of the patent.[33]] [34]

In this case, there are two possible ways that a claim may be infringed.  I will explain the requirements for each of these types of infringement to you.  The two types of infringement are called: (1) direct infringement; and (2) active inducement.

[VirnetX proposes:  In this case, VirnetX has alleged that Cisco directly infringes the '135, '504, '211, and '759 patents.  In addition, VirnetX has alleged that customers and end-users of Cisco are directly infringing the patents and that Cisco is liable for actively inducing their customers' and end-users' direct infringement.

Only the claims of a patent can be infringed.  You must compare each of the Asserted Claims, as I have defined them, to the accused acts of infringement and determine whether or not there is infringement [Cisco proposes: of that specific claim].  You must not compare the accused products or methods with any specific example set out in the patents.  The only correct comparison is with the language of the claim itself, with the meanings I have given you.

In order to prove infringement, VirnetX must prove that the requirements for one or more of these types of infringement are met by a preponderance of the evidence, i.e., that it is more likely true than not that all of the requirements of one or more of each of these types of infringement have been proved.

---

instructions relevant.  *See Bedrock Computer Tech. LLC v. Yahoo, Inc.*, Civil Action No. 6:09-cv-269LED, Dkt. 833 at 8.

[33] *VirnetX Inc. v. Apple, Inc.*, 6:10-CV-417-LED, Dkt. 597 at 11.

[34] Cisco objects to this instruction as cumulative and repetitive.  Cisco further objects because this is an incorrect statement of law.  *See Ebay Inc. et al., v. Mercexchange, L.L.C.* 547 U.S. 388, 393-394 (2006).

You must consider each asserted claim of the Patents-in-Suit individually and must reach your decision as to each assertion of infringement based on my instructions about the meaning and scope of the claims, the legal requirements for infringement, and the evidence presented to you by the parties.

I will now explain each of the types of infringement in more detail.

**6.1     Direct Infringement**[35] **[AGREED except where indicated]**

If any person makes, uses, or offers to sell, sells **in the United States or imports into the United States** what is covered by the claims of a patent without the patent owner's permission, that person is said to infringe the parent.  This type of infringement is called direct infringement.   To determine direct infringement, you must compare the accused products or methods with each of the Asserted Claims of the Asserted Patents, using my instructions as to the meaning of the patent claims.

**[Cisco proposes: An apparatus] A** patent claim is directly infringed only if the accused product **[VirnetX proposes:  or method]** includes each and every element **[VirnetX proposes: or steps]** in that patent claim.  If the accused product **[VirnetX proposes:  or method]** does not contain one or more of the limitations recited in a claim, then that product **[VirnetX proposes: or method]** does not directly infringe that claim.[36]

**[VirnetX proposes:  An accused system or product directly infringes a claim if it is reasonably capable of satisfying the claim elements even though it may also be capable of non-infringing modes of operation.**[37]  **If a claim requires only that the system or product**

---

[35]Adapted from the Court's Charge in *VirnetX Inc. v. Microsoft Corp.*, Civil Action No. 6:07-CV-80; *VirnetX Inc. v. Apple, Inc.*, Civil Action No. 6:10-CV-417-LED; *i4i Limited Partnership v. Microsoft Corp.*, Civil Action No. 6:07CV113; *Fractus S.A. v. Samsung Electronics Co.*, Civil Action No. 6:09-CV-203.

[36] Adapted from *VirnetX v. Apple, Inc.*, 6:10-CV-417-LED, Dkt. No. 597 at 13; Model Patent Jury Instructions prepared by The National Jury Instruction Project at 16.

**37 Taken from the Court's Jury Instructions in VirnetX Inc. v. Microsoft, Inc., Civil Action No. 6:07-CV-80-LED, Dkt. No. 376 at 9 (E.D. Tex. March 15, 2010); see also Hilgraeve Corp. v. Symantec Corp., 265 F. 3d 1336, 1343 (Fed. Cir. 2001); Finjan, Inc. v. Secure Computing Corp., 626 F.3d 1197, 1200, 1204 (Fed. Cir. 2010) (finding that an accused device may be found to infringe a system claim if it is reasonably capable of satisfying the claim limitations even though it may also be capable of non-infringing modes of operation); VirnetX Inc. v. Microsoft, Inc., Civil Action No. 6:07-CV-80-LED, Dkt. No. 376 at 9 (E.D. Tex. March 15, 2010); Mass Engineered Design, Inc. v. Ergotron, Inc., Civil**

have the capacity to perform a function, one who makes a system or product with that capability without the patent owners' authority is a direct infringer even though the maker's customers do not use the capacity.[38]]

[Cisco proposes: To infringe a method claim, a person or entity must have practiced all steps of the claimed method.  A method claim is not directly infringed by the sale of an apparatus even though it is capable of performing only the patented method.  The sale of the apparatus is not a sale of the method.  A method claim is directly infringed only by someone performing each and every step recited in the claim.  If a single person or entity does not perform one or more of the steps recited in the claim, then there is no direct infringement of that claim.[39] [40]

[VirnetX proposes:  A patent claim is directly infringed only if the accused product or method includes each and every element in that patent claim.  If the accused product or method does not contain one or more of the limitations recited in a claim, then that product or method does not directly infringe that claim.  If you find that the accused product or method includes each element or step of the claim, then that product or method infringes

---

Action No. 2:06-CV-272-LED, Dkt. No. 658 at 18 (E.D. Tex. Nov. 19, 2008).

[38] CHISUM ON PATENTS § 16.02[3][c] ("If the claim only requires that a device have the capacity to perform a function, one who makes a device with that capacity without the patent owner's authority is a direct infringer even though the maker's customers do not use the capacity.").

[39] Cisco cites no authority for this proposal.   VirnetX objects to this instruction as an erroneous statement of the law.  *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301 (Fed. Cir. 2012) (en banc); *Travel Sentry, Inc. v. Tropp.*, 2012 U.S. App. 22691 (Fed. Cir. Nov. 5, 2012) (based on *Akamai* holding, reversing district court's ruling of no showing of direct infringement by one person in the inducement evidence).

[40] Cisco's position is that Akamai is only relevant to indirect infringement, not direct infringement.

McKool 869123v1

the claim even if such product or use contains additional elements or steps that are not recited in the claim.[41]]

[VirnetX proposes: A person may directly infringe a patent even though in good faith the person believes that what it is doing is not an infringement of any patent and even if it did not know of the patent.  Direct infringement does not require proof that the person copied a product or the patent. [42]] [43]

You must consider each of the asserted claims of the patents-in-suit individually [Cisco proposes:, and decide whether offering for sale, selling, importing or using the accused product or performing the accused method infringes that claim]. You must be certain to compare such accused product or method with each claim that such product or method is alleged to infringe.  Such accused product or method should be compared to the limitations recited in the patent claims, not to any preferred or commercial embodiment of the claimed invention.

Taking each asserted claim of the Asserted Patents separately, if you find that VirnetX has proved by a preponderance of the evidence that each and every limitation of that [Cisco proposes: apparatus claim is present in the accused product [VirnetX proposes:  or method] [Cisco proposes: or that an individual or entity has performed every step of a method claim], then you must find that such product or method infringes that claim.[44]

---

[41] *VirnetX Inc. v. Apple, Inc.*, 6:10-CV-417-LED, Dkt. 597 at 13.

[42] From the Court's Charge in *VirnetX Inc. v. Apple Inc.*, Civil Action No. 6:10-cv-417-LED, Dkt. 597 at 13; *VirnetX Inc. v. Microsoft Corp.*, Civil Action No. 6:07-cv-80, Dkt. No. 376 at 9.

[43] Cisco objects to this instruction as unnecessary, prejudicial, and cumulative of other attempts to raise this concept in other instructions.

[44] VirnetX objects to Cisco's proposed instructions because they are inaccurate statements of the law, surplusage, and not necessary to a full understanding of direct infringement.

## 6.2      Direct Infringement By Literal Infringement[45] [AGREED]

A claim limitation is literally met if it exists in the accused product or method just as it is described in the claim language, either as I have explained that language to you or, if I did not explain it, as it would be understood by one of skill in the art.

---

[45]Adapted from the Court's Charge in *VirnetX Inc. v. Microsoft Corp.*, Civil Action No. 6:07-CV-80; *VirnetX Inc. v. Apple, Inc.*, Civil Action No. 6:10-CV-417; *i4i Limited Partnership v. Microsoft Corp.*, Civil Action No. 6:07CV113; *Fractus S.A. v. Samsung Electronics Co.*, Civil Action No. 6:09-CV-203.

