# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | | |
|---|---|---|
| **VIRNETX, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **Civil Action No. 6:10-cv-417** |
| | § | |
| **CISCO SYSTEMS, INC., et al.** | § | |
| | § | **JURY TRIAL DEMANDED** |
| **Defendants.** | § | |
| | § | |

## VIRNETX INC.'S MOTION FOR A NEW TRIAL
## AND FOR JUDGMENT AS A MATTER OF LAW UNDER RULE 50(b)

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................ 1

II.   LEGAL STANDARDS ............................................................................................... 1

III.  ARGUMENT ............................................................................................................... 2

  A.    Cisco's Intentional (and Successful) Efforts to Confuse the Jury Warrant a New Trial.  2

    1. Cisco Intentionally Designed Its Trial Theme—the So-Called "Bedrock Facts"—to
       Confuse the Issues to be Decided by the Jury. .................................................................. 2

    2. Cisco Distorted the Court's Construction for "VPN" to Confuse the Jury and in Direct
       Contradiction of Cisco's Representations during Markman ............................................. 5

    3. Cisco Adulterated the Court's Preliminary Instructions about Prior Art. ........................ 9

    4. Cisco Invited the Jury to Disregard the Court's Claim Constructions and Grafted
       Extraneous Limitations onto the Claims ........................................................................ 11

    5. The Trial Was Burdened with Litigation Misconduct by Cisco's Counsel..................... 13

  B.    JMOL of Infringement of the '759 Patent Is Appropriate ............................................. 14

IV.   CONCLUSION............................................................................................................ 15

# TABLE OF AUTHORITIES

## Cases

*In re Coastal Plains, Inc.*, 179 F.3d 197 (5th Cir. 1999) ............................................................... 15

*Delaware Olds, Inc. v. Dixon*, 367 A.2d 178 (Del. 1976) ........................................................ 13,14

*Ford v. Cimarron Ins. Co.*, 230 F.3d 828, 830 (5th Cir. 2000) ..................................................... 14

*Johnson v. Offshore Express, Inc.*, 845 F.2d 1347 (5th Cir. 1988)........................................ 2, 5, 9

*Nissho–Iwai Co., Ltd. v. Occidental Crude Sales*, 729 F.2d 1530 (5th Cir.1984)................ passim

*Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011) (en banc)...................................... 15

*Shows v. Jamison Bedding, Inc.*, 671 F.2d 927 (5th Cir. 1982)...................................................... 2

*Smith v. Trans World Drilling Co.*, 773 F.2d 610 (5th Cir. 1985)............................................. 1, 2

*Stokes v. Delcambre*, 710 F.2d 1120 (5th Cir. 1983).................................................................... 13

*Whitehead v. Food Max of Miss., Inc.*, 163 F.3d 265, 270 (5th Cir. 1984) ............................. 2, 13

## Statutes

Fed. R. Civ. P. 50.......................................................................................................................... 14

Fed. R. Civ. P. 59(a)(1).................................................................................................................... 1

Fed. R. Civ. P. 60(b) ........................................................................................................................ 2

## I.      INTRODUCTION

Plaintiff VirnetX moves for JMOL of infringement on the asserted claims of the '759 patent and for a new trial on infringement and damages for all asserted claims.  To be clear, VirnetX does not make this request simply because it lost the jury verdict.  Rather, VirnetX makes this request because the verdict is the result of Cisco's campaign of confusion—in which Cisco's counsel repeatedly adulterated the Court's instructions, distorted the Court's claim constructions, and misdirected the jury with incorrect legal argument.  Cisco's counsel was so persistent in confusing the jury that VirnetX had to approach the bench *28 times* during trial, and the Court had to give a curative instruction to attempt to correct hours and hours of Cisco's improper argument.  But even this did not stop Cisco—its counsel continued its deliberate attempts to confuse the jury all the way through closing arguments.

Through its misconduct in this case, Cisco's counsel subverted the Court's instructions, the patent claims granted by the USPTO, and the Court's constructions of those patents.  And instead of serving as a vehicle for resolving the disputed factual issues underlying the question of infringement, the trial in this case accomplished little more than to adjudicate infringement under the distorted framework imposed by Cisco's intentional efforts to confuse the jury.  VirnetX seeks a new trial on infringement because it earnestly wants a fair trial on the issue—a fair trial where both sides engage on the factual issues as called for by the claims of the patent and the Court's constructions and where the Court's instructions are not undermined or distorted.

