IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| **VIRNETX INC.,** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| **vs.** § | **CASE NO. 6:10-CV-417** |
| § | |
| **CISCO SYSTEMS, INC. et al.,** § | |
| § | |
| **Defendants.** § | |
| § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is VirnetX, Inc.'s ("VirnetX") Motion for a New Trial and for Judgment as a Matter of Law under Rule 50(b) (Docket No. 798) and Cisco Systems, Inc.'s ("Cisco") Motion to Dismiss as Moot its Invalidity Counterclaims (Docket No. 803). For the reasons stated below, VirnetX's Motion for a New Trial and for Judgment as a Matter of law under 50(b) is **DENIED**. Cisco's Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

On August 11, 2010, VirnetX filed this action against Cisco alleging that Cisco infringed U.S. Patent Nos. 6,502,135 ("the '135 Patent"), 6,839,759 ("the '759 Patent), 7,418,504 ("the '504 Patent) and 7,921,211 ("the '211 Patent) (collectively, "the patents-in-suit"). The '135 Patent generally describes a method of transparently creating a virtual private network ("VPN") between a client computer and a target computer. The '759 Patent discloses a method for establishing a VPN without a user entering user identification information. The '504 and '211 Patents disclose a secure domain name service.

A jury trial regarding the instant suit commenced on March 4, 2013.  At trial, VirnetX contended that Cisco infringed claims 10 and 12 of the '135 Patent; claims 2 and 17 for the '759 Patent; claims 36, 47, and 51 of the '504 Patent; and claims 1, 8, 23, 27, and 31 of the '211 Patent.  In response, Cisco asserted its products did not infringe the patents-in-suit and that the asserted claims of the '135, '504, and '211 Patents were invalid.  Following a seven-day trial, the jury returned a verdict that the '135, '504, and '211 Patents were not invalid and that Cisco did not infringe the asserted claims.

## VIRNETX'S MOTION FOR NEW TRIAL AND FOR JUDGMENT AS A MATTER OF LAW UNDER RULE 50(b)

### Motion for a New Trial

VirnetX contends that Cisco's intentional efforts to confuse the jury throughout the trial warrant a new trial on infringement and damages as to all claims.  Docket No. 798 at 2–13.

### Motion for a New Trial, Judgment as a Matter of Law Standards

Judgment as a matter of law is only appropriate when "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."  FED. R. CIV. P. 50(A).  "The grant or denial of a motion for judgment as a matter of law is a procedural issue not unique to patent law, reviewed under the law of the regional circuit in which the appeal from the district court would usually lie."  *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1332 (Fed. Cir. 2008).  The Fifth Circuit "uses the same standard to review the verdict that the district court used in first passing on the motion."  *Hiltgen v. Sumrall*, 47 F.3d 695, 699 (5th Cir. 1995).  Thus, a jury verdict must be upheld, and judgment as a matter of law may not be granted, unless "there is no legally sufficient evidentiary basis for a reasonable jury to find as the jury did."  *Id.* at 700.  The jury's verdict must  also be supported by "substantial evidence" in support of each element

of the claims.  *Am. Home Assurance Co. v. United Space Alliance*, 378 F.3d 482, 487 (5th Cir. 2004).

A court reviews all evidence in the record and must draw all reasonable inferences in favor of the nonmoving party; however, a court may not make credibility determinations or weigh the evidence, as those are solely functions of the jury.  *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).  The moving party is entitled to judgment as a matter of law, "only if the evidence points so strongly and so overwhelmingly in favor of the nonmoving party that no reasonable juror could return a contrary verdict."  *Int'l Ins. Co. v. RSR Corp.*, 426 F.3d 281, 296 (5th Cir. 2005).

Under Federal Rule of Civil Procedure 59, a new trial may be granted to any party to a jury trial on any or all issues "for any reason for which a new trial has heretofore been granted in an action at law in federal court."  "A new trial may be granted, for example, if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course."  *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 612–13 (5th Cir. 1985).

*Bedrock Facts*

VirnetX argues Cisco improperly instructed the jury to render a verdict based on Cisco's "bedrock facts," instead of the Court's instructions, therefore a new trial is warranted.  Cisco's alleged "bedrock facts" were:

> (i) VirnetX did not invent VPNs. Instead, they invented a very special type of VPN and a very specialized DNS; (ii) Cisco's products do not use VirnetX's special VPNs. [Cisco] use[s] industry standard VPN technology that has been on the market since 1995; (iii) Cisco's IP Telephones use the SIP industry standard. They do not use VirnetX's specialized DNS.