McKool 869123v1

**6.3     Active Inducement of Infringement[46] [Agreed Except Where Noted]**

VirnetX alleges that Cisco also is liable for infringement by actively inducing others to directly infringe the Asserted Claims.  As with direct infringement, you must determine whether there has been active inducement on a claim-by-claim basis.

To show induced infringement, VirnetX must prove by a preponderance of the evidence (1) that customers or end-users of Cisco have directly infringed the **[VirnetX proposes: asserted patent claims]** [Cisco proposes: product and method claims and/or (2) that Cisco and the customers or end-users of Cisco have taken action that together resulted in direct infringement of the asserted method claims; and (3)]** that Cisco has actively and knowingly aided and abetted that direct infringement.

**[Cisco proposes: If you decide that no one person or entity directly infringes an apparatus claim, then you must find that Cisco has not induced infringement of that claim. If you decide that someone directly infringes that apparatus claim, then you must further consider whether Cisco is legally responsible for that other person's infringement because it actively induced that infringement. [47]**

**Cisco is liable for active inducement of infringement of a patent claim if:**

**1.     Cisco took action which (1) encouraged a third party to perform acts that directly infringed all claims of an apparatus claim; (2) encouraged a third party to perform all of the required steps necessary to directly infringe a method claim; and/or (3) Cisco**

---

[46]Adapted from the Court's Charge in *VirnetX Inc. v. Microsoft Corp.*, Civil Action No. 6:07-CV-80; *i4i Limited Partnership v. Microsoft Corp.*, Civil Action No. 6:07CV113; *Global-Tech Appliance, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2070 (2011).

[47] **VirnetX objects on the grounds that the instructions are repetitive, not complete, and surplusage to instructions that follow, which appropriately express the elements of inducement.**

performed one or more of the required steps of a method claim necessary to directly infringe the method claim and Cisco encouraged a third party to perform all of the remaining steps of the method claim necessary to directly infringe the method claim;

2.      Cisco knew of the patent and intended to cause the encouraged acts;

3.      Cisco knew or was willfully blind that the third party's performing one or more of the encouraged acts I just described would constitute infringement of the patent claims.   Willful blindness requires that Cisco subjectively believed there was a high probability that the encouraged acts constituted infringement of the patent and Cisco took deliberate actions to avoid learning of the infringement; and

4.      The third party actually carried out one or more of these encouraged acts as I described them for you.]

[VirnetX proposes:[48]

(1)      Cisco takes action during the time the patent is in force which encourages acts by someone else;

(2)      the encouraged acts constitute direct infringement of that claim;

(3)      Cisco (a) is aware of the patent, and knows that the encouraged acts constitute infringement of the patent; or (b) is willfully blind to the infringement of the patent.   Willful blindness requires that Cisco subjectively believed there was a high probability that the encourage acts constituted infringement of the patent and Cisco took deliberate actions to avoid learning of the infringement;

(4)      Cisco has the intent to encourage infringement by someone else; and

(5)      the encouraged acts are actually carried out by someone else.

---

[48] Adapted from *VirnetX Inc. v. Apple Inc.*, Civil Action No. 6:10-cv-417-LED.

[Cisco proposes: Negligence or even recklessness as to the possibility of infringement on the other hand is insufficient to meet the intent requirement of inducement.[49]][50]

In order to prove active inducement, VirnetX must prove that each of the above requirements is met.  Further, proof of each element must be by a preponderance of the evidence, i.e., that it is more likely than not that each of the above requirements has been met.

[VirnetX proposes: In considering whether Cisco has induced infringement by others, you may consider all the circumstances, including whether or not it obtained the advice of a competent lawyer, whether or not it knew of the patents when designing and manufacturing its products and whether or not it removed or diminished the allegedly infringing features.  You may not assume that merely because they did not obtain an opinion of counsel, the opinion would have been unfavorable.[51]] [52]

[VirnetX proposes: Intent to cause a third party to perform acts which result in direct infringement may be demonstrated by evidence of active steps taken to encourage the third party to do so, such as advertising an infringing use or instructing how to engage

---

[49]*Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2070-71, 563 U.S. ___ (2011).

[50] VirnetX objects to this instruction as confusing to the jury because it introduces new legal terms to the jury without any explanation as to their meaning.  The instruction is also not relevant to any issue the jury will decide.

[51]Adapted from *VirnetX Inc. v. Microsoft Corp.*, Civil Action No. 06:07-cv-80, Dkt. No. 376 at p. 12; *Broadcom Corp. v. Qualcomm, Inc.*, 543 F.3d 683, 599 (Fed. Cir. 2008) ("Because opinion-of-counsel evidence, along with other factors, may reflect whether the accused infringer 'knew or should have known' [or was willfully blind] that its actions would cause another to directly infringe, we hold that such evidence remains relevant to the second prong of the intent analysis.").

[52]Cisco objects to this instruction as legally erroneous, conclusory, and prejudicial to the extent it seeks to interject the advice of counsel issue into the inducement analysis.

**in an infringing use.**[53]][54]   In order to establish active inducement of infringement, it is not sufficient that Cisco was aware of the act(s) that allegedly result in direct infringement of the patent claim. Rather, you must find that Cisco specifically intended to cause its customers to engage in the acts that constitute direct infringement and Cisco knew or was willfully blind that the action would cause direct infringement.[55]

If you do not find that the accused infringer specifically meets these intent requirements by a preponderance of the evidence, then you must find that the accused infringer has not actively induced the alleged infringement.

**[Cisco proposes: If Cisco did not know that the acts it was inducing were infringing, it cannot be liable for inducement unless it actually believed that it was highly probable its actions would encourage infringement of a patent and it took intentional acts to avoid learning the truth. It is not enough that Cisco was merely indifferent to the possibility that it might encourage infringement of a patent.[56]**

**If you find that Cisco was aware of the patent, but believed that the acts it encouraged did not infringe that patents, or that the patent was invalid, Cisco cannot be liable for inducement. Further, Cisco cannot be liable for inducement if it was objectively**

---

[53] *See Astrazeneca LP v. Apotex, Inc.*, 633 F.3d 102, 1059 (Fed. Cir. 2010); *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301 (Fed. Cir. 2012).

[54] **Cisco objects to this statement as suggesting that advertisements or instructions on use of a product in an allegedly infringing way are sufficient to establish the requisite intent for inducement, which requires a "specific intent" to induce actual infringements.** *Kyocera Wireless Corp. v. ITC*, **545 F.3d 1340, 1354 (Fed. Cir. 2008) ("Proof of intent to cause infringing acts is a necessary but not sufficient condition for induced infringement. Inducement additionally requires 'evidence of culpable conduct, directed to encouraging another's infringement,'** *i.e.,* **specific intent to encourage infringement.").**

[55] *VirnetX Inc. v. Microsoft Corp.*, No. 6:07-cv-80, Dkt. 376 at 12.

[56] **VirnetX objects that the proposed instructions are cumulative of those already given.**

reasonable to believe that the patent claim was invalid or that its actions did not infringe a valid patent.[57]][58]

---

[57]An objectively reasonable belief that a patent claim is invalid or not infringed is incompatible with the requirement that the supplier know of infringement, and is incompatible with the requirement that the supplier defendant took deliberate actions to avoid learning of the infringement.

[58]VirnetX objects to this instruction because it is repetitions and confusing to the jury. The remaining portions of the preceding instructions without the surplusage adequately provide the jury with the elements needed to determine inducement.

**6.4      [Cisco proposes: Multiple Alleged Infringers[59] [60]**

Direct infringement requires that a party perform or use every step of a claimed method.  Where no single party performs all of the steps of a claimed method but more than one party performs steps of the method, the claim is directly infringed only if the accused party has control over the other entities performing the steps so that the actions of the other entities are legally attributable to the accused party.  Mere arms-length cooperation between parties is insufficient to prove direct infringement.]

---

[59]Adapted from the Federal Circuit Bar Association Model Jury Instructions at 33; *see also Akamai Techs., Inc. v. Limelight Networks, Inc.,* 692 F.3d 1301, 1307 (Fed. Cir. 2012).

[60] VirnetX objects to this instruction because, as worded, it is an incomplete and incorrect statement of the law.  *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301 (Fed. Cir. 2012).  VirnetX further objects to the presentation of an infringement theory regarding multiple alleged infringers because VirnetX does not assert facts that would support such an infringement instruction.

## 6.5    Willful Infringement[61] [62]

VirnetX contends that Cisco has willfully infringed the patents asserted against Cisco.  If you find, on the basis of the evidence and the law as I have explained it, that Cisco directly or indirectly infringes at least one of the asserted claims of the patents-in-suit, **[Cisco proposes: and that the asserted claims are not invalid],**[63] then you must decide whether or not that infringement was willful.