## II.      LEGAL STANDARDS

"The court may, on motion, grant a new trial on all or some of the issues[.]"  FED. R. CIV. P. 59(a)(1).  The trial court's power to grant a new trial has "long been regarded as an integral part of trial by jury."  *See Smith v. Trans World Drilling Co.,* 773 F.2d 610, 613 (5th Cir. 1985). "[I]f the trial judge is not satisfied with the verdict of a jury, he has the right—and indeed the

duty—to set the verdict aside and order a new trial." *Id.*  In deciding to grant a new trial, the Court "need not take the view of the evidence most favorable to the verdict winner . . . but may weigh the evidence." *Whitehead v. Food Max of Miss., Inc.*, 163 F.3d 265, 270 (5th Cir. 1984). "A trial judge may order a new trial if he suspects that the jury verdict reflects confusion." *Nissho–Iwai Co., Ltd. v. Occidental Crude Sales*, 729 F.2d 1530, 1538 (5th Cir.1984).  The Fifth Circuit considers three factors—simplicity of the issues, the extent to which the evidence is in dispute, and the absence of any pernicious or undesirable occurrence at trial—as factors that weigh against granting a new trial. *See Shows v. Jamison Bedding, Inc.*, 671 F.2d 927, 930-931 (5th Cir. 1982).  "When one or more of these factors are absent, however, [the Fifth Circuit] will affirm a new trial order even if on our own review of the 'cold record' we are not convinced that the jury verdict was against the great weight of the evidence." *See id.*

Moreover, a court may grant a motion for new trial under Rule 60(b) on the basis of "fraud, . . . misrepresentation, or misconduct by an opposing party[.]" *See* FED. R. CIV. P. 60(b). Granting a motion under Rule 60(b) is within the discretion of the trial court, and because this rule "is remedial in nature it should be liberally construed." *Johnson v. Offshore Express, Inc.*, 845 F.2d 1347, 1358 (5th Cir. 1988).

## III.   ARGUMENT

### A.   Cisco's Intentional (and Successful) Efforts to Confuse the Jury Warrant a New Trial.

1.   Cisco Intentionally Designed Its Trial Theme—the So-Called "Bedrock Facts"—to Confuse the Issues to be Decided by the Jury.

VirnetX spent a tremendous amount of time and resources securing its patent rights with the USPTO—indeed, VirnetX spent over a decade prosecuting patent applications that resulted in the asserted claims in this case.  During this prosecution, VirnetX and the USPTO labored to craft the patent claims that particularly identified the property right of its inventions.   VirnetX

also spent a considerable amount of time and resource litigating its infringement claims against

Cisco, and this litigation has spanned two years and seven months.  During this litigation, the

Court set out the legal scope of VirnetX's claim terms in its constructions—a process that

requires applying the claim terms, the specifications, and the prosecution histories to the legal

standards governing claim construction.  VirnetX proceeded to litigate its infringement claims

under the Court's constructions through extensive discovery efforts to pin down precisely how

Cisco's products infringe the claims as granted by the USPTO and as construed by the Court.

VirnetX prepared its case for trial in the same way—expecting a fair trial where both sides would

present competing evidence of infringement of the claims as granted by the USPTO and as

construed by the Court.  The trial was anything but that.

Cisco began subverting the legal process from the outset of the trial when Cisco's counsel

told the jury that they should render their verdict according to the "bedrock facts" instead of the

Court's instructions and constructions.  *See* 3/04/13 p.m. TT at 36:8-12 ("That leads me to what I

like to call in this case the bedrock facts. I call them the bedrock facts because they are so

fundamental to the resolution of this case, **they form the bedrock of your jury deliberations**.")

(Cisco's counsel's opening statement; emphasis added).  Cisco's counsel stated the following as

the alleged bedrock facts:

(i)      "VirnetX did not invent VPNs. Instead, they invented a very special type of VPN
         and a very specialized DNS." Id. at 36:16-18.

(ii)     "Cisco's products do not use VirnetX's special VPNs.  We use industry standard
         VPN technology that has been on the market since 1995." *Id*. at 36:21-23.

(iii)    "Cisco's IP Telephones use the SIP industry standard. They do not use VirnetX's
         specialized DNS."  *Id*. at 36:24-37:2.

These "bedrock facts"—and Cisco's direction to the jury that they should deliberate using

this framework—subverted the Court's charge instructing the jury to decide the issue of

infringement based on the claims of the patents and the Court's constructions.  Further, it was not only in opening statements that Cisco's counsel instructed the jury to base its deliberations on these "bedrock facts;" rather, this was Cisco's trial theme that continued throughout evidence and closing arguments.  *See* 3/13/13 TT at 108:13-15 ("If you follow the three bedrock facts, you will render the only just and fair verdict in this case."); *see also* 3/04/13 p.m. TT at 41:1-6 ("I'm going to prove those three bedrock facts to you in closing arguments, and I'm going to remind you about those bedrock facts. I'm going to remind you and tell you how I've proved them, and then I'm going to ask you for a verdict of no infringement for Cisco.").