Docket No. 798 at 3 (quoting 3/04/13 p.m. TT at 36:26–28; *id.* at 36:31–23; *id.* 36:24–37:2). VirnetX contends these "bedrock facts" incorrectly suggested VirnetX had to demonstrate it invented VPNs, that the asserted claims were limited to a particular type of VPN, and that there is infringement only if the accused product contains every claim term "with functionality that was not known in the prior art." Docket No. 798 at 4–5. VirnetX argues because the jury had competing sets of instructions, one from the Court and one from Cisco, the jury must have been confused. Since the jury was confused, VirnetX argues the Court should exercise its discretion and order a new trial. *Id.*; *see Nissho-Iwai Co., Ltd. v. Occidental Crude Sales*, 729 F.2d 1530, 1538 (5th Cir. 1982) (stating that a court may order a new trial if it "suspects that the jury verdict reflects confusion.")

Cisco counters it never used its "bedrock facts" to instruct the jury about the law, but rather used these facts to focus its argument to the jury. Docket No. 818 at 7–10. Cisco argues it was important for the jury to understand the nature of VirnetX's invention, Cisco's non-infringement defense, and its invalidity defense. Cisco contends VirnetX is essentially complaining about Cisco's "presentation of the evidence and argument to support its view of the facts." *Id.* at 9–10. However, VirnetX was free to attack Cisco's presentation on cross-examination. *Id.* at 10. Thus, in Cisco's opinion, its use of "bedrock facts" does not support granting a new trial.

The Court has discretion to order a new trial if it "suspects that the jury verdict reflects confusion," however, here there is no evidence that Cisco's "bedrock facts" created juror confusion. *See Nissho-Iwai Co., Ltd.*, 729 F.2d at 1538 (finding a new trial was warranted when the jury awarded punitive damages for a claim "even though it had awarded no actual damages on the claim" and "the foreman admitted he was confused by the [Court's] instructions"). While

4

the Plaintiff may be displeased with the verdict, there is no reason to disturb the jury's decision. Accordingly, a new trial is not warranted based on jury confusion.

### *Court's Claim Construction of VPN*

VirnetX also argues a new trial is warranted because Cisco distorted the Court's construction of "VPN."  Docket No. 798 at 5–9.  VirnetX alleges Cisco improperly argued the VPN of the patents-in-suit was "special," VirnetX's patents could not be practiced using "ordinary" VPNs, and anonymity could only be achieved by "anonymity explicitly described in the patents." Docket No. 798 at 6.  Cisco counters that its characterization of VirnetX's patents during trial was consistent with the Court's claim construction.

The Court construed "VPN" as "a network of computers which privately and directly communicate with each other by encrypting traffic on insecure paths between the computers where the communication is both secure and anonymous."  Docket No. 266 at 31.  To support this construction, the Court incorporated into its claim construction opinion its reasoning from a prior construction in a related case, *VirnetX, Inc. v. Microsoft Corp.* No. 6:07-cv-80, 2009 U.S. Dist. LEXIS 65667, at *8 (E.D. Tex. July 30, 2009) ("*Microsoft*").  In *Microsoft*, the Court noted the word "private" "means both data security and anonymity."  *Id.* at *15.  Anonymity is achieved by "'preventing an eavesdropper from discovering that terminal 100 is in communication with terminal 110.'"  *Id.* (quoting '135 Patent Col. 1:23–25, 38–39, 27–28).

Throughout the trial, Cisco used the term "special" as shorthand for the claimed invention, which required a VPN that provides both anonymity and data security.  Cisco developed this shorthand to distinguish the claimed invention from other known VPNs, which Cisco contended did not provide the required anonymity.  While the use of "special" connotes a very different VPN than a "regular" VPN, Cisco's shorthand did not distort the Court's construction in such a manner that requires a new trial.  Further, Cisco was free to argue the

claimed invention differed from other known VPNs, such as the one used in Cisco's products, because other known VPNs did not meet the Court's claim construction.  *See* 3/07/13 p.m. TT at 50:25–51:13 (Cisco's non-infringement expert, Dr. Clark, explaining a prior art encryption method).  Additionally, while Cisco criticized some failed methods of anonymity, Cisco did not limit techniques used to establish anonymity only to those described in the preferred embodiments.  *See* 3/06/13 a.m. TT at 78:13–24.  Accordingly, Cisco did not distort the Court's construction in such a way that warrants a new trial.