Willful infringement is not relevant to your decision of whether or not there is infringement.  **[VirnetX proposes:  It is relevant only to the amount of damages, if any, to which a patent owner may be entitled and may, in certain circumstances, entitle the patent owner to increased damages.  But it would be my job to decide whether to award increased damages to a patent owner, after you have rendered a verdict.]** You should not consider willful infringement in making your damage award, if any. **[Cisco Proposes: It is my job and my job alone to decide the impact of a finding of willful infringement, after you have rendered a verdict.]**

**[VirnetX proposes:  Willfulness requires you to determine by clear and convincing evidence that Cisco acted recklessly.  To prove that Cisco acted recklessly, VirnetX must prove by clear and convincing evidence that Cisco actually knew or should have known**

---

[61]Adapted from the Court's Charge in *SSL Services, LLC v. Citrix Systems, Inc.*, Civil Action No. 2:08-CV-158-JRG, Dkt. No. 256 at 18-19; *i4i Limited Partnership v. Microsoft Corp.*, Civil Action No. 6:07CV113.

[62]**Cisco objects to providing any instruction on willful infringement without a threshold determination by this Court that VirnetX has demonstrated, by clear and convincing evidence, that Cisco acted despite an objectively high likelihood that its actions constituted infringement of a valid patent.**

[63] *See* Court's Charge in *WesternGeco v. Ion.*, Civil Action No. 4:09-cv-1827, Dkt. No. 530 at 23.

that its actions constituted an unjustifiably high risk of infringement of a valid patent.  To determine whether Cisco had this state of mind, consider all the facts which may include, but are not limited to:

(1)     Whether or not Cisco acted in accordance with the standards of commerce for its industry;

(2)     Whether or not there is a reasonable basis to believe that Cisco did not infringe or had a reasonable defense to infringement;

(3)     Whether or not Cisco made a good-faith effort to avoid infringing the patents, for example, whether Cisco attempted to design around the patents; and

(4)     Whether or not Cisco tried to cover up its infringement.

None of these factors are determinative, and this list of factors is not an exhaustive list of things you should consider.  Your determination of willfulness should incorporate the totality of the circumstances based on the evidence presented during the trial.[64]]

[Cisco proposes:  To prove willfulness, VirnetX must prove by clear and convincing evidence that Cisco acted with reckless disregard of the Asserted Patent Claims.  Willfulness requires you to determine three things: first, that Cisco knew about the asserted patent claim; second, that Cisco acted despite an objectively high likelihood that its actions infringed a valid patent claim;[65] and third, that Cisco actually knew of or was

---

[64]Adapted from *SSL Services, LLC v. Citrix Systems, Inc.*, Civil Action No. 2:08-CV-158-JRG, Dkt. No. 256 at 18-19.  This instruction assumes that the Court has reserved the determination of the objective prong of willfulness to itself under *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs.*, 682 F.3d 1003, 1006-07 (Fed. Cir. 2012) (finding the objective determination of recklessness is "best decided by the judge as a question of law").

[65] VirnetX objects to the inclusion of the "objective prong" in the instructions to the jury because the objective prong is a matter to be decided by the Court.

willfully blind to, the objectively high likelihood that its actions infringed a valid patent claim.

If Cisco had a reasonable basis to believe that its actions did not infringe or that the patent claim was invalid then Cisco is not willful.]

7.      **Invalidity**[66]

Cisco has challenged the validity of the Asserted Patent Claims on a number of grounds.

Cisco must prove that a patent claim is invalid by clear and convincing evidence.  **[VirnetX**

**proposes: Evidence of material prior art which is not cumulative of prior art cited to or by**

**the PTO may be more probative in meeting the standard than the prior art that was cited**

**to or by the PTO.[67]]** [68]  An issued patent is accorded a presumption of validity based on the

presumption that the United States Patent and Trademark Office acted correctly in issuing a

patent. **[VirnetX proposes: From the issuance of the patent, it is presumed that a claimed**

**invention is new, useful and not obvious and satisfies the other legal requirements for a**

**valid U.S. patent.  Each claim of a patent is presumed valid independently of the validity of**

**the other claims.  The presumption of validity remains intact and the burden of proof**

**remains on the party challenging validity throughout this litigation.  In other words, the**

**burden never shifts to VirnetX to prove that its patents are valid.[69]]** [70]  **[Cisco proposes:**

---

[66]Adapted from the Court's Charge in *VirnetX Inc. v. Microsoft Corp.*, Civil Action No. 6:07-CV-80; *i4i Limited Partnership v. Microsoft Corp.*, Civil Action No. 6:07CV113; *Eolas Tech. Inc. v. Adobe Systems, Inc.*, Civil Action No. 6:09-CV-446.

[67]From *VirnetX Inc. v. Apple, Inc.*, Civil Action No. 6:10-CV-417; *Alcatel-Lucent USA Inc. v. Overstock.com, Inc.*, Civil Action No. 6:09-cv-422-LED, Dkt. No. 482 at 13.

[68]Cisco notes that this "adapted" language is more confusing than the language actually given in *Alcatel*.  The instructions given in *Alcatel* were as follows: "Evidence of prior art which was not reviewed by the PTO may be more probative of meeting this standard, than prior art which was reviewed by the PTO."  *Alcatel-Lucent USA Inc. v. Overstock.com, Inc.*, Civil Action No. 6:09-cv-422-LED, DKT. No. 482 at 13.

[69]Adapted from *VirnetX Inc. v. Apple, Inc.*, Civil Action No. 6:10-CV-417; *Fractus, S.A. v. Samsung Electronics Co.*, Civil Action No. 6:09-CV-203.

[70]Cisco objects to this instruction because it implies that the presumption of validity is an additional requirement above and beyond the clear and convincing standard.  The presumption of validity leads to the clear and convincing standard and instructing on both can lead a jury to believe that there are two separate requirements for proving invalidity

35

Even though the United States Patent and Trademark office examiner has allowed the claims of a patent, you have the ultimate responsibility for deciding whether the claims of the patent are valid. The Patent Office can make mistakes and in addition, the Patent Office was not aware of all the information that was presented to you.  Prior art that was considered by the Patent Office in determining whether to grant a patent is listed in the patent.  If a piece of prior art is not listed in the patent, the Patent Office did not consider it.][71]

[Cisco proposes: During this case, Cisco has submitted prior art that was not considered by the United States Patent and Trademark Office (PTO) during the prosecution of the patents-in-suit.  Cisco contends that such prior art invalidates certain claims of the patents-in-suit.  In deciding the issue of invalidity, you may take into account the fact that the prior art was not considered by the PTO when it issued the patents-in-suit.  Prior art that differs from the prior art considered by the PTO may carry more weight than the prior art that was considered and may make Cisco's burden of showing that a patent claim is invalid by clear and convincing evidence easier to sustain.[72]][73]

_____

and so is potentially prejudicial to Cisco.

[71]VirnetX objects to this instruction because it is an inaccurate statement of the law.  There is no requirement that all pieces of prior art considered by the PTO be listed in the patent. *Microsoft Corp. v. i4i Ltd. Partnership*, 131 S.Ct. 2238, 2251 (2011).

[72] Model Patent Jury Instructions for the Northern District of California; *Microsoft Corp. v. i4i LTD Partnership*, 131 S.Ct. 2238, 2242, 2251, ___ U.S. ___ (2011); ("[N]ew evidence supporting an invalidity defense may carry more weight in an infringement action than evidence previously considered by the PTO, ... we note that a jury instruction on the effect of new evidence can, and when requested, most often should be given,") (citations omitted).

[73]VirnetX objects to this instruction because it inappropriately instructs the jury to find facts that are in dispute.  There is no evidence that the PTO did not "consider" certain prior art. In fact, as the Supreme Court noted, a PTO examiner is under no duty to cite

For a patent to be valid, the invention claimed in the patent must be new, useful, and not obvious.  A patent cannot take away from people their right to use what was known or what would have been obvious when the invention was made.  In addition, the patent must comply with certain statutory requirements of disclosure.

I will now explain to you Cisco's grounds for invalidity in detail.  In making your determination as to invalidity, you should consider each claim and each ground for invalidity separately.

every reference he considers.  *Microsoft Corp. v. i4i Ltd. P'ship,* **131 S.Ct. 2238, 2251 (2011) The proposed instruction also incorrectly omits the materiality element set out by the Supreme Court in** *i4i.*

**7.1    Anticipation[74] [AGREED except where indicated]**

Cisco contends that all of the Asserted Claims of the '135, '759, '504 and '211 patents are invalid for being anticipated by prior art.  Cisco bears the burden of establishing anticipation by clear and convincing evidence.