  Cisco's instruction to the jury to render its decision based on the "bedrock facts" was not merely rhetorical flourish; it is completely irreconcilable with the Court's charge instructing the jury to decide the issue of infringement based on the claims of the patents and the Court's constructions.  **First**, none of the asserted claims at trial required VirnetX to prove that it invented VPNs,[1] and this "bedrock fact" served no purpose other than to confuse the jury on the issues.  **Second**, the asserted claims were not limited to "special VPNs," and this repeated, improper argument forced the Court to give a curative instruction to the jury.[2]  Again, this "bedrock fact" served no purpose other than to confuse the jury into thinking that VirnetX's patents cannot be practiced using ordinary or industry-standard VPNs.  Cisco's **third** "bedrock

---

[1]  For example, claim 10 of the '135 patent claims a system for transparently creating a VPN by using a DNS proxy server to trigger a VPN based on a domain name.

[2]  *See* 3/11/13 p.m. TT at 14:23-15:23 ("[I]n this case you've heard questioning and argument and testimony over the term VPN. And in this case the Court has previously construed what VPN means, and you are to be governed by my construction in determining the issues in this case -- that is, the issues of infringement and invalidity.  The Court's construction of VPN does not necessarily exclude prior art VPNs, nor is it limited to only VPNs described in the preferred embodiments of the patents.  While VPN does require some degree of anonymity, it does not require complete anonymity and can be met by any technique known to persons of ordinary skill in the art.").

fact" attempted to confuse the jury into believing that Cisco cannot infringe VirnetX's patents if the accused functionality is built on top of prior art.  In this way, Cisco improperly argued to the jury that the issue of infringement should not be decided based only on the claims of the patent and the Court's constructions.  Rather, and as explained in more detail in § III.A.3, *infra*, Cisco repeatedly adulterated the Court's preliminary instructions in arguing that the accused product must meet every constituent claim term with functionality that was not known in the prior art.

In sum, the jury was given competing instructions for their deliberations—the Court's charge and Cisco's "bedrock facts."  Cisco's alleged bedrock facts had no basis in the Court's instructions, the asserted claims, or the Court's constructions.  As such, it was improper for Cisco's counsel to instruct to the jury to "follow the three bedrock facts" in rendering their verdict, *see* 3/13/13 TT at 108:13-15; and these arguments served no purpose other than to confuse the jury.  The Court has full discretion to order a new trial if it "suspects that the jury verdict reflects confusion."  *Nissho–Iwai*, 729 F.2d at 1538. Also, the Court has separate authority under Rule 60(b) to order a new trial on the basis of "fraud, . . . misrepresentation, or misconduct by an opposing party," and Rule 60(b) "is remedial in nature [and] it should be liberally construed."  *Johnson v. Offshore Express*, 845 F.2d at 1358.

      2.      <u>Cisco Distorted the Court's Construction for "VPN" to Confuse the Jury and in Direct Contradiction of Cisco's Representations during Markman.</u>

The asserted claims of the '135 and '759 patents require "VPN" as one of the claim terms.  The parties disputed the construction of "VPN" during *Markman*, and the primary dispute was whether the ordinary meaning of VPN required anonymity.  *See* Dkt. Nos. 173 and 182 (the parties' claim construction briefs).  Cisco argued that ordinary VPNs require anonymity, and VirnetX argued that they do not.  *See, e.g.*, 1/05/12 *Markman* Tr. at 35:22-24 (Mr. Desmarais: "The word is 'virtual private network.' It is not network, it is not private if it is not

anonymous.").  Cisco won its proposed construction for this term based on its arguments and representations to the Court, but at trial, Cisco about-faced and argued that the VPN of the patent was a "special VPN."[3]  And perversely, Cisco even argued that the Court endorsed Cisco's notion that the VPN of VirnetX's patents was required to be a "special VPN."[4]  Cisco further confused the issue by arguing that anonymity could only be met by anonymity explicitly described in the patents—the so-called "anonymity of the patents"—and only that could meet the

---

[3]  *See* 3/04/13 p.m. TT at 24:23-25:2 ("[W]hat VirnetX invented, and the evidence will show at this trial, is **a very special kind of VPN**. And the Court in this case has construed it and has told you that's on the jury what kind of VPN they invented.") (Mr. Desmarais; emphasis added); 3/04/13 p.m. TT at 35:4-6 ("The patents invented, as I said, **a very special kind of VPN**, and the Judge construed that, and it's in your books.") (Mr. Desmarais; emphasis added); 3/07/13 p.m. TT at 45:1-4 ("[T]he **special VPNs** and special DNSs that we'll be explaining that are the subject of these patents, are not incorporated in any of Cisco's products.") (Dr. Clark, Cisco's non-infringement expert; emphasis added).