*Court's Claim Construction of other terms*

VirnetX additionally alleges a new trial is necessary to correct the jury's confusion as to what is required for infringement.  Specifically, VirnetX argues Cisco encouraged the jury to reject the Court's definition of "cryptographic information" and "domain name."  Docket No. 798 at 11–12.  Additionally, VirnetX contends Cisco grafted extraneous limitations for the asserted claims, which are not found in the claims or in the Court's construction.  *Id.* at 12.  However, Cisco's arguments during the trial did not conflict with the Court's claim construction nor did Cisco improperly suggest additional superfluous limitations for the asserted claims.  For example, Cisco argued its products did not meet the no "cryptographic information" limitation of the asserted claims of the '759 Patent because its products require a username or password, which Cisco alleged was cryptographic information, be entered before a VPN is established.  *See* 3/07/13 p.m. TT at 83:1–87:19.  If VirnetX disagreed with Cisco's non-infringement position, it should have addressed this on cross-examination of Cisco's witnesses.  Accordingly, Cisco's non-infringement arguments did not rise to the level warranting a new trial.

*Prior Art*

VirnetX further contends Cisco contorted the Court's instruction regarding prior art into an improper non-infringement argument.  Docket No. 798 at 9–11.  The Court instructed the jury

that patents are only for inventions that are new, useful and non-obvious, therefore, "everyone []
has the right to use existing knowledge and principles," i.e. matter found within the prior art.
3/04/13 a.m. TT at 92:22–93:4.   VirnetX argues Cisco purposefully confused the jury when it
argued Cisco could not infringe if it used VPNs described in the prior art or elements found in a
prior art standard.   Cisco was free to argue it did not infringe the patents-in-suit because its
accused products did not meet each and every claim limitation.   Here, Cisco's primary non-
infringement argument was that its products used a method, albeit one found in the prior art, that
did not meet each and every claim limitation.   There is nothing improper about that argument.
Accordingly, a new trial is not warranted to correct Cisco's arguments regarding prior art and
non-infringement.

### Litigation Misconduct

Additionally, VirnetX asserts a new trial is necessary in light of Cisco's many
misrepresentations and improper arguments throughout the trial.   Docket No. 798 at 13–14.
Specifically, VirnetX argues it was improper for Cisco to assert Mr. Kendall Larson was like
Mitt Romney, since both men were venture capitalists; to allege Dr. Nettles, VirnetX's technical
expert, worked at McKool Smith; and to criticize Dr. Short, one of the inventors of the patents-
in-suit, and Mr. Larsen, the CEO of VirnetX, for not opining on infringement.   *Id.*   VirnetX also
argues Cisco improperly asked the jury to "place themselves in the plaintiff's position and do
unto him as they would have him do unto them," invoking an improper "Golden Rule" argument.
*Id.* at 13 (quoting *Whitehead v. Food Max*, 163 F.3d 265, 278 (5th Cir. 1998)).

None of these allegations are egregious enough to justify a new trial.   Mr. Larson is a
venture capitalist, and at the time of the trial arguably the most well-known venture capitalist
was Mr. Romney.   There is no reason why Cisco could not explain this point by way of example.
Additionally, Cisco did not improperly suggest Dr. Nettles worked at McKool—Dr. Nettles did

admit he uses an office at McKool where he works occasionally.  3/06/13 p.m. TT at 21:2–8.