A patent claim is invalid if the claimed invention is not new.  For a claim to be invalid on the basis of anticipation because it is not new, all of its requirements must be present in a single previous device or method, or described in a single previous publication or patent.  We call these things prior art.  Cisco must prove by clear and convincing evidence that these items are prior art.

The description in a reference does not have to be in the same words as the claim, but all the requirements of the claim must be there, either stated expressly or necessarily implied or inherent in the level of ordinary skill in the field of technology of the patent at the time of the invention, so that someone of ordinary skill in the field of technology of the patent looking at that one reference would be able to make and use the claimed invention.

Something is inherent in an item of prior art if it is always present in the prior art or always results from the practice of the prior art **[VirnetX proposes: and if a skilled person would understand that to be the case.[75]] [76]**  Inherency may not be established by probabilities or possibilities.  The mere fact that a certain thing may coincidentally result from a given set of circumstances is not sufficient.  A party claiming anticipation by inherency must show that the

---

[74]*VirnetX Inc. v. Microsoft Corp.*, Civil Action No. 6:07-CV-80; *Eolas Tech. Inc. v. Adobe Systems, Inc.*, Civil Action No. 6:09-CV-446.

[75]**Jury Instructions in *VirnetX Inc. v. Apple, Inc.*, Civil Action No. 6:10-CV-417; *Cheetah Omni, L.L.C. v. Verizon Services Corp.*, 6:09-cv-260-LED, Dkt. No. 437 at 14; *i4i Limited Partnership v. Microsoft Corp.*, 6:07-cv-113-LED, Dkt. No. 323 at 16.**

[76]**Cisco objects to this instruction as an inaccurate statement of the law.**

elements of the claim are always present in the prior art or always result from the practice of the prior art.  You may not combine two or more items of prior art to make out an anticipation.

[Cisco proposes: Before explaining the different ways in which Cisco can show that the inventions are not new, let me now instruct you on two basic concepts pertaining to the making of an invention by conception and reduction to practice.]  [VirnetX proposes: In this case, you must determine the date of invention, or conception and reduction to practice, for the claimed invention and the prior art references [NAME PRIOR ART REFERENCES].[77]]

[Cisco proposes: First, I will address the concept of conception.  Conception is the mental part of an inventive act, i.e., the formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention as it is thereafter to be applied in practice.  Conception of an invention is complete when the idea is so clearly defined in the inventor's mind that a person of ordinary skill in the field of the technology would be able to reduce the invention to practice without extensive research or experimentation.  This requirement does not mean that the inventor has to have a prototype built or actually explain her or his invention to another person.  But there must be some evidence beyond the inventor's own testimony that confirms the date on which the inventor had the complete idea.[78]  Conception may be proven when the invention is shown in its complete form by drawings, disclosure to another person, or other forms of evidence presented at trial.]

---

[77]Adapted from the Federal Bar Association Model Patent Instructions at 42.

[78]Adapted from the Federal Bar Association Model Patent Instructions at 42.

[VirnetX proposes:  Second, a claimed invention is reduced to practice when it has been constructed/used/tested sufficiently to show that it will work for its intended purpose or when the inventor files a patent.  An invention may also be reduced to practice even if the inventor has not made or tested a prototype of the invention, if it has been described in a filed patent application.[79]]

---

[79]Federal Circuit Bar Association Model Patent Jury Instructions at 42-43; taken from VirnetX v. Microsoft Corp., Civil Action No. 6:07-CV-80.

**7.2     Anticipation by Public Knowledge or Use by Another [AGREED except where indicated]**

I will now describe the specific requirements for the prior art categories relied on by Cisco in this case.

A patent claim is invalid if the invention recited in that claim was publicly known or used in the United States by someone other than the inventor before the patent applicant invented it, or more than one year before the United States patent application was filed.  For the '135 Patent, VirnetX contends that the invention date was September 23, 1999,[80] [81] and Cisco contends the invention date was February 15, 2000.  For the '759, '504, and '211 Patents, the parties agree that the invention date was April 26, 2000.

A prior public use by another may anticipate a patent claim, even if the use was accidental or was not appreciated by the other person.  Thus, a prior public use may anticipate an invention even if the user did not intend to use the invention, or even realize he or she had done so.  Private or secret knowledge, such as knowledge confidentially disclosed within a small group, is not enough to invalidate a patent claim.

---

[80]**Cisco objects to this instruction as assuming a disputed fact for the invention date of September 23, 1999.**

[81]**VirnetX replies that the instruction does not assume a disputed fact.  Rather, the instruction states VirnetX's contention.**

McKool 869123v1

**7.3     Anticipation by a Printed Publication [AGREED except where indicated]**

A patent claim is invalid if the invention defined by that claim was described in a printed publication anywhere in the world before it was invented by the patent applicant, or more than one year prior to the filing date of the United States patent application. **[VirnetX proposes: VirnetX contends that the priority date for the '135 patent is the alleged invention date, September 23, 1999, rather than the effective filing date of February 15, 2000.]**[82] [83] The effective filing date of the application for the **[Cisco proposes: '135]** is February 15, 2000.  The effective filing date of the '759, '504, and '211 Patents is April 26, 2000.

Printed publications may include issued patents as well as articles, treatises, and other written materials.  A printed publication or patent will not be an anticipation unless it contains a description of the invention covered by the patent claims that is sufficiently detailed to teach a skilled person how to make and use the invention without undue experimentation.  Factors to be considered in determining whether a disclosure would require undue experimentation include: (1) the quantity of experimentation necessary; (2) the amount of direction or guidance disclosed in the printed publication or patent; (3) the presence or absence of working examples in the printed publication or patent; (4) the nature of the invention; (5) the state of the prior art; (6) the relative skill of those in the art; (7) the predictability of the art; and (8) the breadth of the claims.

A printed publication must be reasonably accessible to those members of the public who would be interested in its contents.  It is not necessary that the printed publication be available to

---

[82]**Cisco objects to this instruction as assuming a disputed fact for the invention date of September 23, 1999.**

[83]**VirnetX replies that the instruction does not *assume* a disputed fact; it states VirnetX's *contention.***

every member of the public.  The date that a printed publication becomes prior art is the date that it becomes available to the public.

So long as the printed publication was available to the public, the form in which the information was recorded is unimportant.  The information must, however, have been maintained in some permanent form, such as printed or typewritten pages, magnetic tape, microfilm, photographs, or photocopies.

**7.4**     **[Cisco Proposes] Anticipation by Prior Sale or Offer for Sale**

The sale or offer for sale in the United States of a product may be prior art to a patent claim covering the product or a method of making the product if the product or method was sold or offered for sale in the United States more than one year before the application for the patent was filed.  This is known as the on-sale bar.  The date of invention for the patent claims is irrelevant to this category of prior art.

In order for there to be an offer for sale, two requirements must be met.  First, the product must have been the subject of a commercial offer for sale in the United States.  Even a single offer for sale to a single customer may be a commercial offer, even if the customer does not accept the offer.  The on-sale bar is not limited to sales by the inventor, but may result from sales or offers for sale by a third party that anticipate the invention.

Second, the product must be "ready for patenting."  This can be satisfied in at least two ways:

1)      by proof of reduction to practice; that is, the alleged invention worked as actually intended before the critical date; or

2)      by proof that prior to the critical date, the inventor had prepared drawings or other descriptions of the invention that were sufficiently specific to enable a person of ordinary skill in the art of the invention to make and use the invention based on them.]

**7.5**     [Cisco proposes: Anticipation: Made by Someone Else[84] [85] [86]

Cisco contends that Asserted Claims of the patents-in-suit are invalid as anticipated because the invention was first made by someone else.  If someone other than the inventors named on the patents already made the invention described in one or more such patent claims involved in this lawsuit, then each such claim was "anticipated" by the other invention and each such claim is invalid.  Cisco must prove by clear and convincing evidence that such claim was already made by someone else in the United States and that the other person had not abandoned the invention or kept it secret.

If the invention of a patent claim was first made by someone else as explained above, you must find the patent claim invalid.]

---

[84]Adapted from Model Patent Jury Instructions prepared by The National Jury Instruction Project at 41.

[85]VirnetX objects to this instruction because the defense was not timely raised, disclosed or allowed by the Court.  VirnetX further objects because the instruction fails to advise the jury that the parties dispute the invention date.

[86]Cisco replies that this defense was disclosed in Defendant's original July 1, 2011 Invalidity Contention at footnote 2.  Cisco also replies that the instruction is not advising the jury how to rule but rather explaining what is necessary to show prior invention.