[4]  *See* 3/05/13 a.m. TT at 40:23-41:22 ("Mr. Caldwell asked you if the claims in this case were limited to your special VPN. Do you recall that testimony? A. Yes, sir. Q. Now, you know, don't you, that the jury here has to follow the Court's instruction on what the claims in this case relate to, right? A. Oh, yes, sir. Q. And you know, sir, that the Court has told the jury what the VPN in this case is, right? A. Has—has—has given claim terms, is that what you're referring to? Q. **The Court has given the jury a very precise definition of the VPN that this patent is about, true**? A. I believe that's true. Yes, sir.") (Mr. Desmarais; emphasis added); *see also* 3/06/13 a.m. TT at 72:21-74:14 ("Q. And you were here—I think you mentioned it in your direct and you were here when Dr. Short testified that he invented what he called a very special type of VPN, true? A. Yes, sir, not at issue in the patents in this case, but that's correct. Q. I know that's your view. . . . Q. And you know that, for the purposes of this case, the Court has construed VPN, right? A. Yes, sir. . . .  Q. **And the Court here has told us what the VPN in those patents requires, true?** A. Yes, sir. . . . Q. (By Mr. Desmarais) Now, the Court in this case has told us, whenever we see the term VPN in the patents in this case, in the claims, we have to find a network of computers which privately and directly communicate with each other by encrypting traffic on insecure paths between the computers where the communication is both secure and anonymous, right? A. That's correct. Q. So you would agree with me we have to find anonymous VPNs in the Cisco products in order for them to meet the claims of the VirnetX patents, true? A. Well, the claims that require a VPN.") (emphasis added).

Court's construction.[5]  Cisco even further confused the issue by arguing to the jury that prior art

VPNs cannot meet the Court's construction.[6]  Each of these arguments was wrong and improper.

Further, Cisco's argument that it uses industry standard VPNs as opposed to the "special

VPN" in VirnetX's patents[7]—i.e., the Court's construction for VPN—was an attempt to confuse

the jury into thinking that VirnetX's patents cannot be practiced using ordinary VPNs or prior-art

---

[5]  *See* 3/06/13 a.m. TT at 78:25-79:6 ("So now **in the VPN of the patents, which actually
achieved anonymity, the inventors showed us how they did it, right?** They showed us how
they achieved data security and anonymity, right? A. No, sir. I can't agree with that statement. Q.
The inventors didn't show how they achieved data security and anonymity in the patent?") (Mr.
Desmarais, cross-examination of Dr. Nettles; emphasis added); 3/06/13 a.m. TT at 85:9-15 ("Q.
Actually, if you listen to my question, sir, what I asked you was, **the patents describe achieving
the anonymity by using the special two-layer encryption. True or false?** A. The specification
definitely describes using TARP and two-level encryption as one of the ways of achieving
anonymity, absolutely.") (Mr. Desmarais, cross-examining Dr. Nettles; emphasis added); *see
also* 3/07/13 p.m. TT at 64:13-16 ("They wouldn't know that 100 was communicating with 110.
**That's the how-you-defeat-traffic analysis, and that's the anonymity of the patents.**") (Dr.
Clark describing the preferred embodiment; emphasis added); 3/07/13 p.m. TT at 82:3-4 ("Q.
And do you agree with Dr. Nettles, sir? A. **That's not the anonymity of the patents**, no.") (Dr.
Clark; emphasis added); 3/07/13 p.m. TT at 54:9-20 ("Q. So were the inventors trying to -- in
their quest for anonymity, were they just concerned with individual users at their laptops, or did
they also want to prevent branch offices talking to each other or companies searching the Internet
from being discovered by eavesdroppers? A. No. They -- I mean, the testimony is clear and the
patents are clear that they wanted to protect anonymity over the Internet. So it's not -- Q.
**Regardless of whether it was companies talking or people talking. A. Correct.**").

[6]  *See* 3/07/13 p.m. TT at 82:5-11 ("Q. So if we put up Claim 1 of the '759 patent, would Cisco's
EasyVPN and AnyConnect products—do they—with regards to the anonymity component of the
virtual private network, do they all work the same way? A. **They all work the same way and do
not provide an anonymous VPN. They just provide a VPN, which was prior art.**") (Dr.
Clark, emphasis added); 3/07/13 p.m. TT at 74:10-14 ("EasyVPN and AnyConnect employ the
prior art IPsec, the tunnel mode, the encapsulated IPsec. And also, the prior art SSL is used in
AnyConnect.") (Dr. Clark); 3/06/13 a.m. TT at 96:17-20 ("Q. But when you were focusing on
what the term anonymity meant in these claims, you did not take into account what was going on
prior to the patents; is that fair?") (Mr. Desmarais, cross-examining Dr. Nettles); *id.* at 95:18-22
("When you concluded, for infringement, that IPsec in tunnel mode meets the claim construction,
did you not look at what was going on with IPsec tunnel mode prior to the patents in this case?")
(Mr. Desmarais, cross-examining Dr. Nettles).

[7]  *See* 3/04/13 p.m. TT at 37:14-16 ("Cisco's products do not use that special VPN. We use the
industry standard VPNs, IPsec and SSL.").

VPNs.  This repeated, improper argument forced the Court to give a curative instruction to the jury.  *See* 3/11/13 p.m. TT at 14:23-15:23.