Further, Cisco was merely highlighting Dr. Nettles' work at McKool Smith, which uses Cisco IP

Phones, to undermine his infringement analysis.  *See* 3/06/13 p.m. TT at 21:9–14 ("Q. And you

still couldn't tell us at the disposition whether the phone systems that McKool Smith uses, which

are Cisco IP Phones accused of infringement in this case, are configured in their range to

infringe, true? A. That's correct."); 3/13/13 TT at 97:16–19.  As for Dr. Short and Mr. Larsen, in

its closing argument Cisco simply reiterated that it is the experts who opine on infringement, not

other witnesses.  3/13/13 TT at 78:17–79:10.  Lastly, Cisco did not make an impermissible

"Golden Rule" argument.  During closing, Cisco attacked VirnetX's infringement evidence,

which it contended was severely lacking, and analogized VirnetX's lack of evidence to a paper

which lacked proper support.  *See id.* 88:1–91:3.  Cisco concluded by arguing that in situations

where there is no evidence, i.e. a paper without research or an infringement case without proof,

one should not find for that person.  Cisco did not ask the jury to decide the case merely on

personal interest or bias.  In light of the foregoing, none of these representations warrant a new

trial.

**Judgment of a Matter of Law Regarding the '759 Patent**

VirnetX also contends that there was uncontroverted evidence that Cisco's products meet

all the elements of claims 2 and 17 of the '759 Patent.  *See* Docket No. 798 at 14–15.

Specifically, VirnetX argues it presented evidence which proved Cisco's accused products meet

the no "cryptographic information" step of claims 2 and 17, and that the accused products meet

the Court's construction of "VPN."

*Applicable Law*

To prove infringement, the plaintiff must show the presence of every element or its

equivalent in the accused device.  *Lemelson v. United States*, 752 F.2d 1538, 1551 (Fed. Cir.

1985).   Determining infringement is a two-step process: "[f]irst, the claim must be properly construed, to determine the scope and meaning.   Second, the claim, as properly construed must be compared to the accused device or process."   *Absolute Software, Inc. v. Stealth Signal, Inc.*, 659 F.3d 1121, 1129 (Fed. Cir. 2011) (citing *Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1576 (Fed. Cir. 1993)).   "A determination of infringement is a question of fact that is reviewed for substantial evidence when tried to a jury."   *ACCO Brands, Inc. v. ABA Locks Mfr. Co.*, 501 F.3d 1307, 1311 (Fed. Cir. 2007).

*Analysis*

Cisco presented evidence that its products did not provide the anonymity required by the '759 Patent through its non-infringement expert, Dr. Clark.   *See* 3/07/2013 p.m. TT 60:13–17 (explaining "the source and destination addresses are visible for all of the accused products" therefore Cisco's products do not achieve anonymity); *id.* at 70:2–7 (noting Easy VPN products do not provide anonymity); *id.* at 71:1–7 (stating there is no anonymity with AnyConnect software); *id.* at 71:14–24; *id.* at 76:11–24 (explaining an eavesdropper could tell two branch offices were speaking to each other); 3/11/2013 a.m. TT at 22:17–23 (explaining nothing protects the source and destination addresses in the packet headers); *id.* at 24:11–15. Additionally, Dr. Clark testified that Cisco's products did require a user to enter cryptographic information, which the asserted claims state is not required.   *See* 3/07/2013 p.m. TT 84:3–87:19. Dr. Clark based his opinions on Mr. Munger's testimony, one of the inventors of the '759 Patent. *Id.* at 84:15–85:13.

In this case, it was a question of fact for the jury to determine whether Cisco met every single claim limitation of claims 2 and 17 of the '759 Patent.   There is sufficient evidence from which a reasonable jury could find that Cisco did not infringe claims 2 and 17.   The jury considered all the evidence and reached a verdict of no infringement.   The Court may not

overrule the jury's assessment of the credibility of the experts or its determination of a factual

dispute.   Accordingly, VirnetX's request for judgment as a matter of law regarding the '759

Patent is **DENIED**.

### CISCO'S RENEWED MOTION TO DISMISS AS MOOT ITS INVALIDITY COUNTERCLAIMS

Cisco requests the Court dismiss as moot its invalidity counterclaims as to the patent

claims which VirnetX did not assert at trial.  Docket No. 803 at 1.  Specifically, Cisco asks these

counterclaims be dismissed without prejudice.  *Id.* at 2.  VirnetX opposes the request if its own

claims of infringement for dropped patent claims are not similarly dismissed without prejudice.

Docket No. 821 at 1.