**7.6      Corroboration of Oral Testimony**[87] **[AGREED except where indicated]**

Oral testimony alone is insufficient to prove prior invention, or that something is prior art, or that a particular event or reference occurred before the filing date of the patents-in-suit.  A party must provide evidence that corroborates any oral testimony, especially when the oral testimony comes from an interested witness or a witness testifying on behalf of an interested party.  This includes any witness or company testifying that his or its invention predates the patents-in-suit, and also includes a patent owner seeking to prove an earlier date of invention than the effective date, stated on the face of the patent.  Documentary or physical evidence that is made contemporaneously with the inventive process provides the most reliable proof that the testimony has been corroborated, but corroborating evidence may also consist of testimony of a witness, other than an inventor, to the actual reduction to practice or it may consist of evidence of surrounding facts and circumstances independent of information received from the inventor.  If you find that the party has not corroborated a witness's oral testimony with other evidence, you are not permitted to find that the subject of that oral testimony qualifies as prior art or supports a prior date of invention.

[VirnetX proposes:   If evidence is presented for purposes of attempting to corroborate oral testimony, then you must determine whether this evidence does, in fact, properly corroborate the oral testimony.   In making this determination, you should consider the following factors:

  1)   The relationship between the corroborating witness and the alleged prior user;

  2)   The time period between the event and this trial;

  3)   The interest of the corroborating witness in the subject matter of this suit;

---

[87]Adapted from Court's charge in *Eolas Tech. Inc. v. Adobe Systems, Inc.*, Civil Action No. 6:09-CV-446; *i4i Limited Partnership v. Microsoft Corp.*, Civil Action No. 6:07CV113; .

4)  Contradiction or impeachment of the witness's testimony;

5)  Extent and detail of the corroborating witness's testimony;

6)  The witness's familiarity with the subject matter of the patented invention and the alleged prior use;

7)  Probability that a prior use could occur considering the state of the art at the time; and

8)  Impact of the invention on the industry, and the commercial value of its practice.[88]][89]

---

[88]Verbatim from *Lazare Kaplan Int'l, Inc. v. Photosribe Techs, Inc.*, 628 F.3d 1359, 1374 (Fed. Cir. 2010); taken from *i4i Limited partnership v. Microsoft Corp.*, Civil Action No. 6:07-CV-113; *Fractus, S.A. v. Samsung Electronics Co.*, Civil Action No. 6:09-CV-203.

[89]Cisco objects to this instruction as an incorrect statement of the law.

McKool 869123v1

**7.7      [VirnetX proposes:  Obviousness[90]**

In this case, Cisco contends that claims 2 and 17 of the '759 patent are invalid as obvious.  A patent claim is invalid if the claimed invention would have been obvious to a person of ordinary skill in the field of the invention at the time the application was filed.  This means that even if all the requirements of the claim cannot be found in a single prior art reference that would anticipate the claim or constitute a statutory bar to that claim, a person of ordinary skill in the field of the invention who knew about all of the prior art would have come up with the claimed invention.

But a patent claim composed of several requirements is not proved obvious merely by demonstrating that each of its requirements was independently known in the prior art.  Although common sense directs one to look with care at a patent application that claims as innovation the combination of known requirements according to their established functions to produce a predictable result, it can be important to identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the requirements in the way the claimed new invention does.  This is so because inventions in most, if not all, instances rely upon building blocks long since uncovered, and claimed discoveries almost of necessity will be combinations of what, in some sense, is already known.  Accordingly, you may evaluate whether there was some teaching, suggestion, or motivation to arrive eat the claimed invention before the time of the claimed invention, although proof of this is not a requirement to prove obviousness.  Teachings, suggestions, and motivations may also be

---

[90]Adapted from The National Jury Instruction Project; Model Patent Jury Instructions **§ 5.9**; adopted by the Court as its sample jury instructions; Court's charge in *Bedrock Computer Tech. L.L.C. v. Google Inc.*, Civil Action No. 6:09-CV-269-LED; *Alcatel-Lucent USA Inc. v. Overstock.com, Inc.*, Civil Action No. 6:09-CV-422-LED; *Eolas Tech. Inc. v. Adobe Systems, Inc.*, Civil Action No. 6:09-CV-446.

found within the knowledge of a person with ordinary skill in the art including inferences and creative steps that a person of ordinary skill in the art would employ.  Additionally, teachings, suggestions, and motivations may be found in the nature of the problem solved by the claimed invention, or any need or problem known in the field of the invention at the time of and addressed by the invention.

Therefore, in evaluating whether such a claim would have been obvious, you should consider a variety of factors:

1) Whether Cisco has identified a reason that would have prompted a person of ordinary skill in the field of the invention to combine the requirements or concept from the prior art in the same way as in the claimed invention.  There is no single way to define the line between true inventiveness on one hand (which is patentable) and the application of common sense and ordinary skill to solve a problem on the other hand (which is not patentable).  For example, market forces or other design incentives may be what produced a change, rather than true inventiveness.

2) Whether the claimed invention applies a known technique that had been used to improve a similar device or method in a similar way; and

3) Whether the claimed invention would have been obvious to try, meaning that the claimed innovation was one of a relatively small number of possible approaches to the problem with a reasonable expectation of success by those skilled in the art.

But you must be careful not to determine obviousness using hindsight; many true inventions can seem obvious after the fact.  You should put yourself in the position of a person of ordinary skill in the field of the invention at the time the claimed invention was made, and you should not consider what is known today or what is learned from the teaching of the patent.

The ultimate conclusion of whether a claim is obvious should be based on your determination of several factual issues:

1) The level of ordinary skill, which definition has been agreed by the parties;

2) You must decide the scope and content of the prior art.  In determining the scope and content of the prior art, you must decide whether a reference relied upon by Cisco is pertinent, or analogous, to the claimed invention.  Pertinent, or analogous, prior art includes prior art in the same field of endeavor as the claimed invention, regardless of the problems addressed by the reference, and prior art from different fields reasonably pertinent to the particular problem with which the claimed invention is concerned.  Remember that prior art is not limited to patents and published materials, but includes the general knowledge that would have been available to one of ordinary skill in the field of the invention.

3) You should consider any difference or differences between the prior art and the claim requirements.

Finally, you should consider any of the following factors that you find have been shown by the evidence:

A.    Factors tending to show non-obviousness:

   1.    commercial success of a product due to the merits of the claimed invention;

   2.    a long-felt, but unsolved, need for the solution provided by the claimed invention;

   3.    unsuccessful attempts by others to find the solution provided by the claimed invention;

   4.    unexpected and superior results from the claimed invention;

   5.    acceptance by others of the claimed invention as shown by praise from others in the field of the invention;

   6.    licenses taken by others to use the claimed invention;

   7.    disclosures in the prior art that criticize, discredit, or otherwise discourage the claimed invention and would therefore tend to show that the invention was not obvious; and

   8.    other evidence tending to show non-obviousness.

You may consider the presence of any of the factors A.1-8 as an indication that the claimed invention would not have been obvious at the time the claimed invention was made.

B.      **Factors tending to show obviousness:**

   i.      **independent invention of the claimed invention by others before or at about the same time as the named inventor thought of it; and**

   ii.      **other evidence tending to show obviousness.**

**You may consider the presence of factors B.1 and 2 as an indication that the claimed invention would have been obvious at such time.  Although you should consider any evidence of these factors, the relevance and importance of any of them to your decision on whether the claimed invention would have been obvious is up to you.**

**If you find that a claimed invention was obvious by clear and convincing evidence as explained above, you must find that claim invalid.][91]**

---

[91] **Cisco objects to this instruction as an incorrect statement of the law and confusing to the jury.  Cisco's proposed instructions adequately provide the jury with the elements needed to consider for an obviousness determination.**

## 7.7    [Cisco proposes: Obviousness[92]

Not all innovations are patentable.  A patent claim is invalid for obviousness if the claimed invention, as a whole, would have been obvious to one having ordinary skill in view of all the prior art at the time the invention was made.

The issue is not whether the claimed invention would have been obvious to you as a layman, to me as a Judge, or to a genius in the art, but whether it would have been obvious to one of ordinary skill in the art at the time it was made.  Cisco bears the burden of proving this defense by clear and convincing evidence.

You must not use hindsight when comparing the prior art to the invention for obviousness.  You must consider only what was known before the invention was made. You may not judge the invention in light of present day knowledge or by what you learned from or about the claimed invention during trial.  In placing yourself in the shoes of one of ordinary skill in the art at the time the invention was made, you may also consider whether such a person would have been motivated to combine the prior art references in order to arrive at the claimed invention.