In addition to improperly confusing the jury, Cisco's "special VPN" argument is an affront to the Court's construction for VPN in that it suggests that the Court's construction is so far removed from the ordinary meaning of the term that it does not even encompass industry standard VPNs.  These arguments directly contradict representations that Cisco made to win its construction for the term.  *Compare* 1/05/12 *Markman* Tr. at 35:22-24 (Mr. Desmarais: "The word is 'virtual private network.' It is not network, it is not private if it is not anonymous.") *with* 3/07/13 p.m. TT at 70:3-7 ("Q. So is it—would it be important in the normal course to keep the communications anonymous, in other words, to hide which companies are talking to each other? A. No.") (Dr. Clark).[8]  Cisco called upon its expert to testify that its statements at the *Markman* hearing regarding tunneling related to the preferred embodiment as opposed to ordinary VPNs:

> Q. (By Mr. Desmarais) So as you were saying, Dr. Clark, **can you put those comments in context and tell us how tunneling and encryption can be used to achieve anonymity?** A. Well, the patents describe how to do the tunneling that achieves anonymity that's claimed in the VPNs of the patents, particularly the '759 and '135 patents. And those are depicted, among other ways, **in Figure 3A and 3B as ways to provide those types of anonymous tunnels**.

3/11/13 a.m. TT at 142:14-23 (emphasis added).  This testimony is demonstrably false.  At the *Markman* hearing, counsel for Cisco argued that ordinary VPNs achieve anonymity through tunneling.  *See* 1/05/12 *Markman* Tr. at 28:10-22 ("This is an excerpt from Your Honor's order. You start out early on with *The Wiley Electrical and Electronics Engineering Dictionary* that defines a 'virtual private network.' . . . So privacy here **in the extrinsic evidence** is both

---

[8]  This was not the only instance in which Cisco directly contradicted statements made at the *Markman* hearing.  *Compare, e.g.*, 1/05/12 *Markman* Tr. at 28:1 ("Anonymity is done in several ways.") (Mr. Desmarais) *with* 3/06/13 a.m. TT at 78:13-14 ("[A]nonymity is done in several ways, but—but the patent says they fail.") (Mr. Desmarais).

encryption and tunneling protocols.  Tunneling protocols is how you ensure anonymity.")
(emphasis added).

And remarkably, despite the Court's order that counsel be guided by the curative
instruction for the remainder of the case, counsel for Cisco openly directed the jury to ignore the
Court's curative instruction in its closing argument.  *Compare* 3/11/13 p.m. TT at 14:23-15:23
(the Court explaining: "While VPN does require some degree of anonymity, it does not require
complete anonymity[.]") *with* 3/13/13 a.m. TT at 82:10-12 (Mr. Desmarais arguing: "It doesn't
matter whether it's . . . degrees of anonymity or limited anonymity.").[9]

In this way, Cisco distorted the Court's construction for the term "VPN" to confuse the
jury and in direct contradiction of Cisco's representations during *Markman*.  These arguments
served no purpose other than to confuse the jury, and the Court has full discretion to order a new
trial if it "suspects that the jury verdict reflects confusion."  *Nissho–Iwai*, 729 F.2d at 1538.
Also, the Court has separate authority under Rule 60(b) to order a new trial on the basis of
"fraud, . . . misrepresentation, or misconduct by an opposing party," and Rule 60(b) "is remedial
in nature it should be liberally construed."  *Johnson v. Offshore Express*, 845 F.2d at 1358

       3.       <u>Cisco Adulterated the Court's Preliminary Instructions about Prior Art.</u>

The Court's preliminary instructions advised the jury on the role of prior art and
invalidity in patent infringement cases:

> Now, everyone, however, has the right to use existing knowledge
> and principles. A patent cannot remove from the public the ability

---

[9]  *See also* 3/11/13 p.m. TT at 24:23-25:9 ("What do you understand that to mean? A. Well, this
is a—**a specialized form of VPN that uses link keys**—that the little keys and locks by the locks
mean—and uses them to achieve the anonymity that their technology requires for VPNs. Q.
Now, is that—is that specialized VPN technology like what is shown in this slide, something that
Cisco implemented in its products? A. No, it isn't. Q. **Has Cisco ever used link keys to encrypt
hop-to-hop in its VPN products? A. No, not to my knowledge.**") (Cisco witness D. Lang;
emphasis added).

> to use what was known or obvious before the invention was made or patent protection was sought.
>
> Thus, to be entitled to patent protection, an invention must be new, useful, and non-obvious.

3/04/13 TT a.m. at 92:22-93:4.  Cisco twisted this instruction into an improper noninfringement argument—namely, that there can be no infringement if Cisco uses, as part of its infringement, prior-art VPNs or elements from the prior-art SIP standard:

> The Court told you everybody has the right to use knowledge and principles. A patent cannot remove from the public the ability to use what was known or obvious before the invention was made and the patent protection was sought. You heard the testimony of Victor Volpe. He architected IPsec VPN tunnel that was used in the product today. You heard the testimony of Cullen Jennings. We use the SIP standard technology in our phones.