Cisco contends its invalidity counterclaims as to the unasserted patent claims should be

dismissed without prejudice, because the Court no longer has subject matter jurisdiction over

these claims.  Docket No. 803 at 2.  Cisco alleges once VirnetX decided not to pursue certain

infringement claims, there was no longer a case and controversy concerning those claims.  *Id.* at

2–3.   VirnetX counters that Cisco's dropped invalidity claims should not be treated any

differently than its own dropped infringement claims because both parties agreed to streamline

their respective cases for trial.  Docket No. 835 at 2.

In patent cases, "the existence of a case or controversy must be evaluated on a claim-by-

claim basis." *Jervis B. Webb Co. v. So. Sys., Inc.,* 742 F.2d 1388, 1399 (Fed. Cir. 1984).

Additionally, the existence of a case or controversy "must exist at all stages of review, not

merely at the time the complaint [was] filed." *Streck, Inc. v. Research & Diagnostic Sys.,*665

F.3d 1269, 1282 (Fed. Cir. 2012) (original citations omitted).  Thus, there must be a showing that

a "continuing case or controversy with respect to withdrawn or otherwise unasserted claims" still

exists.  *Id.* at 1283.  In the case of a party seeking a declaratory judgment, the party must

establish that jurisdiction "existed at the time the claim for declaratory relief was filed and that it has continued since." *Benitec Austl., Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1344 (Fed. Cir. 2007).

Reduction of claims and related invalidity defenses are an important case management tool. *See* General Order Adopting Model Order Focusing Patent Claims and Prior Art to Reduce Costs, No. 13–20 (October 29, 2013). For the process to work there must be fairness—both claims and related invalidity defenses need to be dismissed on the same basis, either with or without prejudice. Since the procedural posture of this case allows Cisco to make a strong argument that this Court lacks jurisdiction to dismiss its invalidity defense counterclaims with prejudice[1], the Court **GRANTS** Cisco's request to dismiss without prejudice, and also dismisses VirnetX's corresponding claims without prejudice, *nunc pro tunc*.[2] This will maintain the fairness necessary to encourage both parties to reduce claims and their related invalidity defenses. To do otherwise would allow one side to gain a perceived advantage based on the other side's willingness to try to simplify and streamline the case.

Additionally, Cisco requests a new trial on invalidity for the asserted claims if the Court grants VirnetX's request for a new trial or judgment as a matter of law as to infringement of any claim. As the Court did not grant VirnetX's request for a new trial or judgment as a matter of law, Cisco's request for a new trial on invalidity is **DENIED AS MOOT**.

---

[1] VirnetX's decision to drop claims from its infringement case did not necessarily divest this Court of jurisdiction over Cisco's invalidity counterclaims to those same claims. Rather, Cisco has to establish there was a case or controversy with respect to the unasserted claims remaining after VirnetX dropped those claims, otherwise its counterclaims would be dismissed as moot. *See Streck, Inc.*, 665 F.3d at 1283; *Benitec Austl., Ltd.*, 495 F.3d at 1344. However, if the Court retains jurisdiction over these counterclaims, it could consider whether Cisco's counterclaims should be dismissed with or without prejudice. *See Elbaor v. Tripath Imaging, Inc.*, 279 F.3d 314, 317 (5th Cir. 2002).

[2] The Federal Circuit has made it clear that a party's withdrawal of its patent infringement claims is "akin to either a *Federal Rule of Civil Procedure 15* amendment to the complaint, or a *Rule 41(a)* voluntary dismissal of claims without prejudice." *SanDisk Corp. v. Kingston Tech. Co.*, 695 F.3d 1348, 1353 (Fed. Cir. 2012) (internal citations removed); *see also Alcon Research Ltd. v. Barr Labs., Inc.*, No. 2012-1340, 1341, 2014 U.S. App. LEXIS 5023, at *31 (Fed. Cir. 2014) ("[W]e have not previously held that a formal motion or stipulation was required to remove claims from a case.").

## CONCLUSION

Accordingly, the Court **DENIES** VirnetX's Motion for a New Trial and for Judgment as a Matter of Law under Rule 50(b) (Docket No. 798).  Additionally, the Court **GRANTS** Cisco's request to dismiss and **DISMISSES** both VirnetX's unasserted claims and Cisco's unasserted counterclaims **WITHOUT PREJUDICE** and **DENIES AS MOOT** Cisco's request for a new trial on invalidity (Docket No. 803).

**So ORDERED and SIGNED this 28th day of March, 2014.**

_____
**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**