First, you must decide the level of ordinary skill in the field that someone would have had at the time the claimed invention was made.

Second, you must decide the scope and content of the prior art put into evidence in this case.

Third, you must decide the differences, if any, that existed between the claimed invention and the prior art.

---

[92]Adapted from Court's Charge in *VirnetX Inc. v. Microsoft Corp.*, Civil Action No. 6:07-cv-80, DI 376 at 19.

Finally, you should consider any additional considerations relating to the obviousness or non-obviousness of the invention.

I will now describe in detail the specific determinations you must make.]

**7.8**    **[Cisco proposes:  Scope and Content of the Prior Art[93]**

In determining whether or not the invention is valid, you must determine the scope and content of the prior art at the time the invention was made.  You must decide whether the specific references relied upon by Cisco in this case are prior art to the invention described in the Asserted Claims of the patents-in-suit.

Prior art includes previous devices, articles and methods that were publicly used or offered for sale, and printed publications or patents that disclose the invention or elements of the invention.  Once you decide whether or not specific references are prior art, you must also decide what those references would have disclosed or taught to one having ordinary skill in the field of technology of the patent at the time the invention was made.

In order for a reference to be relevant, the reference must be within the field of the inventor's endeavor, or if it is from another field of endeavor, the reference must be reasonably related to the particular problem or issue the inventor faced or addressed when making the inventions described in the Asserted Claims of the patents-in-suit.  A reference from a field of endeavor other than the inventors' is reasonably related to the problem or issues the inventors faced if the reference is one which, because of the matter with which the reference deals, logically would have commended itself to the attention of the inventors when considering the problems or issues they faced.  It is for you to decide what the problems or issues were that the inventors faced at the time the inventions in the asserted claims were made.]

---

[93]**Adapted from Court's Charge in *VirnetX Inc. v. Microsoft Corp.*, Civil Action No. 6:07-cv-80, DI 376 at 20.**

**7.9      [Cisco proposes:  Differences Over the Prior Art[94]**

The next question you must answer in determining whether or not the invention was obvious at the time it was made is what differences there are, if any, between the prior art and the patented invention.  In analyzing this issue, do not focus solely on the differences between the prior art and the invention because the test is not whether there are differences.  Rather, the test is whether or not the invention, as a whole, would have been obvious to one having ordinary skill in view of all the prior art at the time the invention was made.

If you conclude that the prior art discloses all the elements of the claimed invention, but those elements are in separate items, you must then consider whether or not it would have been obvious to combine those item.  A claim is not obvious merely because all of the elements of that claim already existed.  One way to decide whether one of ordinary skill in the art would combine what is described in various items of prior art is whether there is some teaching, suggestion, or motivation in the prior art for a skilled person to make the combination covered by the patent claims.  Motivation can be implicit or explicit.

In considering whether a claimed combination of prior art elements is obvious, you must consider whether the improvement is more than the predictable use of prior art elements according to their established functions.  When a patent simply arranges old elements, with each performing the same function it had been known to perform, and yields no more than one would expect from such an arrangement, the combination is obvious.

---

[94]Adapted from Court's Charge in *VirnetX Inc. v. Microsoft Corp.*, Civil Action No. 6:07-cv-80, DI 376 at 21.

It is common sense that familiar items may have obvious uses beyond their primary purposes, and a person of ordinary skill often will be able to fit the teachings of multiple patents together like pieces of a puzzle.  Multiple references in the prior art can be combined to show that a claim is obvious.  Any need or problem known in the field and addressed by the patent can provide a reason for combining the elements in the manner claimed.  To determine whether there was an apparent reason to combine the known elements in the way a patent claims, you can look to interrelated teachings of multiple patents, to the effects of demands known to the design community or present in the marketplace, and to the background knowledge possessed by a person of ordinary skill in the art.  Neither the particular motivation nor the alleged purpose of the patentee controls.  One of ordinary skill in the art is not confined only to prior art that attempts to solve the same problem as the patent claim.  Teachings, suggestions, and motivations may also be found within the knowledge of a person with ordinary skill in the art including inferences and creative steps that a person of ordinary skill in the art would employ.  Additionally, teachings, suggestions, and motivations may be found in the nature of the problem(s) solved by the claimed invention.

The fact that a combination was obvious to try may demonstrate that the combination itself was obvious.]

**7.10    [Cisco proposes:  Additional Considerations[95]**

The next question you must answer, in determining whether or not the invention was obvious at the time it was made, is what evidence there is, if any, of additional considerations relating to the obviousness or non-obviousness of the invention.  You may consider in your analysis any evidence about the following factors:

1)    Whether or not the invention proceeded in a direction contrary to accepted wisdom in the field;

2)    Whether or not there was long felt but unresolved need in the art that was satisfied by the invention;

3)    Whether or not others had tried but failed to make the invention;

4)    Whether or not the invention achieved any unexpected results;

5)    Whether or not the invention was praised by others;

6)    Whether or not others have taken licenses to use the invention;

7)    Whether or not experts or those skilled in the art at the making of the invention expressed surprise or disbelief regarding the invention;

8)    Whether or not products incorporating the invention have achieved commercial success;

9)    Whether or not others having ordinary skill in the field of the invention independently made the claimed invention at about the same time the inventor made the invention; and

10)    other evidence tending to show obviousness or nonobviousness.

---

[95]Adapted from Court's Charge in *VirnetX Inc. v. Microsoft Corp.*, Civil Action No. 6:07-cv-80, DI 376 at 23.

To be relevant to your determination of obviousness, any of these secondary considerations must have a connection, or "nexus," to the claimed invention set forth in the patent claims.  If a secondary consideration is unrelated to the claimed invention, but is instead attributable to something else, such as innovative marketing, then you should not consider it relevant to your obviousness determination.]

McKool 869123v1

### 7.11    Level of Ordinary Skill[96] [AGREED]

Several times in my instructions I have referred to a person of ordinary skill in the field of the invention.

The parties agree that a person of ordinary skill in the art would have a Master's degree in computer science or computer engineering, or in a related field, as well as approximately two years of experience in computer networking and in security with respect to computer networks, including actual experience with networking protocols as well as the security of those protocols.

---

[96] *VirnetX v. Microsoft,* Civil Action No. 6:07-cv-80.

8.    **Damages**[97] **[AGREED]**

I will now instruct you about the measure of damages.  By instructing you on damages, I am not suggesting which party should win this case, on any issue **[Cisco proposes: or that it is appropriate to award any damages in this case]**. If you find that Cisco infringed any valid claim of the Asserted Patents, you must then determine the amount of money damage to be awarded to VirnetX to compensate it for that infringement.

VirnetX seeks patent damages in the form of a reasonable royalty.  Generally, a reasonable royalty is defined by the patent laws as the reasonable amount that someone wanting to use the patented invention **[Cisco proposes: would agree]** **[VirnetX proposes: should expect**[98]**]** to pay to the patent owner and the owner **[Cisco proposes: would agree]** **[VirnetX proposes: should expect]** to receive.

A damages award should put the patent owner in approximately the financial position it would have been in had the infringement not occurred.  You may not add anything to the amount of damages to punish the infringer, or to set an example.

VirnetX has the burden to persuade you by a preponderance of the evidence **[VirnetX proposes: that it suffered**[99]**]** **[Cisco proposes: that it is entitled to the amount of]**[100] the damages it seeks.  While VirnetX is not required to prove damages with mathematical precision, it must prove them with reasonable certainty.  The patent owner is not entitled to damages that are remote or speculative.

---

[97]Adapted from the Court's Charge in *i4i Limited Partnership v. Microsoft Corp.*, Civil Action No. 6:07CV113; *Fractus S.A. v. Samsung Electronics Co.*, Civil Action No. 6:09-CV-203.