3/13/13 a.m. TT at 107:15-25.[10]  Cisco's counsel deliberately attempted to mislead the jury with this argument, as Cisco's counsel knew that IPsec and SIP were only ***part*** of the accused functionality.  And by referencing the Court's preliminary instruction, Cisco improperly argued that the Court mandated this incorrect framework of infringement—a framework where it is not enough to show infringement by demonstrating that an accused product meets every claim term; rather, the accused products must meet every claim element with functionality not known in the prior art.  Cisco's adulteration of the Court's preliminary instruction served no legitimate purpose and was intended to confuse the jury on how they should decide the issue of infringement.  The Court has full discretion to order a new trial if it "suspects that the jury verdict reflects confusion" *see Nissho–Iwai*, 729 F.2d at 1538; and the Court has separate

---

[10]   *See also* 3/13/13 a.m. TT at 84:5-11 ("One expert says EasyVPN infringes with its IPsec tunnel mode . . . And then they bring another expert to say: No, no. IPsec tunnel mode doesn't infringe.") (Mr. Desmarais in closing argument); 3/07/13 p.m. TT at 82:5-11 (quoted above in footnote 6).

authority under Rule 60(b) to order a new trial on the basis of Cisco's misrepresentations and

misconduct.

>    4.    Cisco Invited the Jury to Disregard the Court's Claim Constructions and
>          Grafted Extraneous Limitations onto the Claims.

Cisco's attempts to confuse the issue of infringement are not limited to what is detailed

above.  Cisco's campaign of confusion engulfed the trial, and the issues for which Cisco

attempted to confuse the jury were legion.  In particular, Cisco invited the jury to disregard the

Court's claim constructions for the term "cryptographic information."  Cisco's counsel and

noninfringement expert argued to the jury that a preferred embodiment of the '759 patent listed

user names and passwords as examples of cryptographic information.  *See* 3/07/13 p.m. TT at

83:8-84:14 (counsel for Cisco reading a preferred embodiment of the '759 patent to the jury and

then asking, "And does that give us an idea of what the inventors were considering, the types of

cryptographic information?" to which Dr. Clark answered, "That's what the patent tells us[.]").[11]

The cited preferred embodiment describes "no-click" and "one click" embodiments in which the

user is not required to enter *anything*—no cryptographic information, no username, and no

password.  Cisco's counsel and noninfringement expert misrepresented this preferred

embodiment to the jury by suggesting that the patent gives usernames and passwords as

examples of "cryptographic information."  And even if this preferred embodiment listed

usernames and passwords as cryptographic information (which it does not), it would still be

inappropriate for Cisco to base its noninfringement position on the preferred embodiment rather

than the Court's construction for the term "cryptographic information."

---

[11]  *See also* 3/13/13 a.m. TT at 84:24-85:3 ("The patent tells you right in the text that without
being required to enter user identification, passwords, or encryption. That's what the patent says:
User identification, passwords, encryption keys.") (Mr. Desmarais in closing argument).

Similarly, counsel for Cisco urged the jury to use their lay understanding of the term "domain name" instead of the Court's construction for the term.  *See* 3/13/13 a.m. TT at 91:22-25 ("You guys use computers.  You use yahoo.com, amazon.com, google.com.  Telephone number?  Give me a break.  Come on.") (Mr. Desmarais, in closing argument).

Cisco also grafted a variety of extraneous limitations on the asserted claims:

- *see* 3/07/13 p.m. TT at 90:9-18 and 3/13/13 a.m. TT at 88:15-89:6 (arguing, without any basis in the claims or the Court's constructions, that the asserted claims of the '759 patent exclude updating software);

- *see also* 3/07/13 p.m. TT at 90:24-91:1 and 3/13/13 a.m. TT at 89:7-13 (arguing, without any basis in the claims or the Court's constructions, that the asserted claims of the '759 patent prohibit initiating a VPN before downloading the software module);

- *see also* 3/13/13 a.m. TT at 92:9-11 (arguing, without any basis in the claims or the Court's constructions, that Cisco's products "have to have **a table** of domain names and IP addresses or we don't infringe" the claims of the '504 and '211 patents) (emphasis added);

- *see also* 3/07/13 a.m. TT at 117:15-118:9; 120:11-24 and 3/07/13 p.m. TT at 60:13-15 (suggesting, without any basis in the claims or the Court's constructions, that the asserted claims of the '504 and 211 patents require anonymity);

- *see also* 3/07/13 p.m. TT at 115:16-117:7 (referencing the preferred embodiment of the'504 and '211 patents to suggest that the "indication" claim term is required to be a "go secure hyperlink" to set up an "anonymous VPN").

None of these arguments served any legitimate purpose, and in making these arguments, Cisco deliberately confused the jury on what was required for infringement.  The Court has full discretion to order a new trial if it "suspects that the jury verdict reflects confusion" *see Nissho–Iwai*, 729 F.2d at 1538; and the Court has separate authority under Rule 60(b) to order a new trial on the basis of Cisco's misrepresentations and misconduct.