[98] **Taken from *VirnetX Inc. v. Apple, Inc.*, 6:10-CV-417-LED, Dkt. 597 at 23.**

[99] **Taken from *VirnetX Inc. v. Apple, Inc.*, 6:10-CV-417-LED, Dkt. 597 at 23.**

[100]  **VirnetX objects to this instruction because it is an incorrect statement of the law.**

**8.1     Reasonable Royalty Definition [Agreed except where indicated]**

[VirnetX proposes:  If you find that any claim of the Asserted Patents are both valid and infringed, then VirnetX is entitled to damages adequate to compensate for the infringement of that patent, but in no event less than a reasonable royalty for the use made of the invention by the infringer.[101]] A royalty is the amount of money a licensee pays to a patent owner to make, use or sell the patented invention.  [VirnetX proposes:  A reasonable royalty is the amount of money a willing patent owner and a willing prospective licensee would have agreed upon at the time of the infringement for a license to make the invention.[102]   [Cisco proposes: A reasonable royalty is intended to compensate the patent holder for the value of the patented invention at the time the allegedly infringing product or method was designed if both the licensor and the licensee were reasonable and willing to enter into a license.][103]   It is the royalty that would have resulted from an arms-length negotiation between a willing licensor and a willing licensee [Cisco proposes: based on the value of the patented invention,][104] assuming that both parties understood the patent to be valid and infringed and that the licensee would respect the patent.  Unlike a real world negotiation, in the hypothetical negotiation, all parties are presumed to know that the patent is infringed and valid.  The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred [Cisco

---

[101]**35 U.S.C. § 284.**

[102]**The instruction appears in *VirnetX Inc. v. Apple, Inc.*, Civil Action No. 6:10-CV-417-LED, Dkt. 597.**

[103]**VirnetX objects because the instruction is an inaccurate and/or incomplete statement of the law.**

[104] **VirnetX objects because the instruction is an inaccurate and/or incomplete statement of the law.**

**proposes: and it must be based on the value of the patented invention not the value of the accused product or method.]**[105] **[VirnetX proposes: Evidence of things that happened after the infringement first began may be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation.]**[106]

**[Cisco proposes: Cisco would have entered the hypothetical negotiation with SAIC in June of 2005.]**[107]

**[Cisco proposes:  A reasonable royalty can be calculated in several different ways and it is for you to determine which way is the most appropriate based on the evidence you have heard.**

**One way to calculate a royalty is to determine what is called a percentage-based "running royalty."  VirnetX alleges that the willing licensor and licensee here would have agreed to a running royalty.  In order to establish the amount of such a running royalty, VirnetX must show by a preponderance of the evidence the value of the patented invention. VirnetX also must establish by a preponderance of the evidence the number of infringing units sold to calculate the base.  For each product you find infringes (if any), the base is calculated by multiplying the value of the patented invention (if any) by the number of units of that product sold.  You must make sure not to include any products in the base that do not infringe.**[108]  **VirnetX then must prove by a preponderance of the evidence the**

---

[105]**VirnetX objects because the instruction is an inaccurate and/or incomplete statement of the law.**

[106]**Cisco objects to this instruction as an inaccurate statement of the law.**

[107]**VirnetX objects to the Court's instructing on facts in dispute.**

[108]*Nickson Indus., Inc. v. Rol Mfg. Co.*, **847 F.2d 795, 799 (Fed. Cir. 1988);** *Paymaster Techs.,*

percentage of the value of the patented invention that a willing license would have agreed to pay a willing licensor in the hypothetical negotiation.[109]

A second way to calculate a reasonable royalty is to determine a fully paid-up lump-sum payment that the licensee would have paid at the time of the hypothetical negotiation for a license covering all sales of the licensed product both past and future.[110]  This differs from payment of a percentage-based running royalty because, with a percentage-based running royalty, the licensee pays based on the number of actual licensed products it sells. When a fully paid-up lump-sum is paid, the infringer pays a single amount for a license covering all past and future infringing sales.  Cisco alleges that the willing licensor and willing licensee here would have agreed to a lump sum fully paid up amount.[111]

VirnetX is asking for damages in the amount of a reasonably royalty.  It is up to you, based on the evidence, to decide what type of royalty is appropriate in this case.]

In making your determination of the amount of a reasonable royalty, it is important that you focus on the time period when the infringer first infringed the patent and the facts that existed at that time.  Your determination does not depend on the actual willingness of the parties to this lawsuit to engage in such negotiations.  Your focus should be on what the parties'

---

*Inc. v. U.S.*, 180 Fed. Appx. 942, 948 (Fed. Cir. 2006).

[109] **VirnetX objects to the instruction as an inaccurate or incomplete statement of the law. The instruction is also surplusage that the jury does not need for the proper determination of damages.**

[110] **Cisco replies that its expert Dr. Stephen Becker, opined on a one-time payment for both past and future infringing sales.  See Expert Report of Stephen L. Becker, Ph.D. Regarding Cisco Systems, Inc. at 4.**

[111] **VirnetX objects to the instruction that a paid-up lump-sum license covers both past and future infringing sales.  Damages for post-trial infringement should not be included in lump sum as VirnetX can sue for infringement only up to the time of trial and events could occur post trial that would increase the lump sum that would have been negotiated.**

expectations would have been had they entered negotiations for royalties at the time of the infringing activity.  **[VirnetX proposes:  The infringer's actual profits may or may not bear on the reasonableness of an award based on a reasonable royalty.[112]][113]**

---

[112] **Taken from *VirnetX Inc. v. Apple, Inc.*, Civil Action No. 6:10-CV-417-LED, Dkt. at 24.**

[113] **Cisco objects that an infringer's overall profits are irrelevant.**

**8.2    [VirnetX Proposes: Reasonable Royalty Factors [114]**

In  deciding  what  is  a  reasonable  royalty  that  would  have  resulted  from  the hypothetical  negotiation,  you  may  consider  the  factors  that  the  patent  owner  and  the alleged infringer would consider in setting the amount the alleged infringer should pay.

I will list for you a number of factors you may consider.  This is not every possible factor, but it will give you an idea of the kinds of things to consider in setting a reasonable royalty.

1.    The  royalties  received  by  the  patentee  for  licensing  of  the  patents-in-suit, proving or tending to prove an established royalty.[115]]

2.     Royalties paid for other patents comparable to the asserted patents.

3.    The  nature  and  scope  of  the  license,  as  exclusive  or  nonexclusive;  or  as restricted or nonrestricted in terms of territory, or with respect to the parties to whom the product may be sold.

4.    Whether  or  not  the  licensor  had  an  established  policy  and  marketing program to maintain its patent exclusivity by not licensing others to use the invention  or  by  granting  licenses  under  special  conditions  designed  to preserve that exclusivity.

5.    The  commercial  relationship  between  the  licensor  and  licensee,  such  as whether  they  are  competitors  in  the  same  territory  and  the  same  line  of business, or whether they are inventor and promoter.

---

[114] **Taken from *VirnetX Inc. v. Apple, Inc.*, 6:10-CV-417-LED, Dkt. 597 at 25-26.**

[115] ***Id.***

6.      Whether being able to use the patented invention helps in making sales of other products or services.

7.      The duration of the patent and the term of the license.

8.      The profitability of the patented invention, and whether or not it is commercially successful or popular.

9.      The utility and advantages of the patented invention over the old modes or devices, if any, that had been used for achieving similar results.

10.     The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

11.     The extent of the licensee's use of the patented invention and any evidence probative of that use.

12.     The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13.     The portion of the profits that is due to the patented invention, as compared to the portion of the profit due to other factors, such as unpatented elements or unpatented manufacturing processes, or features or improvements developed by the licensee.

14.     Expert opinions as to what would be a reasonable royalty.

15.     The amount that a licensor and a licensee would have agreed upon if both sides had been reasonably and voluntarily trying to reach an agreement; that

is, the amount which an accused infringer would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable to a patent owner if it would have been willing to create a license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors.  The framework which you should use in determining a reasonable royalty is a hypothetical negotiation between normally prudent business people.]

**8.2**     **[Cisco proposes:  Reasonable Royalty Licenses**

You may, but are not required to, use license agreements to help you determine the reasonable royalty.  You may only use license agreements to help you determine the reasonable royalty that you find are comparable to the agreement that would result from a hypothetical negotiation.  If you find that an agreement is not comparable, it may not be used in determining a hypothetical negotiation.  In making that assessment you must consider the scope of the rights granted in those license agreements in relation to the scope of the license granted by the hypothetical negotiation, the parties to the agreement, and any difference in time between the dates the license agreements were entered and the date of the hypothetical negotiation.  For example, an agreement entered many years before, or many years after, the hypothetical negotiation may not be comparable because of changing technological and financial conditions.  You must also consider the circumstances under which the agreements were entered to ensure that your reasonable royalty reflects the economic value of the claimed technology as opposed to, for example, a desire to avoid litigation.[116]][117]

---

[116] *LaserDynamics, Inc. v. Quanta, Inc.* (Fed. Cir. 2012); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009).

[117] VirnetX objects to this instruction because it is an incorrect or incomplete statement of the law and not necessary for the jury's consideration of damages.