5.      <u>The Trial Was Burdened with Litigation Misconduct by Cisco's Counsel.</u>

Cisco's deliberate attempt to confuse the jury is litigation misconduct sufficient by itself to warrant a new trial. This, however, is not the full scope of Cisco's litigation misconduct during trial. Particularly, counsel for Cisco attempted to exploit possible, political sentiments of the jury by comparing Kendall Larsen, VirnetX's CEO, to Mitt Romney during opening arguments. *See* 3/04/13 p.m. TT at 39:9-18. Also, counsel for Cisco faulted Dr. Short and Mr. Larsen for not opining on infringement. *See* 3/13/13 a.m. TT at 79:1-8. This argument is specifically prohibited by Court Order because Dr. Short and Mr. Larsen were prohibited from reviewing Cisco's confidential information. *See* Dkt. No. 146 ("Attorneys and witnesses are prohibited from arguing or implying at trial that a witness for a Party should have or could have received or reviewed information protected by this Order if this Order prohibits that witness from receiving or reviewing such information."). Also, counsel for Cisco asserted during closing argument: "Dr. Nettles has an office at McKool Smith. He works there." This was a rank misrepresentation, indicative of Cisco's counsel's willingness to say anything to confuse and sway the jury. Finally, counsel for Cisco made an improper "Golden Rule" argument:

> Imagine if one of your students came to you with that sort of report
> and said: You know what, I got an idea that somebody infringes,
> but I just can't find anybody actually doing it? Would they get an F
> on that? You wouldn't give them an A on that, would you?

3/13/13 TT at 90:8-14 (Mr. Desmarais in closing argument). Cisco's counsel specifically directed this argument to Juror 7—a teacher—who became the jury foreperson. *See* 3/14/13 TT at 61:17-19 (*voir dire*). The Fifth Circuit "has forbidden . . . counsel to explicitly request a jury to place themselves in the plaintiff's position and do unto him as they would have him do unto them." *See Whitehead*, 163 F.3d at 278 (quoting *Stokes v. Delcambre*, 710 F.2d 1120, 1128 (5th Cir. 1983)); *accord Delaware Olds, Inc. v. Dixon*, 367 A.2d 178 (Del. 1976) (holding that asking

the jury to "[t]ry to imagine" plaintiff's situation was an improper Golden Rule argument).

"Such arguments encourage the jury to decide the case on the basis of personal interest and bias

rather than on the evidence." *Id*. (internal quotations omitted).  The Court has full authority to

order a new trial on the basis of Cisco's many misrepresentations and misconduct.

      **B.**      **JMOL of Infringement of the '759 Patent Is Appropriate.**

      In addition to its motion for a new trial, VirnetX moves for JMOL on the '759 patent

because the uncontroverted evidence demonstrates that Cisco infringes this patent.  In the Fifth

Circuit, JMOL is proper when "there is no legally sufficient evidentiary basis for a reasonable

jury to have found for that party with respect to that issue." *See Ford v. Cimarron Ins. Co.*, 230

F.3d 828, 830 (5th Cir. 2000); FED. R. CIV. P. 50.

      At trial, Cisco's defenses to infringement were merely attempts to confuse the issues and

mislead the jury.  Looking past Cisco's illegitimate noninfringement arguments, the

uncontroverted evidence presented at trial demonstrates that Cisco's products meet all claim

elements of the asserted claims; therefore, Cisco infringes the '759 patent as a matter of law.

      The Court construed "cryptographic information" to mean "information that is used to

encrypt data or information that is used to decrypt data."  *See* Dkt. No. 266.  True to the claim,

Cisco's engineer confirmed that the accused products do not require the user to enter any

cryptographic information.  *See* 3/12/13 a.m. TT at 79:13-24 ("Q. EasyVPN does not use user

names and passwords to encrypt or decrypt information? A. Yeah, that's true. Q. That is true? A.

That is true. Q. Okay. Now, I'm going to state this sentence differently and see what you think.

A. Okay. Q. Now, would you agree with me that EasyVPN does not use user names or

passwords to encrypt or decrypt data? A. I agree with you.").

      Further, there can be no dispute that the VPNs practiced by the accused products meet the

Court's construction of VPN.  As Cisco has admitted, these VPNs are "industry standard" VPNs,

and at the very least, Cisco should be judicially estopped from arguing that industry standard VPNs do not meet the Court's construction.  "The purpose of the doctrine is 'to protect the integrity of the judicial process', by 'prevent[ing] parties from playing fast and loose with the courts to suit the exigencies of self interest[.]'"  *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999).  In assessing whether judicial estoppel should apply, courts in the Fifth Circuit look to see whether the following elements are present: "(1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently." *See Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011) (en banc).  Each of these elements is met. Cisco asserted a position about the legal scope of "VPN" during *Markman* in this case, namely that ordinary VPNs achieve anonymity.  The Court adopted Cisco's proposed construction.  And Cisco's experienced trial counsel cannot claim to have acted inadvertently during *Markman* or at trial.  In sum, Cisco had no legitimate defenses to infringement of the '759 patent, and the uncontroverted evidence establishes that Cisco's accused products infringe.  For these reasons, JMOL of infringement of the '759 patent is appropriate.