### 8.3   [Cisco proposes: Appropriate Royalty Base/Entire Market Value[118] [119]

You have heard testimony in this case regarding a royalty base of $1.3 billion calculated by the experts.  While the parties agree on the calculation, they disagree on howthe calculation may be used.  The parties agree that the $1.3 billon includes revenues attributable to features in the accused products other than the allegedly infringing features.  Before you may base a damages calculation on that royalty base, you must remove aspects of that base that are attributable to other aspects of the product or method such as other inventions or features contained in it, the cost of goods sold, brand name or brand loyalty, reliability and other aspects not attributable to the patented invention.  It is insufficient to simply remove some portions of some products.  You must remove all aspects of the base that are not attributable to the patent-in-suit.  VirnetX is not entitled to collect a percentage of the entire revenue or the entire profit of any Cisco product because VirnetX's patents are not the basis for demand of any of those products.  Instead, should you find that VirnetX is entitled to a royalty, that royalty must be based on the portion of the revenue or portion of the profit that VirnetX establishes by a preponderance of the evidence reflects the value of the patented invention.

---

[118]*Laser Dynamics, Inc. v. Quanta Computer, Inc.* (Fed. Cir. August 30, 2012); *Uniloc USA. Inc. v. Microsoft Corp.,* 632 F.3d 1292 (Fed. Cir. 2011); *Lucent Tech., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325-32 (Fed Cir. 2009).

[119]VirnetX objects to this instruction because it is an inaccurate statement of the law, an incomplete statement of the law and most likely irrelevant.

9.      **Instructions for Deliberations**

You must perform your duties as jurors without bias or prejudice as to any party.  The law does not permit you to be controlled by sympathy, prejudice, or public opinion.  All parties expect that you will carefully and impartially consider all the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences.

You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. **[VirnetX proposes:  This is true in patent cases between corporations, partnerships, or individuals. A patent owner is entitled to protect its patent rights under the United States Constitution. This includes bringing suit in a United States District Court for money damages for infringement.  This may be done regardless of whether the owner of the patent is an individual, a partnership, a bank, a small company with only a few investors or a large company made up of many investors.  The law recognizes no distinction among types of patent owners.  A patent owner may be a competitor of an accused infringer, but it does not have to be.   The characterization of a patent lawsuit as good or bad or as misuse of the patent laws based upon the status of the patent owner is inappropriate and should not play any part in your deliberations.  All corporations, partnerships and other organizations stand equal before the law, regardless of size or who owns them, and are to be treated as equals.][120] [121]**

---

[120] **Adapted from the Court's Charge in *i4i Limited Partnership v. Microsoft Corp.*, Civil Action No. 6:07CV113.   These proposed instructions are included in the event Cisco's arguments at trial make them relevant.**

[121] **Cisco objects to this instruction as legally erroneous, unnecessary and prejudicial.**

A corporation is entitled to the same fair trial as a private individual.  All persons, including corporations, and other organizations stand equal before the law, regardless of size or who owns them, and are to be treated as equals.

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the Court has admitted into evidence.  Select your Foreperson and conduct your deliberations.  If you recess during your deliberations, follow all of the instructions that the Court has given you about/on your conduct during trial.  After you have reached your verdict, your Foreperson is to fill in on the form your answers to the questions.  Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, your numerical division on any question.

Any notes that you have taken during this trial are only aids to memory.  If your memory should differ from your notes, then you should rely on your memory and not on the notes.  The notes are not evidence.  A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

If you want to communicate with me at any time, please give a written message or question to the Court Security Officer, who will bring it to me.  I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally.  I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise.  You may now retire to the jury room to deliberate.

DATED: March 12, 2013.       Respectfully submitted,

**McKOOL SMITH, P.C.**

/s/ *Douglas A. Cawley*
Douglas A. Cawley, ***Lead Attorney***
Texas State Bar No. 04035500
E-mail: dcawley@mckoolsmith.com
Rosemary T. Snider
Texas State Bar No. 18796500
Email:  rsnider@mckoolsmith.com
Seth R. Hasenour
Texas State Bar No. 24059910
Email:  shasenour@mckoolsmith.com
Stacie L. Greskowiak
Texas State Bar No. 24074311
E-mail: sgreskowiak@mckoolsmith.com
Mitchell R. Sibley
Texas State Bar No. 24073097
Email:  msibley@mckoolsmith.com
Ryan Hargrave
Texas State Bar No. 24071516
Email: rhargrave@mckoolsmith.com
**MCKOOL SMITH, P.C.**
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

Sam F. Baxter
Texas State Bar No. 01938000
E-mail: sbaxter@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 East Houston, Suite 300
Marshall, Texas 75670
Telephone: (903) 923-9000
Telecopier: (903) 923-9099

Ramzi R. Khazen
Texas State Bar No. 24040855
Email:  rkhazen@mckoolsmith.com
Trent E. Campione
Texas State Bar No. 24049730
Email:  tcampione@mckoolsmith.com
**MCKOOL SMITH, P.C.**
300 W. 6th Street, Suite 1700

Austin, Texas 78701
Telephone: (512) 692-8700
Telecopier: (512) 692-8744

Robert M. Parker
Texas State Bar No. 15498000
Email:  rmparker@pbatyler.com
R. Christopher Bunt
Texas State Bar No. 00787165
Email:  rcbunt@pbatyler.com
Andrew T. Gorham
Texas Bar No. 24012715
Email:  tgorham@pbatyler.com
**PARKER, BUNT & AINSWORTH, P.C.**
100 East Ferguson, Suite 1114
Tyler, Texas 75702
Telephone: (903) 531-3535
Telecopier: (903) 533-9687

Bradley W. Caldwell
Texas State Bar No. 24040630
bcaldwell@caldwellcc.com
Jason D. Cassady
Texas State Bar No. 24045625
E-mail: jcassady@caldwellcc.com
John Austin Curry
Texas State Bar No. 24059636
E-mail: acurry@caldwellcc.com
Daniel R. Pearson
Texas State Bar No. 24070398
Email: dpearson@caldwellcc.com
**CALDWELL CASSADY CURRY P.C.**
1717 McKinney, Suite 700
Dallas, TX 75202
Telephone: (214) 810-4705
Facsimile: (214) 481-1757

**ATTORNEYS FOR PLAINTIFF VIRNETX
INC.**

McKool 869123v1

/s/ *John M. Desmarais*
John M. Desmarais (*pro hac vice*), **Lead Attorney**
jdesmarais@desmaraisllp.com
Michael P. Stadnick (*pro hac vice*)
mstadnick@desmaraisllp.com
Paul A. Bondor (*pro hac vice*)
pbondor@desmaraisllp.com
Tamir Packin (*pro hac vice*)
tpackin@desmaraisllp.com
Karim Z. Oussayef (*pro hac vice*)
koussayef@desmaraisllp.com
Ameet A. Modi (*pro hac vice*)
amodi@desmaraisllp.com
John Spaccarotella (*pro hac vice*)
jspaccarotella@desmaraisllp.com
Sean T. Doyle (*pro hac vice*)
sdoyle@desmaraisllp.com
Xiao Li (*pro hac vice*)
xli@desmaraisllp.com
**DESMARAIS LLP**
230 Park Avenue
New York, NY 10169
Telephone: (212) 351-3400
Facsimile: (212) 351-3401

Eric H. Findlay
efindlay@findlaycraft.com
Texas Bar No. 00789886
Brian Craft
bcraft@findlaycraft.com
Texas Bar No. 04972020
Walter W. Lackey, Jr.
Texas State Bar No. 24050901
Email: wlackey@findlaycraft.com
**FINDLAY CRAFT, LLP**
6760 Old Jacksonville Hwy
Suite 101
Tyler, TX 75703
Telephone: (903) 534-1100
Facsimile: (903) 534-1137

Michael E. Jones
Texas State Bar No. 10929400
Email:  mikejones@potterminton.com
Allen F. Gardner
Texas State Bar No. 24043679

74

Email:  allendgardner@potterminton.com
John F. Bufe
Texas State Bar No. 03316930
Email:  johnbufe@potterminton.com
**POTTER MINTON P.C.**
110 N. College Ave., Suite 500
Tyler, Texas 75702
Telephone: (903) 597-8311
Facsimile: (903) 593-0846

Bradford J. Black (*pro hac vice*)
E-mail:  bblack@blackandchang.com
Peter H. Chang
Texas Bar No. 24040669
Email:  pchang@blackandchang.com
Andrew G. Hamill (*pro hac vice*)
Email:  ahamill@bchllp.com
**BLACK CHANG & HAMILL LLP**
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone:  (415) 813-6210
Facsimile:  (415) 813-6211

**ATTORNEYS FOR DEFENDANT CISCO SYSTEMS, INC.**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this document was served on all counsel who has consented to electronic service on this 12th day of March, 2013.  Local Rule CV-53(a)(3)(A).

  */s/Rosemary T. Snider*
Rosemary T. Snider

75