## IV.    CONCLUSION

VirnetX acknowledges that the Court has invested considerable resources in the first trial against Cisco, but a new trial is particularly warranted here.  Cisco's strategy was to confuse the jury to the point where there could be no clarity on how the issue of infringement should even be decided.  And in doing so, Cisco was able to avoid joining issue on infringement under the correct framework—the claims and the Court's constructions. The Court should not validate this strategy by entering judgment of noninfringement without a new, fair trial that actually adjudicates the question of whether Cisco infringes its patents under the Court's constructions.

DATED:  April 3, 2013                    Respectfully submitted,

                                         **McKOOL SMITH, P.C.**
                                         /s/ *Douglas A. Cawley*
                                         Douglas A. Cawley, ***Lead Attorney***
                                         Texas State Bar No. 04035500
                                         E-mail: dcawley@mckoolsmith.com
                                         Rosemary T. Snider
                                         Texas State Bar No. 18796500
                                         Email:  rsnider@mckoolsmith.com
                                         Seth R. Hasenour
                                         Texas State Bar No. 24059910
                                         Email:  shasenour@mckoolsmith.com
                                         Stacie L. Greskowiak
                                         Texas State Bar No. 24074311
                                         E-mail: sgreskowiak@mckoolsmith.com
                                         Mitchell R. Sibley
                                         Texas State Bar No. 24073097
                                         Email:  msibley@mckoolsmith.com
                                         Ryan Hargrave
                                         Texas State Bar No. 24071516
                                         Email: rhargrave@mckoolsmith.com
                                         **McKOOL SMITH, P.C.**
                                         300 Crescent Court, Suite 1500
                                         Dallas, Texas 75201
                                         Telephone: (214) 978-4000
                                         Telecopier: (214) 978-4044

                                         Sam F. Baxter
                                         Texas State Bar No. 01938000
                                         E-mail: sbaxter@mckoolsmith.com
                                         **McKOOL SMITH, P.C.**
                                         104 East Houston, Suite 300
                                         Marshall, Texas 75670
                                         Telephone: (903) 923-9000
                                         Telecopier: (903) 923-9099

                                         Ramzi R. Khazen
                                         Texas State Bar No. 24040855
                                         Email:  rkhazen@mckoolsmith.com
                                         Trent E. Campione
                                         Texas State Bar No. 24049730
                                         Email:  tcampione@mckoolsmith.com
                                         **McKOOL SMITH, P.C.**
                                         300 W. 6th Street, Suite 1700
                                         Austin, Texas 78701

Telephone: (512) 692-8700
Telecopier: (512) 692-8744

Bradley W. Caldwell
Texas State Bar No. 24040630
E-mail: bcaldwell@caldwellcc.com
Jason D. Cassady
Texas State Bar No. 24045625
E-mail: jcassady@caldwellcc.com
John Austin Curry
Texas State Bar No. 24059636
E-mail: acurry@caldwellcc.com
Daniel R. Pearson
Texas State Bar No. 24070398
Email: dpearson@caldwellcc.com
**CALDWELL CASSADY CURRY P.C.**
1717 McKinney, Suite 700
Dallas, Texas 75202
Telephone: (214) 810-4705
Telecopier: (214) 481-1757

Robert M. Parker
Texas State Bar No. 15498000
Email:  rmparker@pbatyler.com
R. Christopher Bunt
Texas State Bar No. 00787165
Email:  rcbunt@pbatyler.com
Andrew T. Gorham
Texas Bar No. 24012715
Email:  tgorham@pbatyler.com
**PARKER, BUNT & AINSWORTH, P.C.**
100 East Ferguson, Suite 1114
Tyler, Texas 75702
Telephone: (903) 531-3535
Telecopier: (903) 533-9687

**ATTORNEYS FOR PLAINTIFF
VIRNETX INC.**

Donald Urrabazo
California State Bar No. 189509
Arturo Padilla
California State Bar No. 188902
URRABAZO LAW, P.C.
2029 Century Park East, 14th Floor
Los Angeles, CA 90067

(p) 310.388.9099
(f) 310.388.9088
Email: durrabazo@ulawpc.com
Email: apadilla@ulawpc.com

Andy Tindel
State Bar No. 20054500
MANN, TINDEL & THOMPSON,
ATTORNEYS AT LAW
112 E. Line Street, Suite 304
Tyler, Texas 75702
Tel: (903) 596-0900
Fax: (903) 596-0909
Email: atindel@andytindel.com

**ATTORNEYS FOR PLAINTIFF**
**SCIENCE APPLICATIONS**
**INTERNATIONAL CORPORATION**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that, on April 3, 2013, the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this motion was served on all counsel who have consented to electronic service. Local Rule CV-5(a)(3)(A).

<u>*/s/ Austin Curry*</u>
John Austin Curry